# EXHIBIT

# B

ARIEL STERN, ESQ.
Nevada Bar No. 8276
ALLISON SCHMIDT, ESQ.
Nevada Bar No. 10743
AKERMAN LLP
1160 Town Center Dr., Suite 330
Las Vegas, Nevada 89144
Telephone:   (702) 634-5000
Facsimile:   (702) 380-8572
Email: ariel.stern@akerman.com
Email: allison.schmidt@akerman.com
*Attorneys for Defendants Nationstar Mortgage,*
*LLC and Bank of America, N.A.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

MICHAEL BONDI,

                Plaintiff,

v.

NATIONSTAR MORTGAGE LLC, a
Delaware limited liability company; BANK OF
AMERICA, N.A., DOES I-X , inclusive, and
ROE CORPORATIONS I-X, inclusive,

                Defendants.

Case No.: 2:14-cv-001215-LDG-GWF

**DECLARATION IN SUPPORT OF
DEFENDANT BANK OF AMERICA,
N.A.'S MOTION FOR SUMMARY
JUDGMENT**

## DECLARATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

I, ~~MATTHEW CALEB CARRILLO~~ declare as follows:

1.  I am an officer of Bank of America, N.A. (**BANA**), authorized to sign this declaration on BANA's behalf.

2.  BANA previously serviced or currently services the subject loans (the **Loans**) and maintains business records for the Loans. As part of my job responsibilities with BANA, I am familiar with the type of records maintained by BANA in connection with the Loans.

3.  The information in this affidavit is taken from BANA's business records. I have personal knowledge of BANA's procedures for creating these records. They are (a) made at or near the

time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) the records are kept in the course of BANA's regularly conducted business activities; and (c) created by BANA as a regular practice.  I personally confirmed that the information in this affidavit matches BANA's records available to me.

4.   On August 7, 2006, Plaintiff Michael Bondi (**Plaintiff**) obtained two mortgage loans to finance his purchase of the real property located at 9332 Golden Grape Court, Las Vegas, Nevada (the **Property**).  Plaintiff executed two promissory notes to evidence these loans. A true and correct copy of the First Note is attached as **Exhibit A**. A true and correct copy of the Second Note is attached as **Exhibit B**.

5.   On or about August 7, 2006, Plaintiff executed a promissory note (the **First Note**) in the amount of $279,192.00 and in favor of CCSF, LLC dba Greystone Financial Group. Ex. A.

6.   Also on or about August 7, 2006, Plaintiff executed a second promissory note (the **Second Note**) in the amount of $69,798.00 and in favor of CCSF, LLC dba Greystone Financial Group. Ex. B.

7.   Plaintiff executed a deed of trust (the **First Deed of Trust**) (collectively with the First Note, the **First Loan**) on August 7, 2006, against the Property securing his payment obligations under the First Note.  A true and correct copy of the First Deed of Trust is attached as **Exhibit C**.

8.   Plaintiff executed a second deed of trust (the **Second Deed of Trust**) (collectively with the Second Note, the **Second Loan**), also on August 7, 2006, against the Property securing his payment obligations under the Second Note.  A true and correct copy of the Second Deed of Trust is attached as **Exhibit D**.

9. Plaintiff fell behind on the payments required under the First Loan in 2008. A true and correct copy of the Payment History for the First Loan is attached as **Exhibit E.**

10. Plaintiff also fell behind on the payments required under the Second Loan in 2008. A true and correct copy of the Payment History for the Second Loan is attached as **Exhibit F.**

11. Due to Plaintiff's default on the First Loan, the beneficiary of the First Deed of Trust initiated foreclosure proceedings by recording a Notice of Default against the Property pursuant to the terms of the First Deed of Trust on August 8, 2008. A true and correct copy of the Notice of Default is attached as **Exhibit G.**

12. Plaintiff did not cure the default, and on March 5, 2009, the trustee under the First Deed of Trust recorded a Notice of Trustee's Sale against the Property. A true and correct copy of the Notice of Sale is attached as **Exhibit H.**

13. The Bank of New York Mellon, fka the Bank of New York, as Trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2006-OC8, Mortgage Pass-Through Certificates, Series 2006-OC8 (**BNYM**) purchased the Property at the trustee's sale held on June 4, 2009. A true and accurate copy of the Trustee's Deed is attached as **Exhibit I.**

14. At the time of the trustee's sale, the amount of the unpaid debt on the First Loan was $314,064.46. *Id.*

15. The trustee's sale realized $160,565.00 in proceeds. *Id.*

16. Following the trustee's sale, BANA canceled the unpaid debt remaining on the First Loan. A true and accurate copy of the 1099-C issued to Plaintiff for this cancellation is attached as **Exhibit J.**

17. BANA also adjusted the principal balance on the First Loan to show the First Loan as having a zero balance on March 25, 2010. Ex. E.

18. Because the sale price of the Property at the trustee's sale was less than the amount owed on the First Loan, no proceeds of the sale were applied to the amount owed on the Second Loan. *See* Exs. F, I.

19. The last payment that BANA received on the Second Loan was made in January 2008. *Id.* BANA has not received payment on the Second Loan from any source since that time. *Id.*

20. According to BANA's electronic books and records, Countrywide Home Loans Servicing, LP, became the servicer of the Second Loan on or before September 14, 2006.

21. On April 27, 2009, Countrywide Home Loans Servicing, LP changed its name to BAC Home Loans Servicing, LP (**BACHLS**). A true and correct copy of the Certificate of Filing evidencing the name change is attached as **Exhibit K**.

22. According to BANA's electronic books and records, BACHLS also became the servicer of the Loan on April 27, 2009.

23. On July 1, 2011, BAC Home Loans Servicing, LP (**BACHLS**) merged into BANA. A true and correct copy of the Certificate of Merger is attached as **Exhibit L**.

24. Also on July 1, 2011, the servicing of Plaintiff's loan was transferred from BACHLS to BANA. A true and correct copy of the letter advising Plaintiff of the transfer is attached as **Exhibit M**.

25. On July 16, 2013, BANA transferred servicing of the Second Loan to Nationstar Mortgage LLC. A true and correct copy of the letter advising Plaintiff of the service transfer is attached as **Exhibit N**.

26. At the time of the service transfer, the balance owed on the Second Loan was $69,371.26. Exs. F, N.

27. BANA's business records do not reflect that the Second Loan had a balance of zero dollars at any time prior to the service release. *See* Ex. F.

28. BANA's servicing notes on the Second Loan, which document on activity on the Loan, do not indicate that BANA agreed to forgive the amount Plaintiff owed on the Second Loan. A true and correct copy of the servicing notes on the Second Loan is attached as **Exhibit O**.

29. BANA's business records on the Second Loan do not contain an agreement between Plaintiff and BANA to forgive the amount owed on the Second Loan.

30. BANA's business records show that BANA reported the following information on the Second Loan to the credit reporting agencies:

| 8/2013 | **Account Transferred to another lender** |
|---|---|
| 7/2013 | Not Reported |
| 6/2013 | Not Reported |
| 5/2013 | Not Reported |
| 4/2013 | Not Reported |
| 3/2013 | Not Reported |
| 2/2013 | Not Reported |
| 1/2013 | Not Reported |
| 12/2012 | Not Reported |
| 11/2012 | Not Reported |
| 10/2012 | Not Reported |
| 9/2012 | Not Reported |
| 8/2012 | Not Reported |
| 7/2012 | Not Reported |
| 6/2012 | Not Reported |
| 5/2012 | Not Reported |
| 4/2012 | Not Reported |
| 3/2012 | Not Reported |
| 2/2012 | Not Reported |
| 1/2012 | Not Reported |
| 12/2011 | Not Reported |
| 11/2011 | Not Reported |

| | |
|---|---|
| 10/2011 | 180 Days Past Due |
| 9/2011 | 180 Days Past Due |
| 8/2011 | 180 Days Past Due |
| 7/2011 | 180 Days Past Due |
| 6/2011 | 180 Days Past Due |
| 5/2011 | 180 Days Past Due |
| 4/2011 | 180 Days Past Due |
| 3/2011 | 180 Days Past Due |
| 2/2011 | 180 Days Past Due |
| 1/2011 | 180 Days Past Due |
| 12/2010 | 180 Days Past Due |
| 11/2010 | 180 Days Past Due |
| 10/2010 | 180 Days Past Due |
| 9/2010 | 180 Days Past Due |
| 8/2010 | 180 Days Past Due |
| 7/2010 | Not Reported |
| 6/2010 | Not Reported |
| 5/2010 | Not Reported |
| 4/2010 | Not Reported |
| 3/2010 | 180 Days Past Due |
| 2/2010 | 180 Days Past Due |
| 1/2010 | 180 Days Past Due |
| 12/2009 | 180 Days Past Due |
| 11/2009 | 180 Days Past Due |
| 10/2009 | 180 Days Past Due |
| 9/2009 | 180 Days Past Due |
| 8/2009 | 180 Days Past Due |
| 7/2009 | 180 Days Past Due |
| 6/2009 | 180 Days Past Due |
| 5/2009 | 180 Days Past Due |
| 4/2009 | 180 Days Past Due |
| 3/2009 | 180 Days Past Due |
| 2/2009 | 180 Days Past Due |
| 1/2009 | 180 Days Past Due |
| 12/2008 | 180 Days Past Due |
| 11/2008 | 180 Days Past Due |

| | |
|---|---|
| 10/2008 | 180 Days Past Due |
| 9/2008 | 180 Days Past Due |
| 8/2008 | 180 Days Past Due |
| 7/2008 | 180 Days Past Due |
| 6/2008 | 150 Days Past Due |
| 5/2008 | 120 Days Past Due |
| 4/2008 | 90 Days Past Due |
| 3/2008 | 60 Days Past Due |
| 2/2008 | 30 Days Past Due |
| 1/2008 | Current Account |
| 12/2007 | Current Account |
| 11/2007 | Current Account |
| 10/2007 | Current Account |
| 9/2007 | Current Account |
| 8/2007 | Current Account |
| 7/2007 | Current Account |
| 6/2007 | Current Account |
| 5/2007 | Current Account |
| 4/2007 | Current Account |
| 3/2007 | Current Account |
| 2/2007 | Current Account |
| 1/2007 | Current Account |
| 12/2006 | Current Account |
| 11/2006 | Current Account |
| 10/2006 | Current Account |

31. On November 14, 2011, BANA received notice of a dispute (the **Dispute**) from a credit reporting agency regarding the information that BANA provided to the credit reporting agencies regarding the Second Loan. *See* Ex. O at 21.

32. The Dispute stated that the borrower claimed that BANA would delete the account. *Id.*

33. After receiving the Dispute, BANA reviewed its business records on the subject loan, including the loan's payment history, and compared this information with the credit history that the credit bureaus had on record. *See* BANA's Responses to Plaintiff's Interrogatories, attached

as **Exhibit P.**  BANA also inquired into whether any other line of business within BANA had requested a change to the credit reporting on the Second Loan.

34. Following its investigation into the Dispute, and in response to the Dispute, on November 15, 2011, BANA updated its reporting on the Second Loan to show this loan as "not reported" for the months of November 2009 through November 2011.  *See id.*

35. According to BANA's business records, BANA did not receive any additional notice of dispute regarding its credit reporting on the Second Loan after November 14, 2011.  *See gen.* Ex. O.

*I declare, under penalty of perjury under the laws of Nevada and the United States of America, that the foregoing is true and correct to the best of my knowledge.*

Bank of America, N.A.

By: ___MATHEW   CALEB   CARRILLO___

Title: ___ASSISTANT   VICE   PRESIDENT___

Date: ___4/12/2016___

# EXHIBIT A

# EXHIBIT A

THIS IS CERTIFIED TO BE A TRUE AND
CORRECT COPY OF THE ORIGINAL
NEVADA TITLE COMPANY
BY

# ADJUSTABLE RATE NOTE
## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

BONDI
Loan #: ███████
MIN: 100219306085033450

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| AUGUST 4, 2006 | LAS VEGAS | NEVADA |
|---|---|---|
| [Date] | [City] | [State] |

9332 GOLDEN GRAPE COURT, LAS VEGAS, NV 89148
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $279,192.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is CCSF, LLC DBA GREYSTONE FINANCIAL GROUP. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.250%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on OCTOBER 1, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on SEPTEMBER 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 7180 POLLOCK DRIVE, SUITE 100, LAS VEGAS, NV 89119 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $1,904.58. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of SEPTEMBER, 2011, and on that day every 6TH month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family-Fannie Mae Uniform Instrument

184.81 | Page 1 of 4 | Form 3520 1/01

month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE-FOURTH percentage points (2.250%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 13.250% or less than 2.250%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO percentage point(s) (2.000%) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.250%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family-Fannie Mae Uniform Instrument

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family-Fannie Mae Uniform Instrument

determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

- BORROWER - MICHAEL BONDI - DATE -

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family-Fannie Mae Uniform Instrument

Loan Number: 237-0600948
Property Address: 9332 GOLDEN GRAPE COURT, LAS VEGAS, NV 89148

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE NOTE

BONDI
Loan #: ▮▮▮▮▮▮▮▮
MIN: 100219306085033450

THIS ADDENDUM is made this 4TH day of AUGUST, 2006 and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to CCSF, LLC DBA GREYSTONE FINANCIAL GROUP (the Lender).

THIS ADDENDUM supersedes Section 3(A), 3(B), 4(C) and 7(A) of the Note. None of the other provisions of the Note are changed by this Addendum.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay interest by making payments every month for the first 120 payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues. I will pay principal and interest by making payments every month thereafter for the next 240 payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

I will make my monthly payments on the first day of each month beginning on OCTOBER 1, 2006. I will make these payments every month until I have paid all principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled date and will be applied to interest before principal. If, on SEPTEMBER 1, 2036 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at 7180 POLLOCK DRIVE, SUITE 100, LAS VEGAS, NV 89119, or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $1,686.79. This payment amount is based on the original balance of the Note. This payment amount may change.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE-FOURTH percentage point(s) (2.250%) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (.125%). Subject to the limits stated in section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until earlier of the

Interest Only Addendum to Note
(2/6, 3/6, 5/6 and 7/6 6mo Hybrid ARM)
FE-3502 (0602)
⟷   6811.6                              Page 1 of 2

next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of interest during the Interest-Only Period, 5.000% of my overdue payment of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Addendum to Adjustable Rate Note.

_(signature)_ 8/7/06

- BORROWER - MICHAEL BONDI - DATE -

Interest Only Addendum to Note
(2/6, 3/6, 5/6 and 7/6 6mo Hybrid ARM)
FE-3502 (0602)
6811.6                                    Page 2 of 2

DATE: AUGUST 4, 2006
BORROWER:
MICHAEL BONDI
PROPERTY ADDRESS:
9332 GOLDEN GRAPE COURT, LAS VEGAS, NV 89148

## PREPAYMENT PENALTY ADDENDUM TO NOTE

BONDI
Loan #: ▆▆▆▆▆▆▆▆▆
MIN: 100219306085033450

THIS PREPAYMENT PENALTY ADDENDUM is dated AUGUST 4, 2006, and is incorporated into and amends and supplements the Note of the same date (the "Note") given by me to CCSF, LLC DBA GREYSTONE FINANCIAL GROUP (the "Lender"). The Note is secured by a Mortgage or Deed of Trust or comparable Security Instrument (the "Security Instrument") covering the property (the "Property") identified in the Security Instrument.

The section of the Note entitled "**Borrower's Right to Prepay**" is replaced with the following new section:

BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment". A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a Partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment.

**If within the first 36 months after the execution of the Note, I make any prepayment(s), the total of which exceeds TWENTY (20.000) percent of the original Principal amount of this Note, I will pay a Prepayment Penalty in an amount equal to the payment of SIX (6) months' advance interest on the amount by which the total of my prepayment(s) during the 12 month period exceeds TWENTY (20.000) percent of the original principal amount of this Note. The Note Holder will waive this penalty if I furnish the Note Holder with documentation, in the manner and at the time reasonably specified by the Note Holder, identifying the prepayment as being in connection with the sale of the Property to an unrelated Third Party.**

All other terms and conditions of the Note remain in full force and effect.

_____
- BORROWER - MICHAEL BONDI - DATE -

Prepayment Penalty Addendum (Multistate) - (S-PPP)
FE-5202 (0412)
      5683.18                                            Page 1 of 1

# EXHIBIT B

# EXHIBIT B

THIS IS CERTIFIED TO BE A TRUE AND
CORRECT COPY OF THE ORIGINAL.
NEVADA TITLE COMPANY
BY

**NOTE**
WITH BALLOON PAYMENT

BONDI
Loan #: ▓▓▓▓▓▓
MIN: 100219306085033468

| AUGUST 4, 2006 | LAS VEGAS | NEVADA |
|---|---|---|
| [Date] | [City] | [State] |

9332 GOLDEN GRAPE COURT, LAS VEGAS, NV 89148
[Property Address]

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. SINCE YOU HAVE SELECTED A PAYMENT SCHEDULE WHICH WILL NOT PAY THE LOAN IN FULL BY THE MATURITY DATE, YOU WILL NEED TO PAY A LUMP SUM, OR BALLOON PAYMENT, WHICH WILL PAY OFF THE ENTIRE AMOUNT OF THE PRINCIPAL BALANCE OF THE LOAN AND ANY UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL THEREFORE BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. **$69,798.00** (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is **CCSF, LLC DBA GREYSTONE FINANCIAL GROUP.** I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

**2. INTEREST**
I will pay interest at a yearly rate of **11.000%.**
Interest will be charged on unpaid principal until the full amount of principal has been paid.

**3. PAYMENTS**
I will pay principal and interest by making payments each month of U.S. **$664.70.**
I will make my payments on the **1ST** day of each month beginning on **OCTOBER 1, 2006.** I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on **SEPTEMBER 1, 2021,** I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
I will make my monthly payments at **7180 POLLOCK DRIVE, SUITE 100, LAS VEGAS, NV 89119** or at a different place if required by the Note Holder.

**4. BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any of my monthly payments by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **FIVE** percent of my overdue payment, but not less than U.S. **$N/A** and not more than U.S. **$N/A.** I will pay this late charge only once on any late payment.
**(B) Notice From Note Holder**
If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.
**(C) Default**
If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

NEVADA -SECOND MORTGAGE
FE-4202(NV) (0210)
〰️   1065.34                          Page 1 of 3

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**5. THIS NOTE SECURED BY A DEED OF TRUST**

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated **AUGUST 4, 2006**, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

**6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

**7. BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**8. GIVING OF NOTICES**

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

**9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

**NOTICE TO BORROWER**
Do not sign this Note if it contains blank spaces.
All spaces should be completed before you sign.

- BORROWER - MICHAEL BONDI - DATE - 8/7/06

*[Sign Original Only]*

NEVADA -SECOND MORTGAGE
FE-4202(NV) (0210)
1065.34                          Page 3 of 3

THIS IS CERTIFIED TO BE A TRUE AND
CORRECT COPY OF THE ORIGINAL.
NEVADA TITLE COMPANY
BY

## NOTE
### WITH BALLOON PAYMENT

BONDI
Loan #:|█████████
MIN: 100219306085033468

| AUGUST 4, 2006 | LAS VEGAS | NEVADA |
|---|---|---|
| [Date] | [City] | [State] |

9332 GOLDEN GRAPE COURT, LAS VEGAS, NV 89148
[Property Address]

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. SINCE YOU HAVE SELECTED A PAYMENT SCHEDULE WHICH WILL NOT PAY THE LOAN IN FULL BY THE MATURITY DATE, YOU WILL NEED TO PAY A LUMP SUM, OR BALLOON PAYMENT, WHICH WILL PAY OFF THE ENTIRE AMOUNT OF THE PRINCIPAL BALANCE OF THE LOAN AND ANY UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL THEREFORE BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. **$69,798.00** (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is **CCSF, LLC DBA GREYSTONE FINANCIAL GROUP**. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."
**2. INTEREST**
I will pay interest at a yearly rate of **11.000%**.
Interest will be charged on unpaid principal until the full amount of principal has been paid.
**3. PAYMENTS**
I will pay principal and interest by making payments each month of U.S. **$664.70**.
I will make my payments on the **1ST** day of each month beginning on **OCTOBER 1, 2006**. I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on **SEPTEMBER 1, 2021**, I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
I will make my monthly payments at **7180 POLLOCK DRIVE, SUITE 100, LAS VEGAS, NV 89119** or at a different place if required by the Note Holder.
**4. BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any of my monthly payments by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **FIVE** percent of my overdue payment, but not less than U.S. **$N/A** and not more than U.S. **$N/A**. I will pay this late charge only once on any late payment.
**(B) Notice From Note Holder**
If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.
**(C) Default**
If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

NEVADA -SECOND MORTGAGE
FE-4202(NV) (0210)

⬡    1065.34                                    Page 1 of 3

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**5. THIS NOTE SECURED BY A DEED OF TRUST**

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated AUGUST 4, 2006, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

**6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

**7. BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**8. GIVING OF NOTICES**

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

**9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

**NOTICE TO BORROWER**
Do not sign this Note if it contains blank spaces.
All spaces should be completed before you sign.

- BORROWER - MICHAEL BONDI - DATE -  8/7/06

*[Sign Original Only]*

NEVADA -SECOND MORTGAGE
FE-4202(NV) (0210)
1065.34                    Page 3 of 3

# EXHIBIT C

# EXHIBIT C



20060810-0000432

APN# 176-20-112-014

Return to:
Nevada Title Company
2500 N. Buffalo #150
Las Vegas, NV 89128

Fee: $35.00
N/C Fee: $0.00

08/10/2006          09:01:12
T20060139847
Requestor:
    NEVADA TITLE COMPANY

Frances Deane          DEZ
Clark County Recorder   Pgs: 22



# DEED OF TRUST

TITLE OF DOCUMENT
(This cover page must be typed or printed)

THE UNDERSIGNED HEREBY AFFIRMS THAT THERE IS **NO** SOCIAL SECURITY NUMBER
CONTAINED IN THE DOCUMENT.

BY: _____

NAME PRINT:    Barb Cordes

THE UNDERSIGNED HEREBY AFFIRMS THAT THERE **IS A** SOCIAL SECURITY NUMBER
CONTAINED IN THIS DOCUMENT AS REQUIRED BY
LAW: _____

BY: _____
NAME PRINT: _____



610          D2  001  001

PIN #: 176-20-112-014
After Recording Return To:
CCSF, LLC DBA GREYSTONE FINANCIAL GROUP
7180 POLLOCK DRIVE, SUITE 100
LAS VEGAS, NV 89119

Grantee:    ESCROW#06-07-0692-ACM
CCSF, LLC DBA GREYSTONE FINANCIAL GROUP
7180 POLLOCK DRIVE, SUITE 100, LAS VEGAS,
NV 89119

Mail Tax Statement To:
CCSF, LLC DBA GREYSTONE FINANCIAL GROUP
7180 POLLOCK DRIVE, SUITE 100
LAS VEGAS, NV 89119

---

[Space Above This Line For Recording Data]

# DEED OF TRUST

BONDI
Loan #: ███████████
MIN: 100219306085033450
PIN: 176-20-112-014

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated AUGUST 4, 2006, together with all Riders to this document.
(B) "Borrower" is MICHAEL BONDI, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY. Borrower is the trustor under this Security Instrument.
(C) "Lender" is CCSF, LLC DBA GREYSTONE FINANCIAL GROUP. Lender is a LIMITED LIABILITY COMPANY organized and existing under the laws of NEVADA. Lender's address is 7180 POLLOCK DRIVE, SUITE 100, LAS VEGAS, NV 89119.
(D) "Trustee" is NEVADA TITLE COMPANY.
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated AUGUST 4, 2006. The Note states that Borrower owes Lender TWO HUNDRED SEVENTY-NINE THOUSAND ONE HUNDRED NINETY-TWO AND 00/100 Dollars (U.S. $279,192.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than SEPTEMBER 1, 2036.
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges

**NEVADA- Single Family -Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3029 1/01**
⬱    342.37                                        Page 1 of 14

due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☒ Other(s) [specify] INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER | |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY (Type of Recording Jurisdiction) of CLARK (Name of Recording Jurisdiction):

**NEVADA**- Single Family -Fannie Mae/Freddie Mac
**UNIFORM INSTRUMENT Form 3029 1/01**

LOT 14 IN BLOCK 1 OF WINERIDGE PLACE, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 127, OF PLATS, PAGE 51, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA
which currently has the address of 9332 GOLDEN GRAPE COURT, LAS VEGAS, Nevada 89148 ("Property Address").

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be

**NEVADA**- Single Family -**Fannie Mae/Freddie Mac**
**UNIFORM INSTRUMENT Form 3029 1/01**

applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as

**NEVADA**- Single Family -Fannie Mae/Freddie Mac
**UNIFORM INSTRUMENT Form 3029 1/01**

      342.37                          Page 4 of 14

required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

**NEVADA**- Single Family -Fannie Mae/Freddie Mac
**UNIFORM INSTRUMENT Form 3029 1/01**
    ⟳    342.37                          Page 5 of 14

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

**NEVADA- Single Family -Fannie Mae/Freddie Mac**
**UNIFORM INSTRUMENT Form 3029 1/01**

      342.37                                    Page 6 of 14

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if

**NEVADA**- Single Family -**Fannie Mae/Freddie Mac**
**UNIFORM INSTRUMENT Form 3029 1/01**

Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market

**NEVADA- Single Family -Fannie Mae/Freddie Mac**
**UNIFORM INSTRUMENT Form 3029 1/01**

value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all

**NEVADA**- Single Family -Fannie Mae/Freddie Mac
**UNIFORM INSTRUMENT Form 3029 1/01**

of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to,

**NEVADA- Single Family -Fannie Mae/Freddie Mac**
**UNIFORM INSTRUMENT Form 3029 1/01**

those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable

**NEVADA- Single Family -Fannie Mae/Freddie Mac**
**UNIFORM INSTRUMENT Form 3029 1/01**

for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lenders' election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons**

NEVADA- Single Family -Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3029 1/01

prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. N/A.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

8/7/06

- BORROWER - MICHAEL BONDI - DATE -

**NEVADA**- Single Family -Fannie Mae/Freddie Mac
**UNIFORM INSTRUMENT Form 3029 1/01**
342.37                                    Page 13 of 14

[Space Below This Line for Acknowledgment]

STATE OF *NEVADA*

COUNTY OF *CLARK*

This instrument was acknowledged before me on *August 7, 2006* by
*MICHAEL BOND*

DARLENE Y. SMITH
Notary Public State of Nevada
No. 03-81560-1
My appt. exp. May 1, 2007

*Darlene Smith*
Notary Public

My Commission Expires: *May 1, 2007*

NEVADA- Single Family -Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3029 1/01
342.37                              Page 14 of 14

Escrow No.: 06-07-0692-ACM

## EXHIBIT "A"

## LEGAL DESCRIPTION

LOT 14 IN BLOCK 1 OF **WINERIDGE PLACE**, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 127, OF PLATS, PAGE 51, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

# INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER

DOC ID #:

BONDI
Loan #: ▮▮▮▮▮▮▮▮
MIN: 100219306085033450

THIS ADDENDUM is made this 4TH day of AUGUST, 2006 and is incorporated into and intended to form a part of the Adjustable Rate Rider (the"Rider") dated the same date as this Addendum executed by the undersigned and payable to CCSF, LLC DBA GREYSTONE FINANCIAL GROUP (Lender).

THIS ADDENDUM supersedes Section 4(C) of the Rider. None of the other provisions of the Note are changed by this Addendum.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE-FOURTH percentage point(s) (2.250%) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Addendum to Adjustable Rate Rider.

_____  8/7/06
- BORROWER - MICHAEL BONDI - DATE -

Interest Only Addendum to ARM Rider
2/6, 3/6, 5/6 and 7/6 Hybrid ARM
FE-3501 (0602)
⬤     6812.4                               Page 1 of 1

# ADJUSTABLE RATE RIDER
## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

BONDI
Loan #: ███████████
MIN: 100219306085033450

THIS ADJUSTABLE RATE RIDER is made this 4TH day of AUGUST, 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to CCSF, LLC DBA GREYSTONE FINANCIAL GROUP ("Lender") of the same date and covering the property described in the Security Instrument and located at:

9332 GOLDEN GRAPE COURT, LAS VEGAS, NV 89148
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of 7.250%. The Note provides for changes in the interest rate and the monthly payments, as follows:
**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
  (A) Change Dates
  The interest rate I will pay may change on the first day of SEPTEMBER, 2011 and on that day every 6TH month thereafter. Each date on which my interest rate could change is called a "Change Date."
  (B) The Index
  Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (as published in *The Wall Street Journal*)
-Single Family- Fannie Mae UNIFORM INSTRUMENT

average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE-FOURTH percentage points (2.250%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 13.250% or less than 2.250%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO percentage points (2.000%) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.250%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this

Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

- BORROWER - MICHAEL BONDI - DATE -

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (as published in *The Wall Street Journal*)
-Single Family- Fannie Mae UNIFORM INSTRUMENT
745.30                          Page 3 of 3                          FORM 3138 01/01

# PLANNED UNIT DEVELOPMENT RIDER

BONDI
Loan #: ▮▮▮▮▮▮▮
MIN: 100219306085033450

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 4TH day of AUGUST, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to CCSF, LLC DBA GREYSTONE FINANCIAL GROUP, (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

9332 GOLDEN GRAPE COURT, LAS VEGAS, NV 89148
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in THE COVENANTS, CONDITIONS AND RESTRICTIONS FILED OF RECORD THAT AFFECT THE PROPERTY (the "Declaration"). The Property is a part of a planned unit development known as

WINE RIDGE PLACE
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituents Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the

**MULTISTATE PUD RIDER** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

- BORROWER - MICHAEL BONDI - DATE

# EXHIBIT D

# EXHIBIT D

THE ORIGINAL OF THIS DOCUMENT
WAS RECORDED ON _8/10/06_
AS INSTRUMENT NO. _00433_
IN BOOK _20060810_

Assessor's Parcel Number:
176-20-112-014
After Recording Return To:
CCSF, LLC DBA GREYSTONE
FINANCIAL GROUP
7180 POLLOCK DRIVE, SUITE
100
LAS VEGAS, NV 89119
(702) 732-8777

escrow#06-07-0692-ACM

Prepared By:
DORIS CORBIN
CCSF, LLC DBA GREYSTONE
FINANCIAL GROUP
7180 POLLOCK DRIVE, SUITE
100
LAS VEGAS, NV 89119
(702) 732-8777

[Space Above This Line For Recording Data]

DOC ID #: _____

# DEED OF TRUST

BONDI
Loan #:▮▮▮▮▮▮▮
PIN: 176-20-112-014
MIN: 100213060085033468

THIS DEED OF TRUST is made this 4TH day of AUGUST, 2006, among the Grantor, MICHAEL BONDI, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY (herein "Borrower"), NEVADA TITLE COMPANY (herein "Trustee"), and the Beneficiary, Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns.) MERS is organized and ' existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. CCSF, LLC DBA GREYSTONE FINANCIAL GROUP, ("Lender") organized and existing under the laws of NEVADA, and has an address of 7180 POLLOCK DRIVE, SUITE 100, LAS VEGAS, NV 89119.

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of CLARK, State of Nevada:
LOT 14 IN BLOCK 1 OF WINERIDGE PLACE, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 127, OF PLATS, PAGE 51, IN THE OFFICE OF THE COUNTY REOCRDER OF CLARK COUNTY, NEVADA
which has the address of 9332 GOLDEN GRAPE COURT, LAS VEGAS, Nevada 89148 (herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property"; Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the

**NEVADA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS FE-4351(NV) (0307)**

500.29                           Page 1 of 7

right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Deed of Trust.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated AUGUST 4, 2006 and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $69,798.00, with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on SEPTEMBER 1, 2021; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts

NEVADA – SECOND MORTGAGE – 1/80 – FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS
FE-4351(NV) (0307)

payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declarations or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any

**NEVADA** - SECOND MORTGAGE - 1/80 - **FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS**
FE-4351(NV) (0307)

⟨logo⟩        500.29                          Page 3 of 7

successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to

NEVADA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS
FE-4351(NV) (0307)

500.29                                    Page 4 of 7

Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender shall mail copies of such notice in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of: (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Appointment of Receiver; Lender in Possession. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents,

**NEVADA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS**
FE-4351(NV) (0307)
500.29                              Page 5 of 7

including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Reconveyance** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**23. Assumption Fee.** Lender may charge an assumption fee of U.S. $_____

**REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

    IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____  8/7/06
- BORROWER - MICHAEL BONDI - DATE -

*[Sign Original Only]*

**NEVADA - SECOND MORTGAGE – 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS
FE-4351(NV) (0307)**
          500.29                    Page 6 of 7

STATE OF *of NEVADA*

COUNTY OF *CLARK*

This instrument was acknowledged before me on the *07* day of *August, 2006* by *Michael Bendi*

_____

_____

DARLENE Y. SMITH
Notary Public State of Nevada
No. 03-81560-1
My appt. exp. May 1, 2007

*Darlene Y Smith*
Notary Public

*Darlene Y Smith*
(Printed Name)

My commission expires: *May 1, 2007*

Mail Tax Statements To:
CCSF, LLC DBA GREYSTONE FINANCIAL GROUP
7180 POLLOCK DRIVE, SUITE 100
LAS VEGAS, NV 89119

**NEVADA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS**
FE-4351(NV) (0307)
500.29                      Page 7 of 7

Escrow No.: 06-07-0692-ACM

**EXHIBIT "A"**

**LEGAL DESCRIPTION**

LOT 14 IN BLOCK 1 OF **WINERIDGE PLACE**, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 127, OF PLATS, PAGE 51, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

# PLANNED UNIT DEVELOPMENT RIDER

Loan #: ███████████
MIN: 100219306085033468

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 4TH day of AUGUST, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to CCSF, LLC DBA GREYSTONE FINANCIAL GROUP (the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 9332 GOLDEN GRAPE COURT, LAS VEGAS, NV 89148

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in THE COVENANTS, CONDITIONS AND RESTRICTIONS FILED OF RECORD THAT AFFECT THE PROPERTY. (the "Declaration"). The Property is a part of a planned unit development known as WINE RIDGE PLACE (the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then:

**MULTISTATE PUD RIDER** - Single Family/Second Mortgage - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
⬱   2483.10                                    Page 1 of 2                                    Form 3150 1/01
                                                                                             Amended

(i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and

(ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, with any excess paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 9.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

- BORROWER - MICHAEL BONDI - DATE

MULTISTATE PUD RIDER - Single Family/Second Mortgage - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

2483.10                          Page 2 of 2                          Form 3150 1/01
                                                                              Amended

# EXHIBIT E

# EXHIBIT E



**Bank of America**

**Home Loans**

P.O. Box 5170
Simi Valley, CA 93062-5170

C3_1632 LNHISTF 15013 04/24/2012

**Notice Date:** 09/11/2014

MICHAEL BONDI
9332 GOLDEN GRAPE CT
LAS VEGAS, NV 89148

**Loan No.:** ▮▮▮▮▮▮

**Property Address:**
9332 GOLDEN GRAPE COURT
LAS VEGAS, NV 89148

---

**IMPORTANT MESSAGE ABOUT YOUR HOME LOAN**

Enclosed is the loan history statement you requested that provides a detailed outline of transactions for the above-referenced loan number.  This statement provides a history or information on payments we have received from you, servicing expenses we have paid to third parties, tax and insurance payments paid on your behalf, and any late charges assessed and paid.

---

**THANK YOU**

If you have any questions, please call us at 1-800-669-6607, Monday-Friday 7a.m. to 7p.m. Local Time.

We appreciate the opportunity to serve your home loan needs.

This communication is from Bank of America, N.A., the servicer of your home loan.

**Bank of America**
Home Loans

Page 4

Loan Number: ▬▬▬▬
Statement Period: 01/1986 - 09/2014
Date Prepared: 09/11/2014

Property Address:
9332 GOLDEN GRAPE COURT
LAS VEGAS, NV 89148

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | **Beginning Balance** | | | **.00**<br>**279,192.00** | | **.00** | | | | **.00** |
| 08/31/2006 | INITIAL TAX DEP | 75.85 | 09/2006 | .00<br>**279,192.00** | .00 | 75.85<br>**75.85** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 09/14/2006 | REGULAR PAYMENT | 2,025.62 | 10/2006 | .00<br>**279,192.00** | 1,686.79 | 338.83<br>**414.68** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 09/27/2006 | INVESTOR REVRSAL | -1,686.79 | 09/2006 | .00<br>**279,192.00** | -1,686.79 | .00<br>**414.68** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 09/27/2006 | INVESTOR PAYMENT | 1,686.79 | 10/2006 | .00<br>**279,192.00** | 1,686.79 | .00<br>**414.68** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 10/24/2006 | REGULAR PAYMENT | 2,025.62 | 11/2006 | .00<br>**279,192.00** | 1,686.79 | 338.83<br>**753.51** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 11/30/2006 | REGULAR PAYMENT | 2,025.62 | 12/2006 | .00<br>**279,192.00** | 1,686.79 | 338.83<br>**1,092.34** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 01/02/2007 | REGULAR PAYMENT | 2,025.62 | 01/2007 | .00<br>**279,192.00** | 1,686.79 | 338.83<br>**1,431.17** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 01/31/2007 | REGULAR PAYMENT | 2,025.62 | 02/2007 | .00<br>**279,192.00** | 1,686.79 | 338.83<br>**1,770.00** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 02/28/2007 | REGULAR PAYMENT | 2,025.62 | 03/2007 | .00<br>**279,192.00** | 1,686.79 | 338.83<br>**2,108.83** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 02/28/2007 | COUNTY TAX PMT | -826.91 | 03/2007 | .00<br>**279,192.00** | .00 | -826.91<br>**1,281.92** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 04/02/2007 | REGULAR PAYMENT | 2,025.62 | 04/2007 | .00<br>**279,192.00** | 1,686.79 | 338.83<br>**1,620.75** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 05/11/2007 | REGULAR PAYMENT | 2,025.62 | 05/2007 | .00<br>**279,192.00** | 1,686.79 | 338.83<br>**1,959.58** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 06/11/2007 | REGULAR PAYMENT | 2,025.62 | 06/2007 | .00<br>**279,192.00** | 1,686.79 | 338.83<br>**2,298.41** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 07/11/2007 | REGULAR PAYMENT | 2,025.62 | 07/2007 | .00<br>**279,192.00** | 1,686.79 | 338.83<br>**2,637.24** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 08/07/2007 | HAZARD INS PMT | -504.00 | 07/2007 | .00<br>**279,192.00** | .00 | -504.00<br>**2,133.24** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 08/15/2007 | COUNTY TAX PMT | -847.20 | 07/2007 | .00<br>**279,192.00** | .00 | -847.20<br>**1,286.04** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |
| 08/16/2007 | REGULAR PAYMENT | 2,025.62 | 08/2007 | .00<br>**279,192.00** | 1,686.79 | 338.83<br>**1,624.87** | .00 | .00 | .00<br>**.00** | .00<br>**.00** |

**Bank of America**
Home Loans

Page 5

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 09/07/2007 | OVERAGE REFUND | -356.45 | 08/2007 | .00 279,192.00 | .00 | -356.45 1,268.42 | .00 | .00 | .00 .00 | .00 .00 |
| 09/24/2007 | REGULAR PAYMENT | 2,025.62 | 09/2007 | .00 279,192.00 | 1,686.79 | 338.83 1,607.25 | .00 | .00 | .00 .00 | .00 .00 |
| 09/26/2007 | COUNTY TAX PMT | -847.22 | 09/2007 | .00 279,192.00 | .00 | -847.22 760.03 | .00 | .00 | .00 .00 | .00 .00 |
| 10/30/2007 | REGULAR PAYMENT | 2,025.62 | 10/2007 | .00 279,192.00 | 1,686.79 | 338.83 1,098.86 | .00 | .00 | .00 -84.34 | .00 .00 |
| 11/30/2007 | REGULAR PAYMENT | 2,025.62 | 11/2007 | .00 279,192.00 | 1,686.79 | 338.83 1,437.69 | .00 | .00 | .00 -168.68 | .00 .00 |
| 12/26/2007 | COUNTY TAX PMT | -847.22 | 11/2007 | .00 279,192.00 | .00 | -847.22 590.47 | .00 | .00 | .00 -168.68 | .00 .00 |
| 12/28/2007 | REGULAR PAYMENT | 2,012.65 | 12/2007 | .00 279,192.00 | 1,686.79 | 325.86 916.33 | .00 | .00 | .00 -253.02 | .00 .00 |
| 01/31/2008 | REGULAR PAYMENT | 2,012.65 | 01/2008 | .00 279,192.00 | 1,686.79 | 325.86 1,242.19 | .00 | .00 | .00 -337.36 | .00 .00 |
| 02/27/2008 | COUNTY TAX PMT | -847.22 | 01/2008 | .00 279,192.00 | .00 | -847.22 394.97 | .00 | .00 | .00 -337.36 | .00 .00 |
| 05/01/2008 | MISC. POSTING | -34.61 | 01/2008 | .00 279,192.00 | .00 | -34.61 360.36 | .00 | .00 | .00 -337.36 | .00 .00 |
| 05/01/2008 | ESCROW SHORTAGE | 34.61 | 01/2008 | .00 279,192.00 | .00 | 34.61 394.97 | .00 | .00 | .00 -337.36 | .00 .00 |
| 07/14/2008 | HAZARD INS PMT | -549.00 | 01/2008 | .00 279,192.00 | .00 | -549.00 -154.03 | .00 | .00 | .00 -337.36 | .00 .00 |
| 08/11/2008 | COUNTY TAX PMT | -853.98 | 01/2008 | .00 279,192.00 | .00 | -853.98 -1,008.01 | .00 | .00 | .00 -337.36 | .00 .00 |
| 09/30/2008 | COUNTY TAX PMT | -790.23 | 01/2008 | .00 279,192.00 | .00 | -790.23 -1,798.24 | .00 | .00 | .00 -337.36 | .00 .00 |
| 12/22/2008 | COUNTY TAX PMT | -790.23 | 01/2008 | .00 279,192.00 | .00 | -790.23 -2,588.47 | .00 | .00 | .00 -337.36 | .00 .00 |
| 02/25/2009 | COUNTY TAX PMT | -790.23 | 01/2008 | .00 279,192.00 | .00 | -790.23 -3,378.70 | .00 | .00 | .00 -337.36 | .00 .00 |
| 07/16/2009 | HAZARD INS PMT | -6,927.00 | 01/2008 | .00 279,192.00 | .00 | -6,927.00 -10,305.70 | .00 | .00 | .00 -337.36 | .00 .00 |

**Bank of America**
Home Loans

Page 6

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 08/11/2009 | COUNTY TAX PMT | -597.07 | 01/2008 | .00 279,192.00 | .00 | -597.07 -10,902.77 | .00 | .00 | .00 -337.36 | .00 .00 |
| 09/30/2009 | COUNTY TAX PMT | -530.54 | 01/2008 | .00 279,192.00 | .00 | -530.54 -11,433.31 | .00 | .00 | .00 -337.36 | .00 .00 |
| 12/10/2009 | HAZ INS CREDIT | 3,397.00 | 01/2008 | .00 279,192.00 | .00 | 3,397.00 -8,036.31 | .00 | .00 | .00 -337.36 | .00 .00 |
| 01/15/2010 | MISC. POSTING | 8,036.31 | 01/2008 | .00 279,192.00 | .00 | 8,036.31 .00 | .00 | .00 | .00 -337.36 | .00 .00 |
| 03/25/2010 | PRINCIPAL ADJUST. | 279,192.00 | 01/2008 | .00 279,192.00 | .00 | .00 .00 | .00 | .00 | .00 -337.36 | .00 .00 |
| 02/10/2012 | Waive/Adj LateChg | 84.34 | 01/2008 | .00 .00 | .00 | .00 .00 | .00 | .00 | 84.34 -253.02 | .00 .00 |
| 02/10/2012 | Waive/Adj LateChg | 84.34 | 01/2008 | .00 .00 | .00 | .00 .00 | .00 | .00 | 84.34 -168.68 | .00 .00 |
| 02/10/2012 | Waive/Adj LateChg | 84.34 | 01/2008 | .00 .00 | .00 | .00 .00 | .00 | .00 | 84.34 -84.34 | .00 .00 |
| 02/10/2012 | Waive/Adj LateChg | 84.34 | 01/2008 | .00 .00 | .00 | .00 .00 | .00 | .00 | 84.34 .00 | .00 .00 |

# EXHIBIT F

# EXHIBIT F



**Bank of America**

**Home Loans**

*P.O. Box 5170*
*Simi Valley, CA 93062-5170*

C3_1632 LNHISTF 15013 04/24/2012

**Notice Date:** 09/11/2014

MICHAEL BONDI
10300 W CHARLESTON BLVD.
LAS VEGAS, NV 89135

**Loan No.:**

**Property Address:**
9332 GOLDEN GRAPE COURT
LAS VEGAS, NV 89148

**IMPORTANT MESSAGE ABOUT YOUR HOME LOAN**

Enclosed is the loan history statement you requested that provides a detailed outline of transactions for the above-referenced loan number. This statement provides a history or information on payments we have received from you, servicing expenses we have paid to third parties, tax and insurance payments paid on your behalf, and any late charges assessed and paid.

**THANK YOU**

If you have any questions, please call us at 1-800-669-6607, Monday-Friday 7a.m. to 7p.m. Local Time.

We appreciate the opportunity to serve your home loan needs.

This communication is from Bank of America, N.A., the servicer of your home loan.

**Bank of America**
**Home Loans**

Loan Number: ▮▮▮▮▮▮▮▮
Statement Period: 01/1986 - 09/2014
Date Prepared: 09/11/2014

Property Address:
9332 GOLDEN GRAPE COURT
LAS VEGAS, NV 89148

Page 4

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | **Beginning Balance** | | | 69,798.00 | | .00 / .00 | | | | .00 |
| 09/14/2006 | REGULAR PAYMENT | 664.70 | 10/2006 | 24.88 / 69,773.12 | 639.82 | .00 / .00 | .00 | | .00 | .00 |
| 09/29/2006 | INVESTOR REVRSAL | -664.70 | 09/2006 | -24.88 / 69,798.00 | -639.82 | .00 / .00 | .00 | | .00 | .00 |
| 09/29/2006 | INVESTOR PAYMENT | 664.70 | 10/2006 | 24.88 / 69,773.12 | 639.82 | .00 / .00 | .00 | | .00 | .00 |
| 10/24/2006 | REGULAR PAYMENT | 664.70 | 11/2006 | 25.11 / 69,748.01 | 639.59 | .00 / .00 | .00 | | .00 | .00 |
| 11/30/2006 | REGULAR PAYMENT | 664.70 | 12/2006 | 25.34 / 69,722.67 | 639.36 | .00 / .00 | .00 | | .00 | .00 |
| 01/02/2007 | REGULAR PAYMENT | 664.70 | 01/2007 | 25.58 / 69,697.09 | 639.12 | .00 / .00 | .00 | | .00 | .00 |
| 01/31/2007 | REGULAR PAYMENT | 664.70 | 02/2007 | 25.81 / 69,671.28 | 638.89 | .00 / .00 | .00 | | .00 | .00 |
| 02/28/2007 | REGULAR PAYMENT | 664.70 | 03/2007 | 26.05 / 69,645.23 | 638.65 | .00 / .00 | .00 | | .00 | .00 |
| 04/02/2007 | REGULAR PAYMENT | 664.70 | 04/2007 | 26.29 / 69,618.94 | 638.41 | .00 / .00 | .00 | | .00 | .00 |
| 05/11/2007 | REGULAR PAYMENT | 664.70 | 05/2007 | 26.53 / 69,592.41 | 638.17 | .00 / .00 | .00 | | .00 | .00 |
| 06/11/2007 | REGULAR PAYMENT | 664.70 | 06/2007 | 26.77 / 69,565.64 | 637.93 | .00 / .00 | .00 | | .00 | .00 |
| 07/11/2007 | REGULAR PAYMENT | 664.70 | 07/2007 | 27.01 / 69,538.63 | 637.69 | .00 / .00 | .00 | | .00 | .00 |
| 08/16/2007 | REGULAR PAYMENT | 664.70 | 08/2007 | 27.26 / 69,511.37 | 637.44 | .00 / .00 | .00 | | .00 | .00 |
| 09/24/2007 | REGULAR PAYMENT | 664.70 | 09/2007 | 27.51 / 69,483.86 | 637.19 | .00 / .00 | .00 | | .00 | .00 |
| 10/30/2007 | REGULAR PAYMENT | 664.70 | 10/2007 | 27.76 / 69,456.10 | 636.94 | .00 / .00 | .00 | | -33.24 | .00 |
| 11/30/2007 | REGULAR PAYMENT | 664.70 | 11/2007 | 28.02 / 69,428.08 | 636.68 | .00 / .00 | .00 | | -66.48 | .00 |
| 12/28/2007 | REGULAR PAYMENT | 664.70 | 12/2007 | 28.28 / 69,399.80 | 636.42 | .00 / .00 | .00 | | -99.72 | .00 |

**Bank of America**
**Home Loans**

Page 5

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/31/2008 | REGULAR PAYMENT | 664.70 | 01/2008 | 28.54 | 636.16 | .00 | .00 | .00 | .00 | .00 |
| | | | | 69,371.26 | | .00 | | | -132.96 | .00 |

# EXHIBIT G

# EXHIBIT G

20080808-0003694

Fee: $15.00     RPTT: $0.00
N/C Fee: $0.00
08/08/2008         15:16:42
T20080171922
Requestor:
  FIRST AMERICAN NATIONAL DEFA
  Debbie Conway          MSH
  Clark County Recorder    Pgs: 2

**RECORDING REQUESTED BY:**
**WHEN RECORDED MAIL TO:**
**RECONTRUST COMPANY**
**2380 Performance Dr, RGV-D7-450**
**Richardson, TX  75082**
**Attn:  Crystal Taylor**
**TS No.  08-84766**
**Title Order No.  3830219**

**APN No.  176-20-112-014**

## NEVADA IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, is the duly appointed Trustee under a Deed of Trust dated 08/04/2006, executed by MICHAEL BONDI, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY. as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as beneficiary recorded 08/10/2006, as Instrument No. 0000432 (or Book 20060810, Page ) of Official Records in the Office of the County Recorder of Clark County, Nevada.    Said obligation including ONE NOTE FOR THE ORIGINAL sum of $279,192.00.  That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of :

FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL, INTEREST AND IMPOUNDS WHICH BECAME DUE ON  02/01/2008  AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL. INTEREST AND IMPOUNDS. TOGETHER WITH ALL LATE CHARGES.

That by reason thereof, the present beneficiary under such deed of trust has executed and delivered to RECONTRUST COMPANY a written Declaration of Default and Demand for sale, and has deposited with RECONTRUST COMPANY such deed of trust and all documents evidencing obligations secured  thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable  and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

## NOTICE

You may have the right to cure the default hereon and reinstate the one obligation secured by such Deed Of Trust above described.  Section NRS 107.080 permits certain defaults to be cured upon the payment of the amounts required by that statutory section without requiring payment of that portion of principal and interest which would not be due had no default occured.  Where reinstatement is possible, if the default is not cured within 35 days following recording and mailing of this Notice to Trustor or Trustor's successor in interest, the right of reinstatement will terminate and the property may there after be sold.  The Trustor may have the right to bring court action to assert the non existence of a default or any other defense of Trustor to acceleration and sale.

To determine if reinstatement is possible and the amount, if any, to cure the default, contact: Countrywide Home Loans, Inc, c/o RECONTRUST COMPANY, 2380 Performance Dr, RGV-D7-450, Richardson, TX 75082, PHONE: (800) 281-8219

DATED: August 08, 2008

RECONTRUST COMPANY, as agent for the Beneficiary
By: FIRST AMERICAN TITLE, as Agent

BY:

**KAREN MERKEL**

State of: California )
County of: Contra Costa )

On 08/08/2008 before me **LINDA S. DERNONCOURT** , notary public, personally appeared **KAREN MERKEL** , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

LINDA S. DERNONCOURT
COMM. #1517788
NOTARY PUBLIC · CALIFORNIA
CONTRA COSTA COUNTY
My Comm. Expires Oct 4, 2008

*Form nvnodfax (03/01)*

# EXHIBIT H

# EXHIBIT H

20090305-0003306

Fee: $15.00
N/C Fee: $0.00

03/05/2009          14:10:27
T20090076013
Requestor:
    TITLE COURT SERVICE INC

**Debbie Conway**          SCA
**Clark County Recorder**  Pgs: 2

WHEN RECORDED MAIL TO:
**RECONTRUST COMPANY**
2380 Performance Dr, RGV-D7-450
Richardson, TX  75082

TS No. 08-0084766
Title Order No. 3830219

APN No.:176-20-112-014

## NEVADA NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 08/04/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

Notice is hereby given that RECONTRUST COMPANY, as duly appointed trustee pursuant to the Deed of Trust executed by MICHAEL BONDI, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY., dated 08/04/2006 and recorded 08/10/2006, as Instrument No. 0000432, in Book 20060810, Page , of Official Records in the office of the County Recorder of CLARK County, State of Nevada, will sell on 03/23/2009 at 10:00 AM, at At the front entrance to Nevada Legal News located at 930 S. 4TH Street, Las Vegas, NV. at public auction, to the highest bidder for cash(in the forms which are lawful tender in the United States, payable in full at time of sale), all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust. The street address and other common designation, if any, of the real property described above is purported to be: 9332 GOLDEN GRAPE COURT, LAS VEGAS, NV 89148. The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $308,771.59. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

 In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.  In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed until funds become available to the payee or endorsee as a matter or right.  Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided therein, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

DATED:  March 03, 2009
RECONTRUST COMPANY, Trustee
2380 Performance Dr, TX2-985-07-03
Richardson, TX   75082
Phone/Sale Information  (800) 281-8219


By:_____
       Deborra Carr,   Team Member

RECONTRUST COMPANY is a debt collector attempting to collect a debt.  Any information obtained
will be used for that purpose.

# EXHIBIT I

# EXHIBIT I

20090618-0003934

176-20-112-014

AND WHEN RECORDED MAIL TO:
~~RECONTRUST COMPANY~~ The BANK of New York Mellon
400 COUNTRYWIDE WAY SV-35
SIMI VALLEY, CA 93065

Fee: $16.00    RPTT: $821.10
N/C Fee:  $0.00

06/18/2009          13:26:07
T20090213552
Requestor:
TITLE COURT SERVICE INC

Debbie Conway          JJF
Clark County Recorder  Pgs: 4

Forward Tax Statements to Address listed above
TS No. 08-0084766
Title Order No.  3830219

a

### TRUSTEE'S DEED UPON SALE NEVADA

APN#      176-20-112-014

The amount of the unpaid debt was $ 314,064.46
The amount paid by the Grantee was $ 160,565.00
The property is in the city of LAS VEGAS, County of CLARK
The documentary transfer tax is $_____ 8 21.10 _____.  The Grantee herein  was the beneficiary.
 RECONTRUST COMPANY, N.A., successor in interest by merger to RECONTRUST COMPANY, A
NEVADA CORPORATION, as the duly appointed Trustee, under a Deed of Trust referred to below, and
herein called "Trustee", does hereby grant without covenant or warranty to:   THE BANK OF NEW YORK
MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS
CWALT, INC. ALTERNATIVE LOAN TRUST 2006-OC8,MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-OC8  herein called Grantee, the following described real property situated
in CLARK County, Nevada:
SEE ATTACHED LEGAL DESCRIPTION
This conveyance is made pursuant to the powers conferred upon Trustee by the Deed of Trust executed by
MICHAEL BONDI, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY., as Trustor,
recorded on 08/10/2006, Instrument Number 0000432 (or Book 20060810, Page ) Official Records in the
Office of the County Recorder of CLARK County.   All requirements of law regarding the recording and
mailing of copies of the Notice of Default and Election to Sell, and the mailing, posting, and publication of
the Notice of Trustee's Sale have been complied with.  Trustee, in compliance with said Notice of Trustee's
Sale and in exercise of its power under said Deed of Trust sold said real property at public auction on
06/04/2009.  Grantee, being highest bidder at said sale became the purchaser of said property for the amount
bid, which amount was $ 160,565.00.

DATED:  June 08, 2009

RECONTRUST COMPANY, N.A., successor in interest by merger to RECONTRUST COMPANY, A NEVADA CORPORATION, Successor Trustee

BY: _Sandra L. Hickey_

Sandra L. Hickey, Assistant Secretary

State of: _____ **Texas** )

County of: _____ **Dallas** )

On _**JUN 0 9 2009**__ before me _____ **Shameca L. Harrison** , personally appeared _____ **Sandra L. Hickey** ___, know to me (or proved to me on the oath of _____ or through _____ ) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed. Witness my hand and official seal.

_____
Notary Public's Signature

**SHAMECA L HARRISON**
**My Commission Expires**
**August 13, 2012**

TS # 08-0084766
PUB# 3010654
LOAN TYPE: CONV

# "EXHIBIT A"

## LEGAL DESCRIPTION

LOT 14 IN BLOCK 1 OF WINERIDGE PLACE, AS SHOWN BY MAP THEREOF ON
FILE IN BOOK 127, OF PLATS, PAGE 51, IN THE OFFICE OF THE COUNTY
RECORDER OF CLARK COUNTY, NEVADA.  APN: 176-20-112-014

**STATE OF NEVADA**
**DECLARATION OF VALUE FORM**

1. Assessor Parcel Number(s)
   a. 176-20-112-014
   b. _____
   c. _____
   d. _____

2. Type of Property:
   a. ☐ Vacant Land    b. ☒ Single Fam. Res.
   c. ☐ Condo/Twnhse   d. ☐ 2-4 Plex
   e. ☐ Apt. Bldg      f. ☐ Comm'l/Ind'l
   g. ☐ Agricultural   h. ☐ Mobile Home
   ☐ Other_____

   | FOR RECORDER'S OPTIONAL USE ONLY |
   | --- |
   | Book:_____ Page:_____ |
   | Date of Recording:_____ |
   | Notes: |

3. a. Total Value/Sales Price of Property          $ 160,565.00 _____
   b. Deed in Lieu of Foreclosure Only (value of property)   (_____)
   c. Transfer Tax Value:                           $ 160,565.00
   d. Real Property Transfer Tax Due                $ 821.10

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section _____
   b. Explain Reason for Exemption:_____
   _____

5. Partial Interest: Percentage being transferred: _____%
   The undersigned declares and acknowledges, under penalty of perjury, pursuant to
   NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their
   information and belief, and can be supported by documentation if called upon to substantiate the
   information provided herein. Furthermore, the parties agree that disallowance of any claimed
   exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax
   due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be
   jointly and severally liable for any additional amount owed.

   Signature _Maura Meyers_          Capacity _Grantor_

   Signature _Sandra L. Hicks_       Capacity _Grantee_

   | **SELLER (GRANTOR) INFORMATION** | **BUYER (GRANTEE) INFORMATION** |
   | --- | --- |
   | **(REQUIRED)** N/A | **(REQUIRED)** |
   | Print Name: ~~MERS~~ Rocontrust company | Print Name: The Bank of New York Mellon |
   | Address: 400 Countrywide Way | Address: 400 Countrywide Way |
   | City: Simi Valley | City: Simi Valley |
   | State: California   Zip: 93065 | State: California   Zip: 93065 |

   **COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**
   Print Name: First American title, CO   Escrow #: 3030219
   Address: 1855 Gate Way Blvd, Ste# 360
   City: Concord                          State: CA   Zip: 94520

**AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED**

Title Court Service
2800 W. Sahara  Suite 2G
Las Vegas, NV  89102

3934

# EXHIBIT J

# EXHIBIT J

**Bank of America**
**Home Loans**

400 COUNTRYWIDE WAY
SIMI VALLEY, CA 93065-6298

Date Prepared
01/18/2010

Account Number ▬▬▬▬

## IMPORTANT TAX INFORMATION ENCLOSED

Property Address
9332 GOLDEN GRAPE COURT

MICHAEL BONDI
9332 Golden Grape Ct
Las Vegas, NV 89148-4957

## Instructions for Debtor

**Note.** You may not have to include in income all or a portion of certain qualified principal residence indebtedness canceled in 2009. See Pub. 4681, Canceled Debts, Foreclosures, Repossessions, and Abandonments (for individuals), for more information.

If a federal government agency, certain agencies connected with the Federal Government, financial institution, credit union, or an organization having a significant trade or business of lending money (such as a finance or credit card company) cancels or forgives a debt you owe of $600 or more, this form must be provided to you. Generally, if you are an individual, you must include all canceled amounts, even if less than $600, on the "Other income" line of Form 1040. If you are a corporation, partnership, or other entity, report the canceled debt on your tax return. See the tax return instructions.

However, some canceled debts are not includible, or fully includible, in your income, such as certain student loans, certain debts reduced by the seller after purchase, qualified farm debt, qualified real property business debt, qualified principal residence indebtedness, or debts canceled in bankruptcy. See Pub. 4681. Do not report a canceled debt as income if you did not deduct it but would have been able to do so on your tax return if you had paid it. Also, do not include canceled debts in your income to the extent you were insolvent immediately before the cancellation of the debt. If you exclude a canceled debt from your income, file Form 982, Reduction of Tax Attributes Due to Discharge of Indebtedness (and Section 1082 Basis Adjustment).

**Account number.** May show an account or other unique number the creditor assigned to distinguish your account.

**Box 1.** Shows the date the debt was canceled.

**Box 2.** Shows the amount of debt canceled. **Note:** If you do not agree with this amount, contact your creditor.

**Box 3.** Shows interest if included in the canceled debt in box 2. See Pub. 525, Taxable and Nontaxable Income, to see if you must include the interest in gross income.

**Box 4.** Shows a description of the debt. If box 7 is completed, box 4 shows a description of the property.

**Box 5.** Shows whether borrower was personally liable for repayment of the debt. See Pub. 4681 for reporting instructions.

**Box 6.** If the box is marked, the creditor has indicated the debt was canceled in a bankruptcy proceeding.

**Box 7.** If, in the same calendar year, a foreclosure or abandonment of property occurred in connection with the cancellation of the debt, the fair market value (FMV) of the property will be shown, or you will receive a separate Form 1099-A, Acquisition or Abandonment of Secured Property. Generally, the gross foreclosure bid price is considered to be the FMV. For an abandonment or voluntary conveyance in lieu of foreclosure, the FMV is generally the appraised value of the property. You may have income or loss because of the acquisition or abandonment. If the property was your main home, see Pub. 523, Selling Your Home, to figure any taxable gain or ordinary income. See Pub. 4681, for information about foreclosures and abandonments.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

☐ CORRECTED (if checked)   ☐ VOID (if checked)

| CREDITOR'S name, street address, city, state, ZIP code, and telephone no. | 1 Date canceled | OMB No. 1545-1424 | |
|---|---|---|---|
| BANK OF AMERICA, N.A.<br>400 COUNTRYWIDE WAY<br>SIMI VALLEY, CA  93065-6298<br>1-800-669-6607 | June 4, 2009 | **2009** | **Cancellation of Debt** |
| | 2 Amount of debt canceled<br>$ 90,292.00 | | |
| | 3 Interest if included in box 2<br>$ 0.00 | Form **1099-C** | |
| CREDITOR'S federal identification number ▬▬▬ | DEBTOR'S identification number ▬▬▬ | 4 Debt description | **Copy B**<br>**For Debtor** |
| DEBTOR'S name<br><br>MICHAEL BONDI | | | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported. |
| Street address (including apt. no.)<br>9332 Golden Grape Ct | | 5 Was borrower personally liable for repayment of the debt? | |
| City, state, and ZIP code<br>Las Vegas, NV  89148-4957 | | ☒ Yes      ☐ No | |
| Account number (see instructions)<br>▬▬▬ | 6 Bankruptcy (if checked)<br>☐ | 7 Fair market value of property<br>$ 188,900.00 | |

Form **1099-C**                    (keep for your records)                    Department of the Treasury - Internal Revenue Service

**Account Number** ███████████
Property Address
9332 GOLDEN GRAPE COURT

---

## IMPORTANT IRS REGULATIONS

**YOU SHOULD CONSULT WITH THE IRS OR YOUR TAX ADVISOR IF YOU HAVE ANY QUESTIONS.   BANK OF AMERICA, N.A. DOES NOT OFFER TAX ADVICE.**

Please verify that the Debtor's identification number listed on the IRS Tax form is correct (see previous page).  Providing your correct TIN is very important.  If the TIN is not correct, please provide us with the correct number immediately by writing to us at the address below or calling us at 1-800-669-6607.  If you fail to provide us your correct TIN, you are subject to a $50 penalty imposed by the IRS and backup withholding of interest paid to you.  Note:  Please include your name and account number on all communications to us.

**BANK OF AMERICA, N.A.**
**400 COUNTRYWIDE WAY**
**SIMI VALLEY, CA  93065-6298**

---

## IMPORTANT IRS REGULATIONS

IRS regulations require BANK OF AMERICA, N.A. to issue a 1099, but for certain individuals amounts in box 2 and/or box 3 might not be taxable under the terms of the Mortgage Forgiveness Debt Relief Act of 2007.  Please consult your tax advisor to determine if this Act applies to your situation.

# EXHIBIT K

# EXHIBIT K

## ATTACHMENT II

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



Hope Andrade
Secretary of State

## Office of the Secretary of State

### CERTIFICATE OF FILING
### OF

### BAC Home Loans Servicing, LP
File Number: 13186910

[formerly: COUNTRYWIDE HOME LOANS SERVICING LP]

The undersigned, as Secretary of State of Texas, hereby certifies that an amendment to the certificate of limited partnership or the application for registration as a foreign limited partnership for the above named limited partnership has been received in this office and filed as provided by law on the date shown below.

Accordingly, the undersigned, as Secretary of State hereby issues this Certificate evidencing the filing in this office.

Dated: 04/21/2009
Effective: 04/27/2009



Hope Andrade
Secretary of State

**FILED**
In the Office of the
Secretary of State of Texas

APR 2 1 2009

Corporations Section

### CERTIFICATE OF AMENDMENT
### TO THE
### CERTIFICATE OF LIMITED PARTNERSHIP

Pursuant to the provisions of Section 2.02 of the Texas Revised Partnership Act, the undersigned limited partnership desires to amend its Certificate of Limited Partnership and for that purpose submits the following Certificate of Amendment:

1. The name of the limited partnership is Countrywide Home Loans Servicing LP.

2. The Certificate of Limited Partnership is amended as follows:

The name of the limited partnership is BAC Home Loans Servicing, LP.

The Certificate of Limited Partnership shall be amended, as of April 27, 2009, to reflect the above name change.

Dated: April 2/, 2009

COUNTRYWIDE HOME LOANS
SERVICING LP

By: Countrywide GP, LLC
Its: General Partner

By: _____
Jack W. Schakett
President and Chief Executive Officer

# EXHIBIT L

# EXHIBIT L

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



Hope Andrade
Secretary of State

# Office of the Secretary of State

## CERTIFICATE OF MERGER

The undersigned, as Secretary of State of Texas, hereby certifies that a filing instrument merging

BAC Home Loans Servicing, LP
Domestic Limited Partnership (LP)
[File Number: 13186910]

Into

Bank of America, National Association
Other Entity/Organization
USA
[Entity not of Record, Filing Number Not Available]

has been received in this office and has been found to conform to law.

Accordingly, the undersigned, as Secretary of State, and by the virtue of the authority vested in the secretary by law, hereby issues this certificate evidencing the acceptance and filing of the merger on the date shown below.

Dated: 06/28/2011

Effective: 07/01/2011



Hope Andrade
Secretary of State

*Come visit us on the internet at http://www.sos.state.tx.us/*

Phone: (512) 463-5555                Fax: (512) 463-5709                Dial: 7-1-1 for Relay Services
Prepared by: Jean Marchione              TID: 10343                    Document: 374034630002

**Form 622**
**(Revised 12/08)**
Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: see instructions**



**Certificate of Merger**
**Combination Merger**
**Business Organizations Code**

This space reserved for office use.

**F I L E D**
In the Office of the
Secretary of State of Texas

**JUN 28 2011**

**Corporations Section**

## Parties to the Merger

Pursuant to chapter 10 of the Texas Business Organizations Code, and the title applicable to each domestic filing entity identified below, the undersigned parties submit this certificate of merger.

The name, organizational form, state of incorporation or organization, and file number, if any, issued by the secretary of state for each organization that is a party to the merger are as follows:

Party 1

BAC Home Loans Servicing, LP
*Name of Organization*
The organization is a   limited partnership                          It is organized under the laws of
                       *Specify organizational form (e.g., for-profit corporation)*

Texas          USA                        The file number, if any, is   13186910
*State*        *Country*                                               *Texas Secretary of State file number*
Its principal place of business is  6400 Legacy Drive          Plano          TX
                                    *Address*                   *City*        *State*

☐ The organization will survive the merger.   ☒ The organization will not survive the merger.

☐ The plan of merger amends the name of the organization.  The new name is set forth below.

_____
*Name as Amended*

Party 2

Bank of America, National Association
*Name of Organization*
The organization is a   national banking association                  It is organized under the laws of
                       *Specify organizational form (e.g., for-profit corporation)*

United States                  The file number, if any, is   0000000132
*State*        *Country*                                      *Texas Secretary of State file number*
Its principal place of business is  101 South Tryon Street     Charlotte      NC
                                    *Address*                   *City*        *State*

☒ The organization will survive the merger.   ☐ The organization will not survive the merger.

☐ The plan of merger amends the name of the organization.  The new name is set forth below.

_____
*Name as Amended*

Party 3

_____
*Name of Organization*
The organization is a                                                It is organized under the laws of
                       *Specify organizational form (e.g., for-profit corporation)*

Form 622

5

The file number, if any, is

_____ | _____ | _____
State | Country | Texas Secretary of State file number

Its principal place of business is

_____ | _____ | _____
Address | City | State

☐ The organization will survive the merger.   ☐ The organization will not survive the merger.

☐ The plan of merger amends the name of the organization.  The new name is set forth below.

_____
Name as Amended

## Plan of Merger

☐ The plan of merger is attached.

*If the plan of merger is not attached, the following statements must be completed.*

### Alternative Statements

In lieu of providing the plan of merger, each domestic filing entity certifies that:

1. A signed plan of merger is on file at the principal place of business of each surviving, acquiring, or new domestic entity or non-code organization that is named in this form as a party to the merger or an organization created by the merger.

2. On written request, a copy of the plan of merger will be furnished without cost by each surviving, acquiring, or new domestic entity or non-code organization to any owner or member of any domestic entity that is a party to, or created by the plan of merger and, if the certificate of merger identifies multiple surviving domestic entities or non-code organizations, to any creditor or oblige of the parties to the merger at the time of the merger if a liability or obligation is then outstanding.

*Complete item 3B if the merger effected changes to the certificate of formation of a surviving filing entity.*

3A. No amendments to the certificate of formation of any surviving filing entity that is a party to the merger are effected by the merger.

3B. ☐ The plan of merger effected changes or amendments to the certificate of formation of:

_____
Name of filing entity effecting amendments

The changes or amendments to the filing entity's certificate of formation, other than the name change noted previously, are stated below.

Amendment Text Area

```



```

4. Organizations Created by Merger
The name, jurisdiction of organization, principal place of business address, and entity description of each entity or other organization to be created pursuant to the plan of merger are set forth below. The certificate of formation of each new domestic filing entity to be created is being filed with this certificate of merger.

6.

# EXHIBIT M

# EXHIBIT M



Doc ID: BANACOM3A

**Bank of America**
**Home Loans**

P. O. Box 941633
Simi Valley, CA 93094-1633

MICHAEL BONDI
9332 GOLDEN GRAPE CT
LAS VEGAS        NV 89148-4957

**Account No.:** ▮▮▮▮▮▮▮

---

**IMPORTANT MESSAGE ABOUT YOUR LOAN**

Effective July 1, 2011, the servicing of home loans by our subsidiary- BAC Home Loans Servicing, LP, transfers to its parent company- Bank of America, N.A. Based upon our records as of July 4 , 2011, the home loan account noted above is affected by this servicing transfer. The information contained in this communication does not change or affect any other communications you may have received or will receive regarding this servicing transfer.

**IMPORTANT ADDITIONAL INFORMATION**

Under the federal Fair Debt Collections Practices Act and certain state laws, Bank of America, N.A. is considered a debt collector. As a result, we are sending you the enclosed Fair Debt Collection Practices Act Notice containing important information about your loan and your rights under applicable federal and state law.

If an attorney represents you in connection with your Bank of America home loan, please provide your attorney a copy of this letter and the enclosed legal notice.

**THANK YOU**

We appreciate the opportunity to serve your home loan needs. If you have any questions or need assistance regarding this servicing transfer, please call us at 1.877.488.7812 between 8 a.m. and 9 p.m. Eastern, Monday through Friday.

Please Note: This letter is being sent to the address and borrower(s) listed above. If there are other borrowers on this account who receive mail at a different address than above, please share this information with them.

**Bank of America, N.A. is required by law to inform you that this communication is from a debt collector attempting to collect a debt, and any information obtained will be used for that purpose. Notwithstanding the foregoing, if you are currently in a bankruptcy proceeding or have received a discharge of the debt referenced above, this notice is for informational purposes only and is not an attempt to collect a debt. If you are represented by an attorney, please provide this notice to your attorney.**

Bank of America, N.A. Member FDIC. Bank of America, N.A. is an Equal Housing Lender.
©2011 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserved.

Fair Debt Collections Practices Act and State Law Notice

The servicing of your home loan was transferred to Bank of America, N.A., effective July 1, 2011.  Bank of America, N.A. is required by law to advise you of the following:

(1.)  Under the federal Fair Debt Collections Practices Act and certain state laws, Bank of America, N.A. is considered a debt collector.  Bank of America, N.A. must provide certain information to you in order to make sure you are informed when a communication is related to a debt.  The purpose of this letter is therefore to provide you with information required by law, including the amount of the debt.

(2.)  Debt Validation Notice:

  a)  The amount of the debt: As of July 4 , 2011, you owe $97,952.58.  Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Therefore, if you pay the amount shown above, an adjustment may be necessary after we receive your payment, in which event we will inform you or your agent before accepting the payment for collection.  For further information, write to the address provided below or call 1.877.488.7812 between 8 a.m. and 9 p.m. Eastern, Monday through Friday.
  b)  The name of the creditor to whom the debt is owed: BANK OF NY (CWHEQ 2006-S6)
      *Please note that unless Bank of America, N.A. is listed in 2(b) as the creditor of your loan, Bank of America, N.A. does not own your loan and only services your loan on behalf of your creditor, subject to the requirements and guidelines of your creditor.*
  c)  Unless you, within thirty (30) days after receipt of this letter, dispute the validity of the debt or any portion of the debt, Bank of America, N.A. will assume the debt to be valid.
  d)  If you notify Bank of America, N.A. in writing, at the address provided below within the thirty (30) day period, that the debt, or any portion thereof, is disputed, Bank of America, N.A. will obtain verification of the debt and mail it to you.
  e)  Upon your written request within the thirty (30) day period, Bank of America, N.A. will provide you with the name and address of the original creditor if it is different from the current creditor.

Bank of America, N.A.
Customer Service, CA6-919-01-41
Attention: DVN
P.O. Box 1140
Simi Valley, CA  93062-1140

If you have any questions regarding this notification, please call Bank of America, N.A. Customer Service at 1.877.488.7812 between 8 a.m. and 9 p.m. Eastern, Monday through Friday.

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector attempting to collect a debt, and any information obtained will be used for that purpose.  Notwithstanding the foregoing, if you are currently in a bankruptcy proceeding or have received a discharge of the home loan debt referenced above, this statement is being furnished for informational purposes only.  It should not be construed as an attempt to collect against you personally, Bank of America, N.A. will take no steps to collect from you personally or against the property securing this loan while the bankruptcy's automatic stay remains in effect.  In the future, you may receive a discharge in bankruptcy.  Under those circumstances, by operation of law, Bank of America, N.A. will retain the ability to enforce its rights against the property securing this loan should there be a default under the terms of your loan documents. If you are represented by an attorney, please provide this notice to your attorney.

SEE REVERSE SIDE

Bank of America, N.A.  Member FDIC.  Bank of America, N.A. is an Equal Housing Lender.
©2011 Bank of America Corporation.  Trademarks are the property of Bank of America Corporation.  All rights reserved.

Notice to Colorado Residents: A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer.  A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.  FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.AGO.STATE.CO.US/CADC/CADMAIN.CFM

Notice to California Residents: The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m.  They may not harass you by using threats of violence or arrest or by using obscene language.  Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work.  For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt.  Collectors may contact another person to confirm your location or enforce a judgment.  For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

# EXHIBIT N

# EXHIBIT N

G3-157B  PBGSRL00-16004  09/19/2013

**Bank of America**

**Home Loans**

P.O. Box 5170
SIMI VALLEY, CA  93062-5170

Send Correspondence to:
P.O. Box 5170
Simi Valley, CA  93062-5170

Business Address:
450 American Street
Simi Valley, CA  93065-6285

**IMPORTANT INFORMATION ENCLOSED**

**Notice Date:**  June 24, 2013

**Loan No.:**  ████████

MICHAEL BONDI
10300 W CHARLESTON BLVD. UNIT
LAS VEGAS, NV  89135

**Property Address:**
9332 Golden Grape Court
Las Vegas, NV  89148

Dear MICHAEL BONDI,

**The servicing of your second mortgage home loan will transfer to Nationstar Mortgage LLC on July 16, 2013.**

**IMPORTANT MESSAGE ABOUT YOUR HOME LOAN**

On July 16, 2013, the servicing of your above referenced second mortgage loan will transfer to Nationstar Mortgage LLC. As of that date your new servicer, Nationstar Mortgage LLC will support all your loan servicing, including billing, payment processing, and customer support. Enclosed is a Notice of Assignment, Sale, or Transfer of Servicing rights from **Bank of America** regarding the above referenced loan. **Please review all pages of the notice.**

In the mortgage lending industry, the transfer or sale of loan servicing to other servicing institutions is a common practice and we'll work closely with Nationstar Mortgage LLC to make the transition as smooth as possible. If you have any questions or concerns regarding this transfer, our associates are available to answer your questions Monday-Friday 7a.m. - 7p.m. Local Time at 1-800-669-6607.

**WHAT YOU NEED TO KNOW**

**If you are currently being considered for a loan modification or other foreclosure avoidance program**, your new servicer Nationstar Mortgage LLC is aware of your current status and will have all of your documents. Please contact Nationstar Mortgage LLC to complete the process and determine which programs may best suit your current situation. For more information on working with Nationstar Mortgage LLC, please review the frequently asked questions below.

**The enclosed notice outlines the important dates and contact information you'll need for the transition** to Nationstar Mortgage LLC. Please note this servicing transfer only applies to the above referenced loan.

**ANSWERS TO QUESTIONS YOU MAY HAVE**

**What will change with my servicing transfer?**
- Your loan number and payment address information will change once your loan has been transferred. Please look for a letter from Nationstar Mortgage LLC within the next few weeks which will outline this important information.
- The transfer of your loan to Nationstar Mortgage LLC does not affect any terms or conditions of your second mortgage loan, other than those terms directly related to the servicing of the loan.
- Your monthly payment will not be affected by this transfer.

**Will the quality of my loan service change?**
- We expect that the quality of your loan service will not change. We are transferring servicing on your loan to Nationstar Mortgage LLC, an experienced mortgage servicer who will work with you on your mortgage concerns.

**Where should I make my second mortgage loan payments?**
- You should continue to make your monthly payment to Bank of America through July 15, 2013. You will begin making payments to Nationstar Mortgage LLC on July 16, 2013.
- If you do not receive a billing statement from Nationstar Mortgage LLC before the payment is due, write your new loan number on your check and mail it to the payment address shown on the enclosed notice. Please note, if you do not have the new loan number, you may write your old Bank of America loan number on the check.

**What if I have automatic payments set up with Bank of America?**
- Any automatic payments set up with us through the PayPlan programs will be discontinued as of July 15, 2013. Please look for instructions from Nationstar Mortgage LLC or contact them on or after July 16, 2013 to determine what payment options they may offer.

**Will I still be able to make my mortgage payment at a Bank of America banking center or through online banking?**
- You will no longer be able to make your payment at a Bank of America banking center for the mortgage loan being transferred.
- If you make payments through Bank of America Online Banking or any other online banking or bill payment service, you will need to update your loan number and payee information for Nationstar Mortgage LLC on or after July 16, 2013.

**When my loan is transferred, will I still have access to my online loan information through Bank of America?**
- After the transfer is complete, your mortgage account will be moved to Nationstar Mortgage LLC. As a result, you will no longer access your mortgage information through Bank of America. Prior to the transfer, you may choose to download any information currently online to keep for your own records, such as tax documents, mortgage statements, payment history, etc. Nationstar Mortgage LLC will be able to provide you with information about access to your loan account information following the transfer. If you have any other accounts with Bank of America, such as checking, savings or credit card, you will still be able to access those accounts through Bank of America's online banking.

**How will the service transfer affect my other Bank of America accounts?**
- All **Bank of America** accounts except the mortgage account being transferred will remain open. Changes in fees on your remaining **Bank of America** accounts may occur in the future.

**SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

- If Consumer in a Bank of America account is no longer available as a result of our action, please contact us to explore other options that better benefit you.

**What if I am currently participating in a loan modification or other foreclosure avoidance program (e.g., forbearance, short sale, refinance or deed in lieu of foreclosure)?**

- The loan assistance programs that are offered by Nationstar Mortgage LLC are determined by the owner (also known as the investor) or insurer of your loan. Where applicable, Nationstar Mortgage LLC has agreed to evaluate your loan under the same investor or insurer guidelines as Bank of America, N.A.
- We will transfer any supporting documentation you may have submitted to us to Nationstar Mortgage LLC. We encourage you to work with Nationstar Mortgage LLC to complete the process and determine which programs may best suit your current situation.
- You should continue to make your payments to Bank of America, N.A. through July 15, 2013. On or after July 16, 2013, your payments should be made to Nationstar Mortgage LLC unless you are provided additional direction.
- If your loan was awaiting a decision regarding qualification for these programs, that decision will now be made by Nationstar Mortgage LLC.

**What if I need loan assistance after the transfer?**

- If you experience a hardship and struggle with making your home loan payments after the servicing of your loan has been transferred, please contact Nationstar Mortgage LLC right away to request help. They will determine which program may be right for you based on the applicable investor and insurer guidelines.

**What if I am refinancing my mortgage loan that is being transferred?**

- Your refinance will not be affected by the upcoming loan transfer. If you are working on a refinance through Bank of America Home Loans, your application remains active and we will continue to work with you on your refinance. Please contact the Mortgage Loan Officer or Loan Processor you have been working with if you have any questions.

**What about my optional insurance products with or through Bank of America?**

- If your payments include amounts for any optional insurance products such as credit insurance, accidental death insurance, etc., please read the "Information About Optional Insurance Products" section in the enclosed notice carefully.

**What about my other optional products with or through Bank of America?**

- If your payments include amounts for any other optional products such as home warranty, identity theft protection, etc., we will no longer make payments to the optional product provider on your behalf. As a result, your optional product may be cancelled unless you make alternative arrangements to pay the amounts due. To see if it is possible to maintain your optional products, you will need to contact your optional product provider to find out if other billing options can be arranged. Please note, if you have an optional Borrowers Protection or Line Protection Plan®, this will cancel when the servicing of your loan is transferred and you will receive a separate communication from us confirming the cancellation of your Plan. If you have any questions about an existing Protection Plan® benefit, please contact Protection Plan Services. Your provider contact information may be found on your monthly mortgage statement. If you have more than 2 optional products, they may not all be listed on your monthly mortgage statement. If you are unsure about how many optional products you have or you have questions about your products, please contact Bank of America.

---

**WE'RE HERE TO HELP**

Thank you for the opportunity to serve your home loan needs. If you have any questions or need assistance prior to your loan transfer, please call us toll free at 1-800-669-6607, Monday-Friday 7a.m. - 7p.m. Local Time.

Beginning July 16, 2013, Nationstar Mortgage LLC can assist you with any questions related to your home loan and the transfer of servicing. Nationstar Mortgage LLC's customer service number is 1-877-372-0512 ext 90, Mon - Thurs 8am - 8pm, Fri 8am - 6pm, and Sat 8am - 2pm, all CT.

Home Loan Team
Bank of America, N.A.

This communication is from Bank of America, N.A., the servicer of your home loan.

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector. If you are currently in a bankruptcy proceeding or have received a discharge of the debt referenced above, this notice is for informational purposes only and is not an attempt to collect a debt or demand a payment.

Loan No.: ■■■■■■■                                    Notice Date: June 24, 2013

**NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS**

You are hereby notified that the servicing of your second mortgage loan, that is, the right to collect payments from you, will be assigned, sold or transferred from **Bank of America, N.A.** to **Nationstar Mortgage LLC**, effective August 01, 2013.

The assignment, sale or transfer of the servicing of your second mortgage loan does not affect any terms or conditions of the mortgage instruments, other than those terms directly related to the servicing of your loan.

**YOUR SERVICER PRIOR TO JULY 16, 2013:**

Your *present servicer* is **Bank of America, N.A.**. If you have any questions relating to the transfer of servicing from your present servicer, please call **Bank of America, N.A.** Customer Service at 1-800-669-6607, Monday-Friday 7a.m. - 7p.m. Local Time. This is a toll-free number.

**YOUR NEW SERVICER ON AND AFTER JULY 16, 2013:**

Your *new servicer* will be **Nationstar Mortgage LLC**. The business address for **Nationstar Mortgage LLC** is: 350 Highland Drive Lewisville TX  75067.

Toll-free Number
The toll-free telephone number of **Nationstar Mortgage LLC** is 1-877-372-0512 ext 90. If you have any questions relating to the transfer of servicing to your new servicer, please call **Nationstar Mortgage LLC** Customer Service toll-free at 1-877-372-0512 ext 90, Mon - Thurs 8am - 8pm, Fri 8am - 6pm, and Sat 8am - 2pm, all CT.

Address for Correspondence (other than payments)
The address to send written correspondence to **Nationstar Mortgage LLC** (other than payments) is: Nationstar Mortgage LLC, 350 Highland Drive  Lewisville TX  75067.

Address for Mailed Payments
The address to send payments to **Nationstar Mortgage LLC** is:
Nationstar Mortgage LLC, Attn: Payment Processing, P.O. Box 650783 Dallas TX  75265-0783. Please include your loan number on all checks, cashier's checks and other payments sent to **Nationstar Mortgage LLC**.

**INFORMATION CONCERNING YOUR LOAN PAYMENTS:**

The date that **Bank of America, N.A.** will stop accepting payments from you is July 15, 2013.

The date that your *new servicer* **Nationstar Mortgage LLC** will start accepting payments from you is July 16, 2013. Send all payments due on or after that date to your *new servicer*.

Your loan file is being transferred to your new servicer. The initial information provided to Nationstar Mortgage LLC follows:

| | |
|---|---|
| Principal Balance: | $69,371.26 |
| Current Interest Rate: | 11.000% |
| Escrow Balance: | $.00 |
| Monthly Payment Amount: | $664.70 |
| Principal & Interest Payment Amount: | $664.70 |
| MIP/Escrow Payment Amount: | $.00 |
| Next Payment Due: | 02/01/2008 |

**INFORMATION ABOUT OPTIONAL INSURANCE PRODUCTS:**

The transfer of servicing rights may affect the terms of or the continued availability of credit insurance, accidental death insurance or any other type of optional insurance in the following manner: **Bank of America, N.A.** will no longer make payments to the insurance company on your behalf. As a result, your coverage may be cancelled.

You should take the following action to maintain coverage: Unless you make alternative arrangements to pay the amounts due, coverage may be cancelled. To see if it is possible to maintain coverage, you will need to contact your insurance provider to find out if other billing options can be arranged.

Bank of America, N.A. Member FDIC.  Equal Housing Lender.  © 2012 Bank of America Corporation.  Trademarks are the property of Bank of America Corporation.  All rights reserved.  Some products may not be available in all states.  This is not a commitment to lend.  Restrictions apply.

# EXHIBIT O

# EXHIBIT O

**TEXT**

FCT101R1 NBK96T2      ACCOUNT STATUS LISTING          9/11/2014      9:37:51

Account Number: ██████████ - 0 Mortgagor Name: MICHAEL BONDI

   CURRENT BALANCE INFORMATION          CURRENT PAYMENT INFORMATION

Principal Balance:      69,371.26   Principal/Interest Payment:      664.70
Escr Bal/Int:      .00 /      .00   GPM / Increase Pending:      .00
Partial Payment Balance:      .00   *Escrow Payment:      .00
Prtl Bal/Acr(SI):      .00   Escrow Increase Pending:      .00
Uncollected Late Charges:   132.96-   Credit Life Insurance:      .00
Uncollected Escrow:      .00   Hud-Assistance or Buydown:      .00
Uncollected Fees:      .00   Mortgagor Payment:      664.70


   ADDITIONAL INFORMATION          CMTDTE  1/01/1980


Closed Code:      06      STAR      Ln Type:  1J C-2ND-BALN   CMT#  0009756
Warning Code:      05          Phase Code/Date:      9  9/29/2006
Lockout Code:      03          Comp/Inv/Blk :      02 7008634  489
Certified Funds Req:  Exp:          Div: CORRES-LENDG   Bch: 0000800 000 08965
Int PTD: 1/01/2008 Pmt PTD: 1/01/2008 ACH: 00          Simple Int Loan
APP/FND/PYOFF/Sale Dt  7/15/2013      Year to Date Taxes:      .00
Mail Payments To:  FTWORTH      Year to Date Interest:      .00


Delinquent History:  FFFFFFFF      FHA/VA Case Number:

Sec MKT#: 008000625   Issue DT:  9/01/2006

Telephone: 1-000-000-0000      Co-Mortgagor

   PROPERTY ADDRESS          MAILING ADDRESS

9332 GOLDEN GRAPE COURT          10300 W CHARLESTON BLVD.
LAS VEGAS, NV          89148   Las Vegas          NV      89135


        ORIGINAL INFORMATION


Original Principal:      69,798.00   Sale Price:          348,990
Discount Held:      1,395.96   Appraisal Date:      8/2006
Date of Mort/Cont:      8/04/2006   Appraisal Amount:      352,000
DueDay/1st Pymt Due:   1 10/2006   Loan Purpose Code:          813
Maturity Date:      9/2021   Property Type:      35
Term of Loan/Remaining Term 360/344   Number of Units:          1
Interest Rate      11.000   Late Charge Amount:      .00
Annual Percentage Rate      11.001
State Code      29   Grace Days:      15
Fnma County Code:      3   Census Tract:      58.21
Prepayment Penalty Code:      0   Last Activity Date:      8/08/2013
Times Loan Assumed:      0   Last Analysis date (MMC):
Date Last Assumed:
Previous Owner Name:

```
--------------------------------------------------------------------------------
```

HSR117R1   NBK96T2    Loan History Listing - ASCENDING        9/11/14  9:37:51

NAME: MICHAEL BONDI              W/C: 05 L/C: 03 C/C: 06 L/T: 1J Page:
ACCT: ███████-0 PR:  /00/00- 9/11/14 FEE:     .00 CO#: 02 BR/SR: 0000800

| TYP | DATE | POSTED | PRINCIPAL | INTEREST | ESCROW | LT/CHG | PARTIAL |
| DUE | ADDN.PMT | CRL/DI | BALANCE | BUYDN/235 | BALANCE | BALANCE | BALANCE |
|---|---|---|---|---|---|---|---|
| 010 | 9/14/06 | 664.70 | 24.88 | 639.82 | .00 | .00 | |
| 1006 | .00 | .00 | 69773.12 | .00 | .00 | .00 | |
| | | | | | | | |
| 840 | 9/29/06 | 664.70- | 24.88- | 639.82- | .00 | .00 | |
| 0906 | .00 | .00 | 69798.00 | .00 | .00 | .00 | |
| | | | | | | | |
| 810 | 9/29/06 | 664.70 | 24.88 | 639.82 | .00 | .00 | |
| 1006 | .00 | .00 | 69773.12 | .00 | .00 | .00 | |
| | | | | | | | |
| 010 | 10/24/06 | 664.70 | 25.11 | 639.59 | .00 | .00 | |
| 1106 | .00 | .00 | 69748.01 | .00 | .00 | .00 | |
| | | | | | | | |
| 010 | 11/30/06 | 664.70 | 25.34 | 639.36 | .00 | .00 | |
| 1206 | .00 | .00 | 69722.67 | .00 | .00 | .00 | |
| | | | | | | | |
| 010 | 1/02/07 | 664.70 | 25.58 | 639.12 | .00 | .00 | |
| 0107 | .00 | .00 | 69697.09 | .00 | .00 | .00 | |
| | | | | | | | |
| 010 | 1/31/07 | 664.70 | 25.81 | 638.89 | .00 | .00 | |
| 0207 | .00 | .00 | 69671.28 | .00 | .00 | .00 | |
| | | | | | | | |
| 010 | 2/28/07 | 664.70 | 26.05 | 638.65 | .00 | .00 | |
| 0307 | .00 | .00 | 69645.23 | .00 | .00 | .00 | |
| | | | | | | | |
| 010 | 4/02/07 | 664.70 | 26.29 | 638.41 | .00 | .00 | |
| 0407 | .00 | .00 | 69618.94 | .00 | .00 | .00 | |
| | | | | | | | |
| 010 | 5/11/07 | 664.70 | 26.53 | 638.17 | .00 | .00 | |
| 0507 | .00 | .00 | 69592.41 | .00 | .00 | .00 | |
| | | | | | | | |
| 010 | 6/11/07 | 664.70 | 26.77 | 637.93 | .00 | .00 | |
| 0607 | .00 | .00 | 69565.64 | .00 | .00 | .00 | |
| | | | | | | | |
| 010 | 7/11/07 | 664.70 | 27.01 | 637.69 | .00 | .00 | |
| 0707 | .00 | .00 | 69538.63 | .00 | .00 | .00 | |
| | | | | | | | |
| 010 | 8/16/07 | 664.70 | 27.26 | 637.44 | .00 | .00 | |
| 0807 | .00 | .00 | 69511.37 | .00 | .00 | .00 | |
| | | | | | | | |
| 010 | 9/24/07 | 664.70 | 27.51 | 637.19 | .00 | .00 | |
| 0907 | .00 | .00 | 69483.86 | .00 | .00 | .00 | |
| | | | | | | | |
| 010 | 10/30/07 | 664.70 | 27.76 | 636.94 | .00 | .00 | |
| 1007 | .00 | .00 | 69456.10 | .00 | .00 | 33.24- | |

```
010 11/30/07    664.70    28.02   636.68      .00      .00
1107      .00      .00  69428.08      .00      .00   66.48-

010 12/28/07    664.70    28.28   636.42      .00      .00
1207      .00      .00  69399.80      .00      .00   99.72-

010  1/31/08    664.70    28.54   636.16      .00      .00
0108      .00      .00  69371.26      .00      .00  132.96-
```

--------------------------------------------------------------

```
FDR117R1        FEES DUE LISTING         9/11/14  9:37:51
        FROM: 0/00/0000 - 9/11/2014    W/C: 05  LIQ: H
ACCT: ███████    FEES DUE:    .00 MORTGAGOR: MICHAEL BONDI
```

| CDE | DATE | AMOUNT DESCRIPTION | TYP ENDING BAL | KEY | BATCH SEQ |
|---|---|---|---|---|---|
| 10306 | 5/11/07 | 3.00 MORTGAGEPAY WEB -EPS600 | 3.00 | 9006916450759 | WP |
| 10306 | 5/11/07 | 3.00 MORTGAGEPAY WEB -EPS100 | .00 | 9006916450764 | WP |
| 10306 | 6/11/07 | 3.00 MORTGAGEPAY WEB -EPS600 | 3.00 | 9006935921026 | WP |
| 10306 | 6/11/07 | 3.00 MORTGAGEPAY WEB -EPS100 | .00 | 9006935921032 | WP |
| 10306 | 7/11/07 | 3.00 MORTGAGEPAY WEB -EPS600 | 3.00 | 9006956919126 | WP |
| 10306 | 7/11/07 | 3.00 MORTGAGEPAY WEB -EPS100 | .00 | 9006956919130 | WP |
| 10306 | 8/16/07 | 6.00 MORTGAGEPAY WEB -EPS600 | 6.00 | 9006983120293 | WP |
| 10306 | 8/16/07 | 6.00 MORTGAGEPAY WEB -EPS100 | .00 | 9006983120295 | WP |
| 10052 | 9/13/07 | 30.00 EXPEDITED PO SVC FEE600 | 30.00 | 9006999753781 | PPP10R |
| 10309 | 9/24/07 | 6.00 MORTPAY BY PHONE EPS600 | 36.00 | 9007006856929 | PTAC |
| 10309 | 9/24/07 | 6.00 MORTPAY BY PHONE EPS100 | 30.00 | 9007006856933 | PTAC |
| 10052 | 10/23/07 | 30.00 EXPEDITED PO SVC FEE600 | 60.00 | 9007027767149 | PPP10R |
| 10089 | 11/14/07 | 410.00 APPRAISAL FEE    600 | 470.00 | 9007043131426 | IU14LS |
| 10306 | 11/30/07 | 6.00 MORTGAGEPAY WEB -EPS600 | 476.00 | 9007053900279 | WP |
| 10306 | 11/30/07 | 6.00 MORTGAGEPAY WEB -EPS100 | 470.00 | 9007053900283 | WP |
| 10306 | 12/28/07 | 6.00 MORTGAGEPAY WEB -EPS600 | 476.00 | 9007074281640 | WP |
| 10306 | 12/28/07 | 6.00 MORTGAGEPAY WEB -EPS100 | 470.00 | 9007074281645 | WP |
| 10306 | 1/31/08 | 6.00 MORTGAGEPAY WEB -EPS600 | 476.00 | 9007097327397 | WP |
| 10306 | 1/31/08 | 6.00 MORTGAGEPAY WEB -EPS100 | 470.00 | 9007097327401 | WP |
| 10065 | 4/22/08 | 15.00 INSPECTION-OCCUPIED 600 | 485.00 | 9007156393145 | I122 |
| 10052 | 5/21/08 | 30.00 EXPEDITED PO SVC FEE600 | 515.00 | 9007177671104 | PPP10R |
| 10065 | 5/22/08 | 15.00 INSPECTION-OCCUPIED 600 | 530.00 | 9007178221612 | I122 |
| 10065 | 6/23/08 | 15.00 INSPECTION-OCCUPIED 600 | 545.00 | 9007198801435 | I123 |
| 10065 | 7/22/08 | 15.00 INSPECTION-OCCUPIED 600 | 560.00 | 9007222193954 | I122 |
| 10065 | 8/24/08 | 15.00 INSPECTION-OCCUPIED 600 | 575.00 | 9007244837690 | I125 |
| 10065 | 9/25/08 | 15.00 INSPECTION-OCCUPIED 600 | 590.00 | 9007266352365 | I125 |
| 10065 | 10/22/08 | 15.00 INSPECTION-OCCUPIED 600 | 605.00 | 9007285959184 | I122 |
| 10113 | 11/18/08 | 290.00 APPRAISAL-DRIVE BY 600 | 895.00 | 9007305929178 | IU18LS |
| 10065 | 11/24/08 | 15.00 INSPECTION-OCCUPIED 600 | 910.00 | 9007308757033 | I124 |
| 10065 | 12/22/08 | 15.00 INSPECTION-OCCUPIED 600 | 925.00 | 9007330001634 | I122 |
| 10065 | 1/26/09 | 15.00 INSPECTION-OCCUPIED 600 | 940.00 | 9007353612341 | I126 |
| 10065 | 3/02/09 | 15.00 INSPECTION-OCCUPIED 600 | 955.00 | 9007378826720 | I102 |
| 10065 | 3/24/09 | 15.00 INSPECTION-OCCUPIED 600 | 970.00 | 9007396696995 | I124 |
| 10016 | 4/23/09 | 15.00 INSPECTION-VACANT  600 | 985.00 | 9007418722407 | I123 |
| 10016 | 6/01/09 | 15.00 INSPECTION-VACANT  600 | 1000.00 | 9007445270158 | I101 |
| 10016 | 7/01/09 | 15.00 INSPECTION-VACANT  600 | 1015.00 | 9007470268302 | I101 |
| 10052 | 8/08/13 | 30.00 EXPEDITED PO SVC FEE100 | 985.00 | 9009409041309 | 281WAV |

```
10052  8/08/13   30.00  EXPEDITED PO SVC FEE100    955.00  9009409041339 281WAV
10052  8/08/13   30.00  EXPEDITED PO SVC FEE100    925.00  9009409041370 281WAV
10065 11/08/13   15.00  INSPECTION-OCCUPIED 100    910.00  9009473483781 281SBO
10065 11/08/13   15.00  INSPECTION-OCCUPIED 100    895.00  9009473483840 281SBO
10065 11/08/13   15.00  INSPECTION-OCCUPIED 100    880.00  9009473483856 281SBO
10016 11/08/13   15.00  INSPECTION-VACANT   100    865.00  9009473483871 281SBO
10065 11/08/13   15.00  INSPECTION-OCCUPIED 100    850.00  9009473483893 281SBO
10016 11/08/13   15.00  INSPECTION-VACANT   100    835.00  9009473483905 281SBO
10065 11/08/13   15.00  INSPECTION-OCCUPIED 100    820.00  9009473483917 281SBO
10065 11/08/13   15.00  INSPECTION-OCCUPIED 100    805.00  9009473483935 281SBO
10065 11/08/13   15.00  INSPECTION-OCCUPIED 100    790.00  9009473483944 281SBO
10065 11/08/13   15.00  INSPECTION-OCCUPIED 100    775.00  9009473483975 281SBO
10065 11/08/13   15.00  INSPECTION-OCCUPIED 100    760.00  9009473484013 281SBO
10016 11/08/13   15.00  INSPECTION-VACANT   100    745.00  9009473484026 281SBO
10065 11/08/13   15.00  INSPECTION-OCCUPIED 100    730.00  9009473484047 281SBO
10089 11/08/13  410.00  APPRAISAL FEE       100    320.00  9009473484067 281SBO
10065 11/08/13   15.00  INSPECTION-OCCUPIED 100    305.00  9009473484090 281SBO
10113 11/08/13  290.00  APPRAISAL-DRIVE BY  100     15.00  9009473484110 281SBO
10065 11/08/13   15.00  INSPECTION-OCCUPIED 100       .00  9009473484138 281SBO
```

---

---

IEP100RM  NBK96T2    Impound/Escrow Account Review       9/11/14  9:37:51

Account: ███████      Name:

Dep/Disb    !XXXXXXXXXXXXXXXXXX   Dep/Disb       !XXXXXXXXXXXXXXXXXX
Date   !Amount  !Des  !Balance   Date   !Amount  !Des   !Balance

Ending Balance:     .00

---

MDS613R1  NBK96T2      Customer Delinquent Contact    9/11/14  9:37:52

FROM: 0/00/0000  -  9/11/2014

Account #: ████████   Customer's Name:   MICHAEL BONDI
Payment Pending:       .00

                        Follow-Up  Contact  Ex
T S        History of Contacts Made        Date    Date   Cd
- -  --------------------------------  --------  -------  --
-------------------------------------------------------------
ESR046R1   NBK96T2    BANKRUPTCY DEPARTMENT      S1F    9/11/2014  9:37:52
                        CC- 6 ! WC- 5
Account:████████Mortgagor: MICHAEL BONDI           CFC
Follow-Up Date: _____
<... ... 1 ... 2 ... 3 ... 4 ... 5 ... 6 ... 7 ...>


-------------------------------------------------------

ESR046R1   NBK96T2    WHOLESALE DIVISION        C2C    9/11/2014  9:37:52
                        CC- 6 ! WC- 5
Account:████████Mortgagor: MICHAEL BONDI           CFC
Follow-Up Date: _____
<... ... 1 ... 2 ... 3 ... 4 ... 5 ... 6 ... 7 ...>


-------------------------------------------------------

ESR046R1   NBK96T2    FC COLLECTIONS           S2A    9/11/2014  9:37:52
                        CC- 6 ! WC- 5
Account:████████Mortgagor: MICHAEL BONDI           CFC
Follow-Up Date: _____
<... ... 1 ... 2 ... 3 ... 4 ... 5 ... 6 ... 7 ...>


-------------------------------------------------------

ESR046R1   NBK96T2    CUSTOMER SERVICE DEPARTMENT S2K    9/11/2014  9:37:52
                        CC- 6 ! WC- 5
Account:████████Mortgagor: MICHAEL BONDI           CFC
Follow-Up Date: _____
<... ... 1 ... 2 ... 3 ... 4 ... 5 ... 6 ... 7 ...>

.SECTION-00160
.DT-01/28/2011, TM-01:46:55,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure JSANTOS**

.SECTION-00161
.DT-02/25/2011, TM-02:52:54,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure JSANTOS**

.SECTION-00162
.DT-03/30/2011, TM-08:00:03,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00163
.DT-04/28/2011, TM-07:01:31,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00164

.DT-05/27/2011, TM-01:31:12,@CIWIUDV

Received Return Mail

.SECTION-00165                          STMAILR

.DT-05/27/2011, TM-02:10:58,Bandana Sansoa, x6207, Plano

RCVD RTN CUSTOMER CORRESPONDENCE DU E TO "UNDELIVERABLE AS ADDRESSED" ~~PLACED
WARNING CODE 1~~

.SECTION-00166

.DT-05/27/2011, TM-03:50:47,CFC@LNADM

******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00167

.DT-06/29/2011, TM-07:04:02,CFC@LNADM

******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00168                          ILA200

.DT-07/18/2011, TM-13:22:03,@PVTLBL

ILA Servicing Activity Log

PRINTER : - BANARLTH.doc

Processed by NBKXSFL   Signed by Anita Brown

Print Date: 7/18/2011 3:23:29 PM

.SECTION-00169                          STMAILR

.DT-07/26/2011, TM-11:26:44,Gulliya Virender, x9999, Plano

RCVD RTN CUSTOMER CORRESPONDENCE DU E TO "UNDELIVERABLE AS ADDRESSED" ~~PLACED
WARNING CODE 1~~

.SECTION-00170

.DT-07/28/2011, TM-05:12:26,CFC@LNADM

******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00171                          STMAILR

.DT-08/09/2011, TM-23:39:08,SHRUTI BASUTKAR, x1111, Plano

RCVD RTN CUSTOMER CORRESPONDENCE DU E TO "UNDELIVERABLE AS ADDRESSED" ~~PLACED
WARNING CODE 1~~

.SECTION-00172

.DT-08/30/2011, TM-05:55:46,CFC@LNADM

******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00173

.DT-09/29/2011, TM-05:22:31,CFC@LNADM

******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00174

.DT-10/28/2011, TM-05:01:19,CFC@LNADM

******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00175                          MET2SVACR0

.DT-11/14/2011, TM-21:56:08,ADUMPALA

Credit Reporting History Changes

Last History Code Date 2011/10

201110 from history code 6 to D
201109 from history code 6 to D
201108 from history code 6 to D
201107 from history code 6 to D
201106 from history code 6 to D
201105 from history code 6 to D
201104 from history code 6 to D
201103 from history code 6 to D
201102 from history code 6 to D
201101 from history code 6 to D
201012 from history code 6 to D
201011 from history code 6 to D
201010 from history code 6 to D
201009 from history code 6 to D
201008 from history code 6 to D
201003 from history code 0 to D
201002 from history code 0 to D
201001 from history code 0 to D
200912 from history code 0 to D
200911 from history code 0 to D

.SECTION-00176
.DT-111411,ADUMPALA
*****ACDV REQUEST RECVD AND PROCESSED THROUGH E-OSCAR APPLICATION *****
111:CLAIMS COMPANY WILL DELETE. VERIFY ALL ACCOUNT INFORMATION.
RESOLUTION IS: MODIFIED DATES***
RECORD ADDED TO BOTH LAOOP & CFC@CUSTSR MEMBERS

.SECTION-00177
.DT-11/29/2011, TM-03:52:58,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00178
.DT-12/30/2011, TM-09:23:28,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00179
.DT-01/30/2012, TM-09:09:08,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00180
.DT-02/28/2012, TM-06:01:54,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00181
.DT-03/29/2012, TM-03:15:48,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00182
.DT-04/27/2012, TM-04:07:54,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00183
.DT-05/30/2012, TM-08:44:12,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00184
.DT-06/28/2012, TM-08:58:18,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00185
.DT-07/30/2012, TM-07:45:18,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00186
.DT-08/30/2012, TM-10:28:44,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00187
.DT-09/27/2012, TM-08:18:15,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00188
.DT-10/30/2012, TM-10:37:32,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00189
.DT-11/29/2012, TM-05:35:34,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00190
.DT-12/31/2012, TM-09:47:50,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00191
.DT-01/30/2013, TM-04:50:58,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00192
.DT-02/27/2013, TM-04:46:10,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00193
.DT-03/28/2013, TM-03:57:47,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00194
.DT-04/29/2013, TM-02:29:39,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00195
.DT-05/30/2013, TM-04:58:23,CFC@LNADM
******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**

.SECTION-00196                          SRLGS16R
.DT-06/24/2013, TM-18:28:23,NBKVHU8
*** DO NOT COMMUNICATE DATE BELOW TO BORROWER, PLEASE REFER TO THE ACCOUNT STA
TUS SCREEN ***
Good-bye Letter Ordered on 6/24/2013 for: Michael Bondi
Nationstar Mortgage LLC

350 Highland Drive

Lewisville, TX 75067

877-372-0512

ext 90

Cutoff Date: July 15, 2013

Transfer Date: July 16, 2013

Effective Date of Transfer: August 01, 2013


.SECTION-00197

.DT-06/27/2013, TM-00:45:32,CFC@LNADM

******SUPPRESS First Statement DUE TO Foreclosure NBKCX4M**


.SECTION-00198

.DT-07012013, ZKABE4K, x,

CC-01,WC-05,LC-03,PC-8 ,NEXTDUE-02012008,DOT HIST-FFFFFFFF

WORK TYPE-Phone Call Inco,CALL TYPES-SERVICE RE,TRNSFER(SL,          ,

CALLER-MICHAEL BONDI          ,COMPANY-              ,PH#  -  -

EXTN: 00000

REGULAR DOCUMENTATION


END CALL

Read caller fax disclosure; caller agreed to proceed w/ fax

Transfer to Specialty Queue


.SECTION-00199

.DT-07022013, Rita Macedo, x8387, Lancaster

CC-01,WC-05,LC-03,PC-8 ,NEXTDUE-02012008,DOT HIST-FFFFFFFF

WORK TYPE-Phone Call Inco,CALL TYPES-TRNSFER(SL,          ,          ,

CALLER-MICHAEL BONDI          ,COMPANY-              ,PH#  -  -

EXTN: 00000

REGULAR DOCUMENTATION


SSO has been selected

Transfer caller to Foreclosure Dept


***Supervisor Call*1Loan Number: ██████ime

of Call: 7/1/2013 7:36:56 PSpoke To: MICHAEL BON

DIRelationship: borrower is borrower or spouse ac

tive duty military?: no 7/1/13Details1) What w

as the inquiry at time of call: customer threatene

d to sue BOA if this loan is service released as h

e has already settled this account with BOA. his c

redit reports an inactive mortgage with a zero bal

ance owed. he says his state laws make it illegal

for BOA to sell his loan to a new servicer and hav

UHB>>> Harry Velez / Ext: 596-9999


e their minds changed and go after him or pursue h

im for the debt2) What was communicated:  calle

r disconnected call before Supervisor could get on

 phone, protocol requested. Caller revealed that h

e was recording the conversation and hung up when

confronted per protocol by associate, made legal t

hreat and disconnected call on associate3) What

action was taken: SUBMITTED LEGAL THREAT VIA COMMI

T #98421, notated file Thanks Harry Velez, Sinto 3
682
UHB>>> Harry Velez / Ext: 596-9999

2) What was communicated:  caller disconnected cal
l before Supervisor could get on phone, protocol r
equested. Caller revealed that he was recording th
e conversation and hung up when confronted per pro
tocol by associate, made legal threat and disconne
cted call on associate. 3) What action was taken:
SUBMITTED LEGAL THREAT VIA COMMIT #98421, notated
file Thanks Harry Velez, Sinto 3682
HMSAVR>>> Harry Velez / Ext: 596-9999

Details 1) What was the inquiry at time of call:
 customer threatened to sue BOA if this loan is se
rvice released as he has already settled this acco
unt with BOA. his credit reports an inactive mortg
age with a zero balance owed. he says his state la
ws make it illegal for BOA to sell his loan to a n
ew servicer and have their minds changed and go af
ter him or pursue him for the debt.
HMSAVR>>> Harry Velez / Ext: 596-9999

***Supervisor Call*** Loan Number: ██████ ime
of Call: 7/1/2013 7:36:56 PM Spoke To: MICHAEL BON
DI Relationship: borrower Is borrower or spouse ac
tive duty military?: no 7/1/13
HMSAVR>>> Harry Velez / Ext: 596-9999

.SECTION-00205                         WEBADM07R1
.DT-07/02/2013, TM-08:10:17, @MSIPD02
Comments Added By NBKEIFS on 7/2/2013 8:01:47 PM, Commit Case Number = 98421,
User Comments = Loan Number: ██████
Time of Call: 7/1/2013 7:36:56 PM
Spoke To: MICHAEL BONDI
Relationship: borrower

.SECTION-00206                         WEBADM07R1
.DT-07/03/2013, TM-11:20:47, @MSIPD02
Comments Added By NBKUQ4X on 7/3/2013 11:18:12 AM, Commit Case Number = 98421,
CommentType = Customer-Calling for Case Status(KIR), User Comments =*** First
Contact- No Contact ***
Contact was successful: NO

.SECTION-00207                         CCSSRVR1
.DT-07/03/2013, TM-10:20:46, @LAFA
http://lafa.bankofamerica.com/Search.aspx?Request_Id=13251320&Nav=Off   <--
Please click on the link to the left to view the request.  A customer initiate
d ReferralERC request was posted to LAFA from the web.

.SECTION-00208                         WEBADM07R1
.DT-07/05/2013, TM-02:30:36, @MSIPD02
Comments Added By NBKUQ4X on 7/5/2013 2:23:48 PM, Commit Case Number = 98421,
CommentType = Customer-Attempt Made via Phone(KIR), User Comments =2nd Attempt

: Placed a call to Michael Bondi at 650-787-4204 and I was unable to leave a v
oice message.

.SECTION-00209                           WEBADM07R1
.DT-07/09/2013, TM-04:01:37,@MSIPD02
Comments Added By NBK5DSD on 7/9/2013 3:56:47 PM, Commit Case Number = 98421,
CommentType = Customer-Attempt Made via Phone(KIR), User Comments =Attempted c
ontact with Micael Bondi, at 650-787-4204. NO answer, left voice message reque
sting a call back to Marie Goff at 214-209-7602

.SECTION-00210                           WEBADM07R1
.DT-07/11/2013, TM-09:20:26,@MSIPD02
Comments Added By NBK5DSD on 7/11/2013 9:18:58 AM, Commit Case Number = 98421,
CommentType = Other LOB Engagement, User Comments =sent email to the service
release complaint department asking if they can provide assistance. I will att
empt contact with Mr. Bondi, one last time after 10:00 AM CST

.SECTION-00211                           WEBADM07R1
.DT-07/11/2013, TM-10:10:25,@MSIPD02
Comments Added By NBK5DSD on 7/11/2013 10:09:00 AM, Commit Case Number = 98421
, CommentType = Customer-Attempt Made via Phone(KIR), User Comments =Attempted
to contact Mr. Bondi, no answer, I did leave a voice message requesting a cal
l back.

.SECTION-00212
.DT-07152013 CFC@LNMERA SVRRLSR
Closed Code Changed from 1 to 6.
This loan was released to NATIONSTAR on 07/15/2013 as part of SRL 12281

.SECTION-00213
.NBKMOXL / 080113    FONE01R
.(MAILAD) 10300 W CHARLESTON BLVD. UNIT CHG

.SECTION-00214
.NBKMOXL / 080113    FONE01R
.(B#1HM#) 00000000000 CHG

.SECTION-00215
.NBKMOXL / 080113    FONE01R
. (B#1WK#) 00000000000 CHG

.SECTION-00216
.NBKMOXL / 080113    FONE01R
. (B#2WK#) 00000000000 CHG

.SECTION-00217
.NBKMOXL / 080113    FONE01R
. (MSGNO) 00000000000 CHG

.SECTION-00218
.DT-08/08/2013, TM-18:15:35,CFC@LNADM
CLSDCD    6 to 3              Closed Code      FEEPRCREQ
For updates to fee data

.SECTION-00219

.DT-08/08/2013, TM-18:15:37,CFC@LNADM
CLSDCD    3 to 6              Closed Code       FEEPRCREQ
For updates to fee data


.SECTION-00220
.DT-11/08/2013, TM-18:15:52,CFC@LNADM
CLSDCD    6 to 3              Closed Code       FEEPRCREQ
For updates to fee data


.SECTION-00221
.DT-11/08/2013, TM-18:15:54,CFC@LNADM
CLSDCD    3 to 6              Closed Code       FEEPRCREQ
For updates to fee data


.SECTION-00222
.DT-07/09/2014, TM-07:01:38,NBKOM8Q
Prescription Comments Posted to the AS400: Assigned To : DSCR Intake, Created
By : NBKOM8Q  7/9/2014 9:01:38 AM  ***********Office of the President********
Received New ECR Inquiry


.SECTION-00223
.DT-07112014, Genevieve Hernandez, x9999, Tempe
CC-06,WC-05,LC-03,PC-9 ,NEXTDUE-02012008,DOT HIST-FFFFFFFF
WORK TYPE-Phone Call Inco,CALL TYPES-FEES      ,      ,
CALLER-leah peregrine       ,COMPANY-bac          ,PH#877-471-4367
EXTN: 00000
                    REGULAR DOCUMENTATION

****Business Partner Queue****
ECR Research Call- Resolved


.SECTION-00224                          CCSMB0110R
.DT-07/11/2014, TM-09:00:31,Tamara Clark, x9999, Fort Worth
END CALL


.SECTION-00225                          CCSSRVR1
.DT-09/09/2014, TM-09:41:20,@LAFA
http://lafa.bankofamerica.com/Search.aspx?Request_Id=15654679&Nav=Off    <--
Please click on the link to the left to view the request.  A customer initiate
d CreditReportingRequest request was posted to LAFA from the web.



------------------------------------------------------------------


ESR046R1   NBK96T2    FIELD INSPECTIONS      S1G     9/11/2014  9:37:52
                                CC- 6 ! WC- 5
Account: ██████████Mortgagor: MICHAEL BONDI                CFC
Follow-Up Date: _____
<... ... 1 ... ... 2 ... ... 3 ... ... 4 ... ... 5 ... ... 6 ... ... 7 ... ..>



------------------------------------------------------------------


ESR046R1   NBK96T2    CFC FORECLOSURE        S1C     9/11/2014  9:37:52
                                CC- 6 ! WC- 5

Account: ████████ Mortgagor: MICHAEL BONDI          CFC

Follow-Up Date: _____

<... ... 1 ... ... 2 ... ... 3 ... ... 4 ... ... 5 ... ... 6 ... ... 7 ... ..>

.SECTION-67

.DT-03/04/2010,SAMBULK1

LERC MI Status Date : 03/04/2010

MI Claim Status Reason : 20

MI Claim FollowUp Date : 04/04/2010

.DT-03042010,SAMBULK1

PENDING LERC REVIEW,MI CLAIM,DENIED DUE TO MISREPRESENTATION.


****Loan reactivated to correct campaign code****

****Do not contact assigner, loan is not open for

new workout****

HMSAVR>>> Keosha Johnson / Ext: 0-9999


Workout Status Changed to Cnl - Non-Compliance.  W

orkout Type Short Sale.

HMSAVR>>> Emily B Jones / Ext: 0-5204


.SECTION-00070                          FCLSERVACT

.DT-06/27/2013, TM-06:06:45,@FDWSPRD

DEALID : 440,  TECHCODE Updated As: 0,  SERVICING NOTE: SRL 12281-SRL Date 7/1

5/13 New Servicer:  Nationstar Mortgage, LLC 350 Highland Drive, Lewisville, T

X  75067  Email: customer.service@nationstarmail.com  Phone: 877-372-0512 ext.

20 PLEASE DO NOT COMMUNICATE THIS CONTACT  TO THE BORROWER. PLEASE REFER BORR

OWER TO CUSTOMER SERVICE For questions contact bfs.service.release@bankofameri

ca.com


REO C Loan Number: ████████ me of Call: 7/1/20

13 7:36:56 P Spoke To: MICHAEL BOND Relationship

: borrowe s borrower or spouse active duty milit

ary?: no 7/1/13 Details 1) What was the inquiry

at time of call: states this property was foreclos

ed by BOA back in 2009 and he recvd a SRL letter f

or this loan. he states he already rectified the c

redit situation with this account with BOA and sta

tes that it is illegal to sell his loan to a new s

ervicer after he has already settled this

HMSAVR>>> Shea Fowler / Ext: 596-9999


account with BOA 2) What was communicated: adv tha

t the REO dept services the loans that we foreclos

e on, this loan was not foreclosed on. adv on our

end the account is still active although it is pos

sible for it to be inactive on his credit and repo

rt a zero balance as internally BOA has extra step

s to take on the account. adv all i can advise is

that a service release may be occurring as the acc

ount is still active on our end. however to have t

his explained to him and to have his situation

HMSAVR>>> Shea Fowler / Ext: 596-9999


addressed, i need to get him a rep in customer ser

vi¢e) What action was taken:attempted warm trans
fer to customer service but recvd the recording th
at they are closed. adv him of this. he was upset
stating he spoke to them already and that he is re
cording this call and he is going to sue BOA if th
is service release takes place due to NV state law
s . adv as he has told me he is recording the call
I will have to ask him to cease recording the cal
l as BOA does not engage in recorded calls.
HMSAVR>>> Shea Fowler / Ext: 596-9999

Caller refused to stop recording the call. adv I w
ill need to end this call as he has refused to cea
se recording the call. caller hung up during the c
lose of the call. forwarded informaiton to supervi
sor regarding legal threat
HMSAVR>>> Shea Fowler / Ext: 596-9999

"****Inbound DSRT Call*** 7/2/2013 at 9:35 AM MSTSp
oke with: Mr. Michael Bondi - Borrower | Miranda:
Y | Phone #: 702-768-2552Result of Call:  Borrower
 stated he had a CW loan and there were RESPA viol
ations on the loan. Caller stated they would zero
both of his accounts because of the violations. Bo
rrower stated BOA told him they would not pursue h
im for any collections and repair his credit. Whic
h BOA did fix his credit, but now BOA is selling h
is 2 lien loan to another servicer. Borrower sta
HMSAVR>>> Lisa Tyus / Ext: 596-9999

"[Continue]es BOA did not zero out this loan like
they said they would. Caller states he has already
 won two other law suits with BOA and he will take
 us back to court if BOA does not fix this. Advise
d caller I will open up an SR for assistance today
.
HMSAVR>>> Lisa Tyus / Ext: 596-9999

***Supervisor Call**Loan Number: ████████ ime
of Call: 7/1/2013 7:36:56 PMSpoke To: MICHAEL BON
DIRelationship: borrower is borrower or spouse ac
tive duty military?: no 7/1/13Details1) What w
as the inquiry at time of call: customer threatene
d to sue BOA if this loan is service released as h
e has already settled this account with BOA. his c
redit reports an inactive mortgage with a zero bal
ance owed. he says his state laws make it illegal
for BOA to sell his loan to a new servicer and hav
UHB>>> Harry Velez / Ext: 596-9999

e their minds changed and go after him or pursue h
im for the debt2) What was communicated:  calle
r disconnected call before Supervisor could get on
 phone, protocol requested. Caller revealed that h
e was recording the conversation and hung up when

confronted per protocol by associate, made legal t
hreat and disconnected call on associate3) What
action was taken: SUBMITTED LEGAL THREAT VIA COMMI
T #98421, notated fileThanks Harry Velez, Sinto 3
682
UHB>>> Harry Velez / Ext: 596-9999

2) What was communicated:  caller disconnected cal
l before Supervisor could get on phone, protocol r
equested. Caller revealed that he was recording th
e conversation and hung up when confronted per pro
tocol by associate, made legal threat and disconne
cted call on associate3) What action was taken:
SUBMITTED LEGAL THREAT VIA COMMIT #98421, notated
fileThanks Harry Velez, Sinto 3682
HMSAVR>>> Harry Velez / Ext: 596-9999

Details1) What was the inquiry at time of call:
 customer threatened to sue BOA if this loan is se
rvice released as he has already settled this acco
unt with BOA. his credit reports an inactive mortg
age with a zero balance owed. he says his state la
ws make it illegal for BOA to sell his loan to a n
ew servicer and have their minds changed and go af
ter him or pursue him for the debt.
HMSAVR>>> Harry Velez / Ext: 596-9999

***Supervisor Call*Loan Number: ██████me
of Call: 7/1/2013 7:36:56 PMSpoke To: MICHAEL BON
DIRelationship: borrowers borrower or spouse ac
tive duty military?: no 7/1/13
HMSAVR>>> Harry Velez / Ext: 596-9999

.SECTION-00082                          FCLSERVACT
.DT-07/16/2013, TM-09:38:34,@FDWSPRD
DEALID : 507,  TECHCODE Updated As: 700,  SERVICING NOTE: Updating tech code d
ue to service release

-------------------------------------------------------------------

ESR046R1  NBK96T2   ESCROW ANALYSIS/DISB.     S2M    9/11/2014  9:37:52
                          CC- 6 ! WC- 5
Account: ██████Mortgagor: MICHAEL BONDI               CFC
Follow-Up Date: _____
<... ... 1 ... ... 2 ... ... 3 ... ... 4 ... ... 5 ... ... 6 ... ... 7 ... ...>

.SECTION-00015
.DT-073010    ESRPMIMSR2: Mass Update  CSALAS    20100730  122232
S/TY/FR  PAYEECD   OPT DUE DT    AMOUNT RNWLRT POLICY NO./DESC.       CNT
1 44 01 064506113  F  100106    76.43 1.314 V11        00 OLD
1 44 01 064506113  P  100106    76.43 1.314 V11        00 NEW
LERG MI Pending Detail 07.28.10-Added OPT code 'P' to indicate loan in claim
denial review.

.SECTION-00016
.DT-111103    ESRPMIMSR2: Mass Update  CSALAS    20111103 150255
Indicator: LRG500  Added
LERG 10.20.2011 - CLAIM DENIALS: ADDED INDICATOR CODE LRG500 TO REFLECT MI
CLAIM DENIED AND PENDING REVIEW.


.SECTION-00017
.DT-121010    ESRPMIMSR2: Mass Update  CSALAS    20121010 134116
MI.Cov.% : 0 to 100          Ref.Ind. : No Change


.SECTION-00018
.DT-06/27/2013, TM-09:55:18,HWRIGHT
Analyis Code Update : Old Code = 9 and New Code = 6



--------------------------------------------------------------------------


ESR046R1   NBK96T2    LOAN LOSS MITIGATION        S2E    9/11/2014  9:37:52
                          CC- 6 ! WC- 5
Account:██████Mortgagor: MICHAEL BONDI              CFC
Follow-Up Date: _____
<... ... 1 ... 2 ... 3 ... 4 ... 5 ... 6 ... 7 ...>


****Loan reactivated to correct campaign code****
****Do not contact assigner, loan is not open for
new workout****
HMSAVR>>> Keosha Johnson / Ext: 0-9999


Workout re-opened.  Status changed to Active.  Wor
kout Type Short Sale.
HMSAVR>>> Emily B Jones / Ext: 0-5204


Workout Assignee Changed to Do NOT Call / Ext: 598
-9999. Workout Type Short Sale.
HMSAVR>>> Emily B Jones / Ext: 0-5204


Workout Status Changed to Cnl - Non-Compliance.  W
orkout Type Short Sale.
HMSAVR>>> Emily B Jones / Ext: 0-5204


REO CCLoan Number: ██████ime of Call: 7/1/20
13 7:36:56 PMSpoke To: MICHAEL BONDIRelationship
: borroweIs borrower or spouse active duty milit
ary?: no 7/1/13etails1) What was the inquiry
at time of call: states this property was foreclos
ed by BOA back in 2009 and he recvd a SRL letter f
or this loan. he states he already rectified the c
redit situation with this account with BOA and sta
tes that it is illegal to sell his loan to a new s
ervicer after he has already settled this
HMSAVR>>> Shea Fowler / Ext: 596-9999


account with BOA2) What was communicated: adv tha
t the REO dept services the loans that we foreclos
e on, this loan was not foreclosed on. adv on our

end the account is still active although it is pos
sible for it to be inactive on his credit and repo
rt a zero balance as internally BOA has extra step
s to take on the account. adv all i can advise is
that a service release may be occurring as the acc
ount is still active on our end. however to have t
his explained to him and to have his situation
HMSAVR>>> Shea Fowler / Ext: 596-9999

addressed, i need to get him a rep in customer ser
vice) What action was taken:attempted warm trans
fer to customer service but recvd the recording th
at they are closed. adv him of this. he was upset
stating he spoke to them already and that he is re
cording this call and he is going to sue BOA if th
is service release takes place due to NV state law
s . adv as he has told me he is recording the call
 I will have to ask him to cease recording the cal
l as BOA does not engage in recorded calls.
HMSAVR>>> Shea Fowler / Ext: 596-9999

Caller refused to stop recording the call. adv I w
ill need to end this call as he has refused to cea
se recording the call. caller hung up during the c
lose of the call. forwarded informaiton to supervi
sor regarding legal threat
HMSAVR>>> Shea Fowler / Ext: 596-9999

"[Continue]es BOA did not zero out this loan like
they said they would. Caller states he has already
 won two other law suits with BOA and he will take
 us back to court if BOA does not fix this. Advise
d caller I will open up an SR for assistance today
.
HMSAVR>>> Lisa Tyus / Ext: 596-9999

****Inbound DSRT Call*** 7/2/2013 at 9:35 AM MSTSp
oke with: Mr. Michael Bondi - Borrower | Miranda:
Y | Phone #: 702-768-2552Result of Call:  Borrower
 stated he had a CW loan and there were RESPA viol
ations on the loan. Caller stated they would zero
both of his accounts because of the violations. Bo
rrower stated BOA told him they would not pursue h
im for any collections and repair his credit. Whic
h BOA did fix his credit, but now BOA is selling h
is 2 lien loan to another servicer. Borrower sta
HMSAVR>>> Lisa Tyus / Ext: 596-9999

***Supervisor Call*Loan Number: ▇▇▇▇▇ ime
of Call: 7/1/2013 7:36:56 PMSpoke To: MICHAEL BON
DIRelationship: borrower(s borrower or spouse ac
tive duty military?: no 7/1/13Details1) What w
as the inquiry at time of call: customer threatene
d to sue BOA if this loan is service released as h
e has already settled this account with BOA. his c

redit reports an inactive mortgage with a zero bal
ance owed. he says his state laws make it illegal
for BOA to sell his loan to a new servicer and hav
UHB>>> Harry Velez / Ext: 596-9999

e their minds changed and go after him or pursue h
im for the debt 2) What was communicated:  calle
r disconnected call before Supervisor could get on
 phone, protocol requested. Caller revealed that h
e was recording the conversation and hung up when
confronted per protocol by associate, made legal t
hreat and disconnected call on associate 3) What
action was taken: SUBMITTED LEGAL THREAT VIA COMMI
T #98421, notated file Thanks Harry Velez, Sinto 3
682
UHB>>> Harry Velez / Ext: 596-9999

2) What was communicated:  caller disconnected cal
l before Supervisor could get on phone, protocol r
equested. Caller revealed that he was recording th
e conversation and hung up when confronted per pro
tocol by associate, made legal threat and disconne
cted call on associate 3) What action was taken:
SUBMITTED LEGAL THREAT VIA COMMIT #98421, notated
file Thanks Harry Velez, Sinto 3682
HMSAVR>>> Harry Velez / Ext: 596-9999

Details 1) What was the inquiry at time of call:
 customer threatened to sue BOA if this loan is se
rvice released as he has already settled this acco
unt with BOA. his credit reports an inactive mortg
age with a zero balance owed. he says his state la
ws make it illegal for BOA to sell his loan to a n
ew servicer and have their minds changed and go af
ter him or pursue him for the debt.
HMSAVR>>> Harry Velez / Ext: 596-9999

***Supervisor Call*** Loan Number: ███████ ime
of Call: 7/1/2013 7:36:56 PM Spoke To: MICHAEL BON
DI Relationship: borrower is borrower or spouse ac
tive duty military?: no 7/1/13
HMSAVR>>> Harry Velez / Ext: 596-9999


---------------------------------------------------------------

ESR046R1   NBK96T2    CFC REAL ESTATE MANAGEMENT  S1G    9/11/2014  9:37:52
                              CC- 6 ! WC- 5
Account: ██████████ Mortgagor: MICHAEL BONDI          CFC
Follow-Up Date: _____
<... ... 1 ... ... 2 ... ... 3 ... ... 4 ... ... 5 ... ... 6 ... ... 7 ... ..>


---------------------------------------------------------------

```
ESR046R1   NBK96T2   PAYOFF AND ASSUMPTION      S2G    9/11/2014  9:37:52
```
                          CC- 6 ! WC- 5
Account: ███████ Mortgagor: MICHAEL BONDI            CFC
Follow-Up Date: _____
<... ... 1 ... ... 2 ... ... 3 ... ... 4 ... ... 5 ... ... 6 ... ... 7 ... ..>


-----------------------------------------------------------------

```
ESR046R1   NBK96T2   INSURANCE ACTIVITIES       S1A    9/11/2014  9:37:52
```
                          CC- 6 ! WC- 5
Account:███████ Mortgagor: MICHAEL BONDI            CFC
Follow-Up Date: _____
<... ... 1 ... ... 2 ... ... 3 ... ... 4 ... ... 5 ... ... 6 ... ... 7 ... ..>

.SECTION-00025
.DT-03/25/2010, TM-23:23:01,INS

| S/TY/FR PAYEECD | OPT EFF DT | AMOUNT EXP DT DESC/POLICY# | PROP FO LTR |
|---|---|---|---|
| 1 25 12 143100000 | 081108 | 549.00  0809 HO3002313751 | O |
| 1 25 12 143100000 | 081109 | 549.00  0810 HO3002313751 | N |

Company:      AAA FIRE AND CASUALTY
Doc Received:  DECLARATION        Doc Date:    06/22/2008
Policy Type:  HOMEOWNERS         Policy Dates: 08/11/2009-08/11/2010
LPP Status:              Special Hand:
SetToPay:     Coverage: 250310    Deductible:  1000    Property:
Amount Due:              Premium Status:
NO INSURANCE TRACKING - AUTOMATICALLY ADVANCED POLICY TERM

.SECTION-00026
.DT-08/11/2010, TM-22:23:43,INS

| S/TY/FR PAYEECD | OPT EFF DT | AMOUNT EXP DT DESC/POLICY# | PROP FO LTR |
|---|---|---|---|
| 1 25 12 143100000 | 081109 | 549.00  0810 HO3002313751 | O |
| 1 25 12 143100000 | 081110 | 549.00  0811 HO3002313751 | N |

Company:      AAA FIRE AND CASUALTY
Doc Received:  DECLARATION        Doc Date:    06/22/2008
Policy Type:  HOMEOWNERS         Policy Dates: 08/11/2010-08/11/2011
LPP Status:              Special Hand:
SetToPay:     Coverage: 250310    Deductible:  1000    Property:
Amount Due:              Premium Status:
NO INSURANCE TRACKING - AUTOMATICALLY ADVANCED POLICY TERM

.SECTION-00027
.DT-08/11/2011, TM-21:47:33,INS

| S/TY/FR PAYEECD | OPT EFF DT | AMOUNT EXP DT DESC/POLICY# | PROP FO LTR |
|---|---|---|---|
| 1 25 12 143100000 | 081110 | 549.00  0811 HO3002313751 | O |
| 1 25 12 143100000 | 081111 | 549.00  0812 HO3002313751 | N |

Company:      AAA FIRE AND CASUALTY
Doc Received:  DECLARATION        Doc Date:    06/22/2008
Policy Type:  HOMEOWNERS         Policy Dates: 08/11/2011-08/11/2012
LPP Status:              Special Hand:
SetToPay:     Coverage: 250310    Deductible:  1000    Property:
Amount Due:              Premium Status:
NO INSURANCE TRACKING - AUTOMATICALLY ADVANCED POLICY TERM

.SECTION-00028

.DT-11212011,INS     INSR014B/ MAP CHANGE

| LA/LR Dt | Vnd Num | Fld Zn | Cert/Track# | CerCer/Trk# | Dt. Com Num | Map Pnl | Map Dt |
|---|---|---|---|---|---|---|---|
| 00000000 | 54 | X | 12575655 | 11030600 | 320003 | 2545E | 09272002 O |
| 00000000 | 54 | X | 44214495 | 11191100 | 320003 | 2545F | 11162011 N |

.SECTION-00029

.DT-08/13/2012, TM-22:27:59,INS

| S/TY/FR | PAYEECD | OPT | EFF DT | AMOUNT | EXP DT | DESC/POLICY# | | PROP FO LTR |
|---|---|---|---|---|---|---|---|---|
| 1 25 12 | 143100000 | | 081111 | 549.00 | 0812 | HO3002313751 | O | |
| 1 25 12 | 143100000 | | 081112 | 549.00 | 0813 | HO3002313751 | N | |

Company:     AAA FIRE AND CASUALTY

Doc Received:  DECLARATION        Doc Date:    06/22/2008

Policy Type:  HOMEOWNERS        Policy Dates: 08/11/2012-08/11/2013

LPP Status:               Special Hand:

SetToPay:     Coverage: 250310    Deductible:  1000    Property:

Amount Due:             Premium Status:

NO INSURANCE TRACKING - AUTOMATICALLY ADVANCED POLICY TERM

.SECTION-00030

.DT-082913,INS     INSC028

Boarding Notification has been sent to LandSafe for Map Tracking

.SECTION-00031

.DT-100113,INS     INSC028

Flood Data Re-Sent to Landsafe due to Property Address Change

.SECTION-00032

.DT-111113,INS     INSC028

Flood Data Re-Sent to Landsafe due to Property Address Change

--------------------------------------------------------------------

ESR046R1   NBK96T2    TAX DEPARTMENT        S1B     9/11/2014  9:37:52

CC- 6 ! WC- 5

Account:███████Mortgagor: MICHAEL BONDI        CFC

Follow-Up Date: _____

<... ... 1 ... ... 2 ... ... 3 ... ... 4 ... ... 5 ... ... 6 ... ... 7 ... ...>

--------------------------------------------------------------------

ESR046R1   NBK96T2    OFFICE OF THE PRESIDENT        9/11/2014  9:37:52

CC- 6 ! WC- 5

Account:███████Mortgagor: MICHAEL BONDI        CFC

Follow-Up Date: _____

<... ... 1 ... ... 2 ... ... 3 ... ... 4 ... ... 5 ... ... 6 ... ... 7 ... ...>

.SECTION-00041

.DT-030310,RSINGARA

**** ACDV REQST RECVD AND PROCESSED THROUGH E-OSCAR APPLICATION ****

RECORD ADDED TO BOTH LAOOP & CFC@CUSTSR MEMBERS

.SECTION-00042                    SRMREQIN0R

.DT-04/19/2010, TM-13:46:24,Joseph Lagreco, x9999, Simi

SRM Credit Reporting Adjustment request created on 04/19/2010 by NBKVX4K is sc
heduled to be completed on 04/26/2010 with a current status of Pending-New.

.SECTION-00043                          SRMREQIN0R
.DT-04/23/2010, TM-02:00:23,NBK34OA
SRM Credit Reporting Adjustment request created on 04/19/2010 by NBKVX4K has b
een completed. For further details regarding this request review the SRM appli
cation documentation.

.SECTION-00044
.DT-111411,ADUMPALA
*****ACDV REQUEST RECVD AND PROCESSED THROUGH E-OSCAR APPLICATION *****
111:CLAIMS COMPANY WILL DELETE. VERIFY ALL ACCOUNT INFORMATION.
RESOLUTION IS: MODIFIED DATES***
RECORD ADDED TO BOTH LAOOP & CFC@CUSTSR MEMBERS

.SECTION-00045
.DT-07/09/2014, TM-07:01:38,NBKOM8Q
Prescription Comments Posted to the AS400: Assigned To : DSCR Intake, Created
By : NBKOM8Q  7/9/2014 9:01:38 AM  ***********Office of the President********
Received New ECR Inquiry

--------------------------------------------------------------------------

                    END OF REQUEST: 1█████████
--------------------------------------------------------------------------

# EXHIBIT P

# EXHIBIT P

DARREN T. BRENNER, ESQ.
Nevada Bar No. 8386
ALLISON R. SCHMIDT, ESQ.
Nevada Bar No. 10743
AKERMAN LLP
1160 Town Center Drive, Suite 330
Las Vegas, Nevada 89144
Telephone: (702) 634-5000
Facsimile: (702) 380-8572
Email: darren.brenner@akerman.com
Email: allison.schmidt@akerman.com

*Attorneys for Defendants Nationstar Mortgage,*

*LLC and Bank of America, N.A.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL BONDI, | Case No.: 2:14-cv-001215-LDG-GWF |
| Plaintiff, | **DEFENDANTS' RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT BANK OF AMERICA, N.A.** |
| v. | |
| NATIONSTAR MORTGAGE LLC, a Delaware limited liability company; BANK OF AMERICA, N.A., DOES I-X , inclusive, and ROE CORPORATIONS I-X, inclusive, | |
| Defendants. | |

Defendant Bank of America, N.A. (**BANA**) answers Plaintiff Michael Bondi (**Plaintiff**) First

Set of Interrogatories (**Interrogatories**) as follows:

**PRELIMINARY STATEMENT/GENERAL OBJECTIONS**

1.      BANA objects to the Interrogatories to the extent that they seek information,

documents and things that are subject to any privilege, immunity, or obligation of confidentiality,

including, without limitation, the attorney-client privilege and the attorney work product doctrine, on

the ground that they exceed the permissible scope of discovery under the Federal Rules of Civil

Procedure or any local rule.  These Interrogatories and Requests are interpreted and construed by

BANA as not encompassing any documents, things, or information protected by the attorney-client,

work product, or other applicable privilege or protection unless otherwise stated.  Any inadvertent

{37588024;1}

1   highly confidential and proprietary); *Sullivan Marketing, Inc. v. Callassis Communications, Inc.*, No.

2   93 Civ. 6350, 1994 WL 177795, at *2 (S.D.N.Y. May 5, 1994) (citing *Reliance Ins. Co. v. Barrons*,

3   428 F. Supp. 200, 203 (S.D.N.Y. 1977)).

4   **INTERROGATORY NO. 6**

5     Please explain the actions taken to verify the accuracy and completeness of the reporting of

6   Plaintiff's mortgage loan accounts that are the subject of this litigation to the consumer reporting

7   agencies.

8   **RESPONSE:**

9     Objection. BANA objects to this Interrogatory on the grounds that it is overly broad and

10   seeks information not relevant to the claims and defenses at issue.

11     Subject to these objections and the General Objections incorporated herein, BANA states that

12   after receiving the notice of dispute on Loan 130367949 on November 15, 2011, BANA reviewed its

13   business records on the subject loan, including the loan's payment history, and compared this

14   information with the credit history that the credit bureaus had on record.  After completing this

15   review, BANA inquired into whether any other line of business within BANA had requested a

16   change to the credit reporting on the subject loan.  Following this review, on November 15, 2011,

17   BANA updated its reporting on Loan Number 130367949 to show this loan as "not reported" for the

18   months of November 2009 through November 2011.

19   **INTERROGATORY NO. 7**

20     If any document that is or would have been responsive to Plaintiff's Requests for Production

21   of Documents to you was destroyed, lost, mislaid, or otherwise missing, identify the document, state

22   the date of and reason for its destruction, and identify all persons having knowledge of its contents

23   and/or the reason for its destruction.

24   **RESPONSE:**

25     Objection.  BANA objects to this request on the grounds that it is overly broad, unduly

26   burdensome, and seeks information that is not relevant to the claims and defenses at issue.

27   **INTERROGATORY NO. 8**

28     Please state your procedure for responding to a consumer request for the verification or

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

## VERIFICATION

State of Texas

County of Dallas

I, Jamie Cooper have reviewed Bank of America, N.A.'s Responses to Plaintiff's First Set of Interrogatories and have verified the same in my authorized capacity and that by my signature.

Bank of America, N.A.

By: 

Jamie Cooper

AVP; Mortgage Servicing Team Manager

for Bank of America

Date: _2-25-16_

State of Texas

County of Dallas

Before me, _Joseph Pennington_, the undersigned officer, on this, the 25th day of _February_ 2016, personally appeared _Jamie Cooper_, ☑ known to me or, ☐ through production of _personal knowledge_ as identification, who identified herself to be the _AVP; Mortgage Servicing Team Manager for Bank of America, N.A._, the person and officer whose name is subscribed to the foregoing instrument, and being authorized to do so, acknowledged that she had executed the foregoing instrument as the act of such corporation for the purpose and consideration described and in the capacity stated.

(Seal)

JOSEPH PENNINGTON
Notary Public
STATE OF TEXAS
My Comm. Exp. 05-20-19

Joseph Pennington
Notary Public, State of Texas
Commission No.: 13023475-3
My Commission Expires: 05-20-2019