MAURY L. UDELL, ESQUIRE
Fla. Bar 121673
Beighley, Myrick & Udell, PA
150 W. Flagler Street
Suite 1800
Miami, FL 33130
Telephone: (305)349-3930
Facsimile:  (305) 349-3931
Email: mudell@bmulaw.com
*Attorneys for Plaintiff, Michael Bondi*
*Appearing Pro Hac Vice*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL BONDI | Case No.: 2:14-cv-001215-LDG-GWF |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO DEFENDANT NATIONSTAR'S MOTIONF OR SUMMARY JUDGMENT** |
| vs. | |
| NATIONSTAR MORTGAGE, LLC, BANK OF AMERICA, et. al | |
| Defendants | |

Plaintiff, MICHAEL BONDI, (hereinafter "Bondi") by and through its undersigned counsel, files this Response to Defendant Nationstar's Motion for Summary Judgment [D.E. 57].

### INTRODUCTION

Bondi agrees with Nationstar's positions that his common law claims of fraud and misrepresentation are preempted by FCRA and therefore withdraws the fraud and misrepresentation claims along with the civil conspiracy claim based on lack of pleading an actionable underlying tort.  However, the essence of Bondi's remaining claims arise out of disputed factual issue:  Whether BANK OF AMERICA's (BANA) forgave his second mortgage

loan before BANA transferred the servicing of the loan to Nationstar. Bondi believes that BANA waived the balance due on the second mortgage loan and has testified to statements made by BANA's predecessor's personnel acknowledging this belief. Nationstar believes that because Bondi has produced no confirming emails, (which were not in his possession, but actually BANA's) there can be no question of fact as to whether the debt was waived. Based on the record and documentary evidence, a question of fact exists as to this disputed fact which precludes entry of summary judgment on remaining claims based on the violation of FDCPA and FCRA. However, pursuant to DNLR 56-1, Plaintiff sets forth its concise statement of facts in opposition to Defendant Nationstar's Motion for Summary Judgment.

## **STATEMENT OF UNDISPUTED FACTS**

Bondi purchased the subject property at 9332 Golden Grapes Court, Las Vegas, Nevada, on August 7, 2006. Bondi obtained two loans on the property from Greystone Financial Group. The servicing of the loans were sold to Countrywide Mortgage which subsequently through a series of acquisitions and mergers, became BAC Home Loan Servicing, LP and then finally in BANA in 2011. See Affidavit of Matthew Caleb Carrillo [D.E. 56-2 at Paragraph 23). Due to a serious car accident, Bondi's business suffered and Bondi lost the home. Bondi did not pay off either loan. In April of 2010, Bondi began speaking to who he refers to as Bank of America but in reality based on the affidavit of BANA's representative was the entity named "BAC Home Loan Servicing LP" regarding the resolution of the second loan. See Exhibit A, at Page 15, Lines 8-12. Bondi was given secure emails from which reflected the agreement that the second loan was forgiven. See Exhibit A, Page 15, Lines 17-25. However, Bondi does not and did not have access to the secure emails, through no fault of his own. Nevertheless, Bondi's credit

reports for that time period after the BAC Home Loan Servicing, LP admission that the second loan was forgiven reflected zero balance. See Exhibit A, Page 16, Lines 20-25.

On or about June 4, 2014, Bondi received a letter from BANA advising him that his second loan was being sold to Defendant Nationstar. See Exhibit A, Page 23, Lines 1-12. In response, Bondi contacted BANA's office of President, in North Carolina. Bondi spoke with BANA employee Dorren Grafenecker wherein she admitted three (3) times during the conversation that Bondi had a zero balance. See Exhibit A, Page 23, Lines 19-25. In July 2013, Nationstar advised Bondi that it had taken over the second loan. Bondi began contacting Nationstar's representatives about his contention that the second loan had no balance in July 2013. See Exhibit A, Lines 5-7. Thereafter, in August of 2013, both BANA and Nationstar began reporting the second loan as a charge-office balanced owed of $69,371. See Exhibit A, Lines 8-16, even though BANA had allegedly transferred all interest in the second loan Nationstar. Nationstar, through its agent and subsidiary, Veripro Solutions, Inc. f/n/a NSM Recovery Services, Inc., sent Bondi a letter on December 23, 2013. See Exhibit "B". Despite having knowledge, or at a minimum, failing to inquire as to whether the balanced was waived, Nationstar still attempted to collect on the debt through its subsidiary. Eventually, Veripro Solutions, Inc. wrote a letter to Plaintiff confirming that the account was closed and reflected a zero balance. See Exhibit "C". Despite this fact, Nationstar claims in its Motion for Summary Judgment that Bondi still owes the debt.

**RESPONSE AND MEMORANDUM OF LAW**

I. <u>**LEGAL STANDARD**</u>

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable and justifiable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is not proper if material factual issues exist for trial. *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.*, 980 F.2d 1217, 1219 (8th Cir.1992). The moving party bears the burden of proving the absence of any triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The non-moving party can defeat a motion for summary judgment by producing evidence "such that a reasonable jury could return a verdict" in his favor. *Anderson*, 477 U.S. at 248.

"[T]he FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors." *Clark v. Capital Credit & Collection Services, Inc.,* 460 F.3d 1162, 1171 (9th Cir.2006). "It prohibits, and imposes strict liability and both statutory and actual damages for, a wide range of abusive and unfair practices." *Heathman v. Portfolio Recovery Associates, LLC,* 2013 WL 755674, at *2 (S.D.Cal. Feb.27, 2013) (citing *Donohue v. Quick Collect, Inc.,* 592 F.3d 1027, 1030 (9th Cir.2010)); *see also McCollough v. Johnsonb, Rodenburg & Lauinger, LLC,* 637 F.3d 939, 952 (9th Cir.2011). "Because the FDCPA is a remedial statute, it should be construed liberally in favor of the consumer, and, when in doubt, against debt collectors." *Heathman,* 2013 WL 755674, at *2; *see also Rouse v. Law Offices of Rory Clark,* 603 F.3d 699, 705 (9th Cir.2010) ("the FDCPA should by construed liberally to effect its remedial purpose");

*Service, Inc.,* 869 F.2d 1222, 1228 (9th Cir.1988) ("One who deliberately goes perilously close to an area of proscribed conduct takes the risk that he may cross the line.") (internal quotation omitted).

FDCPA violations should be evaluated under the "least sophisticated debtor" standard. *Id.* citing *FTC v. Raladam Co.*, 316 U.S. 149, 151-52 (1942); *Exposition Press, Inc. v. FTC*, 295 F.2d 869, 873 (2d Cir.1961), cert. denied, 370 U.S. 917 (1962); and *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1172-1175 (11th Cir.1985). The least sophisticated debtor standard is objective and meant to protect all consumers, "the gullible as well as the shrewd … the ignorant, the unthinking and the credulous." *Clark v. Capital Credit & Collection Serv.*, 460 F.3d 1162, 1171 (9th Cir. 2006); *see also Sonmore v. CheckRite Recovery Services, Inc.*, 2000 WL 34494810 at *3 (D. Minn. Oct. 25, 2000), quoting *Duffy v. Landberg*, 215 F.3d 871 (8th Cir.2000) (determination of whether a debt collector's conduct has violated the FDCPA are made from the perspective of the "unsophisticated consumer").

"Because the FDCPA is a remedial statute, it should be construed liberally in favor of the consumer, and, when in doubt, against debt collectors." *Heathman,*2013 WL 755674, at *2; *see also Rouse v. Law Offices of Rory Clark,* 603 F.3d 699, 705 (9th Cir.2010) ("the FDCPA should by construed liberally to effect its remedial purpose"); *Swanson v. Southern Oregon Credit Service, Inc.,* 869 F.2d 1222, 1228 (9th Cir.1988) ("One who deliberately goes perilously close to an area of proscribed conduct takes the risk that he may cross the line.") (internal quotation omitted).

In deciding the instant motion for summary judgment, Plaintiff's FDCPA case requires the application of the least sophisticated debtor standard liberally within the parameters of strict liability. As a result, Defendant's minimization of its conduct should not serve as a bar to

Plaintiff's Complaint for Defendant's unfair and unscrupulous conduct in trying to collect money from him on a debt that Defendant BANA, through its predecessor, told him was extinguished.

Instead, using the aforementioned principles, a court must ask whether the actions of the debt collector were harassing to the least sophisticated debtor. *See Jeter,* 760 F.2d at 1168 (11th Cir. 1985) (applying the "least sophisticated" consumer standard); *Graziano v. Harrison*, 950 F. 2d 107 (3d Cir. 1991) (noting that statutory notice under FDCPA is to be interpreted from perspective of "least sophisticated debtor" standard); *Gammon v. GC Services Ltd. Partnership*, 27 F. 3d 1254 (7th Cir. 1994) (using the "unsophisticated consumer," rather than the "least sophisticated consumer," in order to protect consumers who are uninformed, naive or trusting, while admitting objective element of reasonableness). In the instant case, applying the FDCPA in the liberal manner, Defendant's conduct, viewed in a light most favorable to Plaintiff and under the least sophisticated debtor standard, violated the FDCPA. However, the Court must only decide if a question of fact remains regarding Defendant's Defense raised in its Motion for Summary Judgment.

**1.    The Statute of Limitations does not bar this claim.**

Civil claims under the FDCPA must be brought "within one year from the date on which the violation occurs." 15U.S.C. § 1692k(d). A cause of action typically accrues when the last essential element of a cause of action occurs. *Cal.Sansome Co. v. U.S. Gypsum,* 55F.3d 1402, 1406 (9th Cir.1995). A defendant relying on the statute of limitations as an affirmative defense bears the burden of producing evidence which shows the plaintiffs' claims are time-barred. *Id.* Under the discovery rule, a plaintiff's claim does not accrue "until the plaintiff is on inquiry notice of its injury (and wrongful cause)." *Id.* Where a plaintiff suffers a legal injury, the limitations period does not begin to run until the plaintiff has discovered that his or her rights have been violated and the defendant is responsible for the injury, even when significant time

elapses between the occurrence and discovery of the injury. *Id.* However, where a plaintiff relies on the discovery rule to avoid a statute-of-limitations defense, he or she bears the burden of pleading facts which justify application of the rule .*Id.; FDIC v. Smith,* 328 Or. 420, 432 (1999). In *Magnum v. Action Collection Serv., Inc.,* 575 F.3d 935 (2009), the Ninth Circuit held the "discovery rule" applies to claims under the FDCPA. Thus, under *Magnum,* the limitations period on an FDCPA claim begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* at 940.

Here, the first prong of the FDCPA violation began was when BANA actually transferred a cancelled debt to Nationstar which became effective on August 1, 2013, as per BANA's declaration.  See Declaration of Mathew Caleb Carrillo, Officer of BANA, [D.E. 56-2].

While Defendant correctly does allege that this action was commenced on July 25, 2014, it claims that Nationstar was not sued until September 16, 2015.   This is a blatant misstatement of the facts and a weak and obviously unsupported attempt to enforce the statute of limitations. Plaintiff moved this Court for leave to amend its complaint to name the correct parties as alleged in Defendant Nationstar's First Motion to Dismiss  [D.E. 22].  This Court granted Plaintiff's Motion. See [D.E. 26] and Defendant has introduced no evidence at all to support its claim that the statute of limitations applies based on the alleged September 16, 2015 "date Nationstar was sued".

 In *Krupski v. Costa Crociere S. p. A.,* 560 U.S. 538 (2010), the United States Supreme Court held that Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading "relates back" to the date of a timely filed original pleading and is thus itself timely even though it may violated the statute of limitations. Where an amended pleading changes a **party** or a **party's name**, the Rule requires, among other things, that "the **party** to be brought

7

in by amendment ... knew or should have known that the action would have been brought against it, but for a mistake concerning the proper **party's** identity." Id at 541.

The Ninth Circuit has explained that, "[w]hen a suit is filed in federal court under the Rules, the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to their first statement." *Id.* at 326 (quoting *Barthel v. Stamm,* 1454 F.2d 487, 491 (5th Cir. 1944)). To that end, the Ninth Circuit and the Supreme court have instructed lower courts "to heed carefully the command of Rule 15" of "freely granting leave to amend" when analyzing whether amendments relate back. *Guerrero v. RJM Acquisitions LLC,* 499 F.3d 926, 933 (9th Cir. 2007).   In cases brought under the FDCPA, the Ninth Circuit has given a broad interpretation to the phrase "conduct, transaction, or occurrence" in determining whether a plaintiffs amendments relate back to his or her original complaint. *Id.* In *Guerrero,* the plaintiff sued the defendant for violations of the FDCPA based on two letters the defendant sent plaintiff in an attempt to collect a debt. *Id.* at 930. The plaintiff later attempted to amend his complaint to add allegations that the defendant violated the FDCPA by means of a third letter sent to the plaintiffs attorney before the case was filed. *Id.* at 932. The court permitted the amendment and allowed relation back because the amendments alleged claims under the same cause of action and merely added more detailed facts. *Id.* at 933.

Moreover, based on the discovery rule, the first inkling of damages as a result of the FDCPA violation occurred when Plaintiff notices on his credit report that Nationstar had been reporting an active balance that is due and owing of $69,371.26 in April 2014.  See Exhibit "A". It's is those inaccurate credit reports which caused the damages of which Plaintiff complains. Because the complaint was filed in July 2014, Plaintiff's claim is not barred by the statute of

limitations and therefore Defendant's Motion for Summary Judgment as to FDCPA statute of limitations should be DENIED.

**2. At a minimum, a question of fact remains as to whether Plaintiff owed the Debt and Defendant NATIONSTAR's Debt Collection Activity violated FDCPA**

The FDCPA was enacted for three purposes: (1) "to eliminate abusive debt collection practices by debt collectors;" (2) to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged;" and (3) "to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To this end, Congress made it unlawful for "debt collectors" to engage in certain conduct in relation to its debt-collection efforts. Of relevance here, the FDCPA makes unlawful the following: (1) "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt;" (2) making "false, deceptive, or misleading representations ... in connection with the collection of any debt;" and (3) to "use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692d-1692f. Here, the question before the court is whether there is a question of fact as to whether Plaintiff owed the debt and whether such a representation was false, deceptive or misleading in connection with the collection of any debt.

There are four (4) types of basic evidence: Demonstrative, documentary, real and testimonial. Bondi has provided in discovery and also, in the form if his deposition attached as Exhibit A, proven a question of fact existed as to the status of the second loan. Such statements are admissible evidence as statements of a party opponent. See Fed.R.Evid. 801(d)(2). Plaintiff testified that he was told by BANA predecessor's representatives that the second loan balanced was waived. See Exhibit A, Page 16, Lines 17-25. This non-hearsay evidence is buttressed by the Declaration of BANA's representative in ¶30, wherein it was undisputed that BANA did not

9

report the Second Loan to the credit reporting agencies starting in April 2010, intermittently and then no reports to the credit agencies for almost two (2) years prior to the violation. While Bondi was unable to obtain the emails he believes released the debt, the evidence in the form of zero balance reporting for 3 plus years tend to support Bondi's position.

Lastly, Nationstar, through its agent and subsidiary, Veripro Solutions, Inc. f/n/a NSM Recovery Services, Inc., sent Plaintiff a letter on December 23, 2013.  See Exhibit "B".  Despite having knowledge, or at a minimum, failing to inquire as to whether the balanced was waived, Nationstar still attempted to collect on the debt through its subsidiary.  In short, a question of fact remains as to whether the debt was owed based on the deposition testimony of Bondi. However, the fact that Veripro Solutions, Inc. wrote a letter to Plaintiff confirming that the account was closed and reflected a zero balance. See Exhibit "C" actually proves **that the debt was not owed** and therefore, Nationstar, through its subsidiary, actually violated the FDCPA.   At a minimum, sufficient evidence exists in the record which belies Nationstar's claim that no genuine of material fact exists as to whether Nationstar committed a FDCPA violation.

**3.    At a minimum, a question of fact remains as to whether Defendant Nationstar violated the FCRA**

FCRA provides for multiple avenues of enforcement: the Bureau of Consumer Financial Protection and the Federal Trade Commission may bring administrative action against a furnisher,3 various federal agencies have enforcement authority, and states may seek to enjoin violators or to recover damages on behalf of consumers. See § 1681s(a)–(c). In addition, FCRA expressly creates a private right of action to enforce many of its terms. Consumers may bring suit to recover actual damages, and potentially attorney's fees and costs, from "[a]ny person who is negligent in failing to comply with any requirement imposed . . . with respect to any consumer" under the Act. 15 U.S.C. § 1681o. In addition, when a person "willfully fails to comply with any

10

requirement imposed . . . with respect to any consumer," that consumer may seek actual or statutory damages, as well as punitive damages and attorney's fees and costs. 15 U.S.C. § 1681n; *Beaudry v. Telecheck Servs., Inc.*, 579 F.3d 702, 705–06 (6th Cir. 2009), cert. denied, --- U.S. ---, 130 S. Ct. 2379 (2010).

First, FCRA requires a furnisher to "conduct an investigation with respect to the disputed information." § 1681s-2(b)(1)(A). The duty to investigate must be a reasonable one. See J*ohnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430–31 (4th Cir. 2004); accord *Chiang,* 595 F.3d at 37; *Gorman*, 584 F.3d at 1155–57; *Westra*, 409 F.3d at 827 (assuming a reasonableness standard). As several of these circuits agree, the term "investigation" itself denotes a "fairly searching inquiry," or at least something more than a merely cursory review. See, e.g., *Gorman*, 584 F.3d at 1155–57 (reviewing definitions of "investigation" considered by courts interpreting § 1681s-2(b)). Moreover, anything less than a reasonable inquiry would frustrate Congress's goal to create a system that permits consumers to dispute credit inaccuracies. As the Fourth Circuit reasoned, "[i]t would make little sense to conclude that, in creating a system intended to give consumers a means to dispute—and, ultimately, correct—inaccurate information on their credit reports, Congress used the term 'investigation' to include superficial, un reasonable inquiries by creditors." *Johnson*, 357 F.3d at 430–31 (emphasis in original).

A consumer may show a violation of an information furnisher's duty under § 1681s-2(b)(1)(A) by showing that the furnisher's investigation was not reasonable. *Chiang*, 595 F.3d at 37 (citing *Gorman*, 584 F.3d at 1157; *Westra,* 409 F.3d at 827; Johnson, 357 F.3d at 429–31). Second, FCRA requires a furnisher to "review all relevant information provided by the [CRA] pursuant to [§] 1681i(a)(2)." § 1681s-2(b)(1)(B). Alone, this duty is straightforward: a furnisher must review the pertinent information provided to it by a CRA. However, courts have interpreted

this review requirement alongside the investigation requirement in § 1681s-2(b)(1)(A). In particular, how thorough an investigation must be to be "reasonable" turns on what relevant information was provided to a furnisher by the CRA giving notice of a dispute. In Johnson, the Fourth Circuit held that electronically confirming only a name and address—as opposed to "consult[ing] underlying documents such as account applications"—was unreasonable when the furnisher had received information from the CRA explaining that its consumer was disputing her status as a co-obligor on her husband's debt. Id. at 429–31; cf. Gorman, 584 F.3d at 1159–61 (upholding a grant of summary judgment because the furnisher's investigation was reasonable when, "unlike in Johnson, [the furnisher] had—albeit earlier—gone outside its own records to investigate the allegations contained in the CRA notice."). By contrast, the Seventh Circuit held that a similarly cursory review of internal, electronic documents was reasonable because the CRA provided only "scant information . . . regarding the nature of [the consumer's] dispute." *Westra*, 409 F.3d at 827; accord *Chiang*, 595 F.3d at 40 (holding that a furnisher's investigation obligation was minimal where the CRA provides "no guidance as to either the specific information that was disputed or the basis for the dispute"). Accordingly, first and foremost a furnisher must review all relevant information provided to it by a CRA regarding a dispute in order to comply with § 1681s-2(b)(1)(B). Additionally, the nature and specificity of the information provided by the CRA to the furnisher may affect the scope of the investigation required of the furnisher. *Johnson*, 357 F.3d at 431. Third, FCRA requires a furnisher to "report the results of [its] investigation to the [CRA]." § 1681s-2(b)(1)(C). After conducting its reasonable investigation and reviewing all relevant information provided by a CRA, a furnisher must report back its findings about a customer's information to the CRA that originally provided notice of the dispute. Unlike the following two duties, this reporting duty requires a furnisher to

respond to a CRA regarding the results of the furnisher's investigation, irrespective of the outcome of its investigation. Fourth, FCRA requires that "if the investigation finds that the information is incomplete or inaccurate," then the furnisher must "report those results to all other [CRAs] to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis." § 1681s-2(b)(1)(D).

Other courts of appeals have explored the scope of the trigger under § 1681s-2(b)(1)(D) that "the investigation finds that the information is incomplete or inaccurate." For example, false information about a consumer is clearly inaccurate, and so failing to report the discovery of false consumer information to all CRAs would violate § 1681s-2(b)(1)(D). In addition, courts have held that § 1681s-2(b)(1)(D) is violated if a report of an investigation, although it contains correct information, nevertheless "provides information in such a manner as to create a materially misleading impression." *Saunders*, 526 F.3d at 148 ("Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading"); *Gorman*, 584 F.3d at 1163 (omission of information can render information provided "incomplete or inaccurate" under § 1681s-2(b)(1)(D)); cf. *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895–96 (5th Cir. 1998) (interpreting "accuracy" requirement under § 1681e(b) to impose a duty to avoid material omissions), cert. denied, 526 U.S. 1044 (1999); *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40–42 (D.C. Cir. 1984) (same). In particular, the Fourth and Ninth Circuits have recognized that a furnisher violates § 1681s-2(b)(1)(D) if it fails to identify that a consumer disputes his information, at least where the consumer's dispute is "a bona fide dispute, a dispute that could materially alter how the reported debt is understood." *Gorman*, 584 F.3d at 1163 (citing *Saunders,* 526 F.3d at 151). Fifth, a furnisher must either "modify," "delete," or "permanently

block reporting of" information that it finds upon investigation to be "inaccurate or incomplete," or that "cannot be verified after any reinvestigation." § 1681s-2(b)(1)(E). Inasmuch as the scope of this duty is determined by reference to inaccurate or incomplete information, the duty equally extends to the discovery of both inaccurate or incomplete consumer information and to the discovery of consumer information that is materially misleading. In addition, a furnisher has a duty to modify, delete, or block its original reporting if it discovers, upon investigation, that it can no longer verify the consumer information it originally supplied to a CRA. A consumer who demonstrates that a furnisher was negligent in breaching one of these also alleges that "failed to review all relevant information before reporting back to" the CRAs. Id.

Nationstar states that "if the reported information is accurate, the furnisher has no obligation to modify or delete."  However, Plaintiff maintains the same positions as to whether or not the information reported to CRA by Nationstar was accurate:  A question of fact exists as to whether the debt was owed and evidence of this question is in the record—the non-hearsay statements made by BANA's predecessor representatives to Bondi along with BANA's own Declaration showing no adverse credit reporting filed in support of their own Motion for Summary Judgment reveal on obvious fact question to preclude summary judgment on the FCRA claim.  Specifically, A consumer who demonstrates that a furnisher was negligent in breaching one of these duties with respect to that consumer's disputed information is entitled to actual damages under § 1681o; moreover, if a consumer can establish that a furnisher willfully violated one of its duties, then under § 1681n the consumer may recover actual or statutory damages, as well as punitive damages.

Without beating a dead horse, it is, and always has been Bondi's position that BANA waived the debt.  Therefore, any information furnished to the CRA which indicated otherwise,

was inaccurate.  A charge-off is the declaration by the creditor that the amount is unlikely to be collected.  Bondi maintains that the debt was waived.  Therefore, the waiver of a debt has a far different effect on a person's credit versus a charge-off.  A charged off debt is still collectible – it is just a term used by companies to report losses to the company.

At a minimum, a genuine issue of material fact exists as to whether Nationstar violated FCRA and either negligently or willfully reported the Second Loan inaccurately, precluding this Court from granting Nationstar's Motion for Summary Judgment.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 13th day of June, 2016 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel if record identified below in the manner specified, either via transmission of the Notice of Electronic Filing generated by CM/ECF or via U.S. Mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Maury L. Udell
mudell@bmulaw.com

## SERVICE LIST

Ariel Stern, Esquire ariel.stern@akerman.com
Allison Schmidt, Esquire allison.schmidt@akerman.com
Rebecca Fuller, Esquire rfuller@fullerlawpractice.com

Respectfully submitted,

**Beighley, Myrick & Udell, P.A.**
**150 West Flagler Street**
**Suite 1800**
**Miami, Florida 33130**
**(305) 349-3930 – Phone**
**(305) 349-3931 – Fax**
**/s/ Maury L. Udell**
_____
**MAURY L. UDELL, ESQUIRE**
**FBN 121673**
**Attorney for Plaintiff**
**Appearing Pro Hac Vice**