ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
ALLISON R. SCHMIDT, ESQ.
Nevada Bar No. 10743
AKERMAN LLP
1160 Town Center Drive, Suite 330
Las Vegas, Nevada 89144
Telephone:   (702) 634-5000
Facsimile:    (702) 380-8572
Email: ariel.stern@akerman.com
Email: allison.schmidt@akerman.com

*Attorneys for Defendants Nationstar Mortgage,
LLC and Bank of America, N.A.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL BONDI,<br><br>                    Plaintiff,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC, a Delaware limited liability company; BANK OF AMERICA, N.A., DOES I-X , inclusive, and ROE CORPORATIONS I-X, inclusive,<br><br>                    Defendants. | Case No.: 2:14-cv-001215-LDG-GWF<br><br>**BANK OF AMERICA, N.A.'S REPLY IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Defendant Bank of America, N.A. (**BANA**) hereby responds to Plaintiff Michael Bondi's (**Bondi**) Response to Defendant Bank of America's Motion for Summary Judgment (**Response**). Bondi agrees that the Fair Credit Reporting Act (**FCRA**) preempts his fraud and misrepresentation claims. Bondi also admits that his civil conspiracy claim fails because no actionable, underlying tort

exists. (ECF No. 71 at 1.) Accordingly, the Court should grant summary judgment in favor of BANA on Bondi's fraud, misrepresentation, and civil conspiracy claims.

BANA is also entitled to summary judgment in its favor on Bondi's claims for violation of FCRA and the Fair Debt Collection Practices Act (**FDCPA**). Bondi argues that a factual issue exists as to whether BANA forgave the debt owed on his second mortgage loan, precluding summary judgment as to his FCRA and FDCPA claims. (ECF No. 71 at 1-2.) As articulated in BANA's motion for summary judgment, however, Bondi's claims fail regardless of whether BANA agreed to forgive this debt because BANA is not a debt collector subject to the FDCPA, and Bondi cannot establish the elements of a FCRA claim. Furthermore, Bondi's subjective belief that BANA forgave his second loan does not create a genuine issue of material fact in light of the evidence showing that BANA in fact did not forgive this debt. For these reasons, and the reasons stated in BANA's motion for summary judgment, the Court should grant summary judgment in BANA's favor on each of Plaintiff's claims.

### I. BONDI HAS NOT ESTABLISHED THE EXISTENCE OF A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER BANA AGREED TO FORGIVE HIS SECOND LOAN.

First, Bondi argues that summary judgment is not appropriate because a genuine issue of material fact exists as to whether BANA agreed to forgive his second mortgage loan. Bondi, however, does not present the Court with evidence sufficient to create a fact issue in support of this argument. Instead, Bondi relies solely on his own deposition testimony to attempt to create a factual issue. As explained in BANA's motion for summary judgment, however, this testimony is insufficient to establish that BANA actually agreed to waive the debt that Bondi admits he owed on his second mortgage. Instead, Bondi's testimony establishes only that Bondi "believed" the debt had been waived and that he "interpreted" unproduced e-mails as a full release letter. (Doc. 53 at 5-6.) BANA has provided extensive evidence from its business records showing unequivocally that BANA did not agree to waive the debt, and Bondi has presented no evidence to contradict this evidence. (*See* Doc. 56-2.) "[W]hen a properly supported motion for summary judgment is made,

the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Bondi has not met this burden. Bondi admits that he signed the promissory note evidencing the second loan and does not dispute that the terms of the promissory note required him to repay the money borrowed. (*See* ECF No. 56-2 at 19-21.) While it may be true that Bondi "believed" BANA agreed to waive his debt, Bondi's subjective belief is not evidence that BANA actually agreed to any such arrangement or that a meeting of the minds occurred. To defeat summary judgment, Bondi must cite to evidence on the record supporting his factual positions. *See* Fed. R. Civ. P. 56(c). Though Bondi generally testified that he "interpreted" the unproduced e-mails to be a release of his loan obligations, Bondi has not produced evidence establishing specific facts that create a factual issue, such as the material terms of the alleged agreement to waive his debt or the specific contents of the e-mails that he believe constituted a release. (*See gen*. ECF No. 71.) In fact, Bondi's own testimony regarding the terms of the purported agreement indicates that any agreement Bondi reached with BANA related only to BANA's credit reporting on the second loan and not to Bondi's liability for the debt. (*See* ECF No. 56-3 at 16:4-16.) "Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Allstate Prop. & Cas. Ins. Co. v. Mirkia*, No. 2:12-CV-01288-RCJ, 2014 WL 2801310, at *9-10 (D. Nev. June 19, 2014). Bondi has not presented evidence that proves the existence of an agreement to forgive the second loan. As each of Bondi's claims depends upon Bondi's unsupported conclusion that the second loan was forgiven, BANA is entitled to summary judgment in its favor on his claims.

II. **BONDI IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR ON BONDI'S FDCPA CLAIM.**

Even if the Court finds that a fact issue exists as to whether BANA forgave Bondi's debt, BANA nevertheless is entitled to summary judgment in its favor. As explained in BANA's motion

3

{38600431;1}
1/4030760.1

for summary judgment, Bondi's claim FDCPA claim fails even if BANA had agreed to forgive the second loan because Bondi cannot establish the necessary elements of this claim.

Bondi makes two additional arguments in an attempt to save his FDCPA claim against BANA. First, he argues that BANA is in fact a debt collector under the FDCPA, even though the undisputed evidence shows that Bondi's second loan was not in default when BANA became the servicer of that loan, excluding BANA from liability under the FDCPA. Bondi further attempts to circumvent the FDCPA's one-year statute of limitations by misstating the date that servicing of the second loan transferred from BANA to Nationstar and by raising new factual allegations for the first time in response to BANA's motion for summary judgment. Neither of these arguments can save Bondi's FDCPA claim, however, and BANA is entitled to summary judgment in its favor on this claim.

### A. **BANA Is Not a Debt Collector.**

Bondi argues that a genuine issue of material fact exists as to whether BANA is a debt collector under the FDCPA. (ECF No. 71 at 5-7.) The only evidence that Bondi presents to establish this alleged fact, however, is a single letter from BANA that stated: "This communication is from Bank of America, N.A., the servicer of your home loan." (*See id*. at 6-7; ECF No. 71-4.) Bondi goes on to argue that "virtually every document [BANA] sent to Plaintiff" contained an FDCPA disclaimer stating that BANA was a debt collector (ECF No. 71 at 7). Bondi, however, does not cite to a single piece of evidence on the record containing such a disclaimer, nor does the letter he supplies to support this argument contain such a disclaimer. (*See gen*. ECF No. 71 at 7; ECF No. 71-4.)

Nevertheless, the law is clear that the presence of such a disclaimer on a communication has no bearing whatsoever on whether BANA is a debt collector under the FDCPA. As numerous federal appeals courts have held, such a notice does not subject an entity that is not otherwise a debt collector or otherwise engaged in debt collection activity to liability under the FDCPA. *Goodson v. Bank of Am., N.A.,* 600 Fed. Appx. 422, 432 (6th Cir. 2015) (FDCPA disclaimer does not transform

{38600431;1}    4

1/4030760.1

letter into debt collection activity); *Boosahda v. Providence Dane LLC*, 462 Fed. Appx. 331, 334 (4th Cir. 2012) (same); *Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 386 (7th Cir. 2010) (FDCPA disclaimer language "does not automatically trigger the protections of the FDCPA . . . ."); *Maynard v. Cannon,* 401 Fed. Appx. 389 (10th Cir. 2010) (inclusion of FDCPA disclaimer is "legally irrelevant"). Accordingly, this argument does not save Bondi's FDCPA claim.

In its motion for summary judgment, BANA set forth evidence and case law establishing that BANA is not a debt collector with respect to Bondi's second mortgage loan because that loan was not in default when BANA began servicing it. (ECF No. 53 at 9.) Bondi defaulted on the second loan in 2008. (ECF No. 56-2 ¶ 10.) BANA presented evidence establishing that it gained its servicing rights to Bondi's second loan through its merger with BAC Home Loans Servicing, LP (**BACHLS**), formerly known as Countrywide Home Loans Servicing, LP (**CHLS**). (ECF No. 56-2 ¶¶ 20-24.) BANA presented evidence that CHLS began servicing the second loan as early as September 14, 2006. (ECF No. 56-2 ¶ 20.) BANA further presented evidence that BACHLS became the servicer of the second loan on April 27, 2009, when CHLS changed its name to BACHLS. (*Id.* ¶ ¶ 21-22.) Lastly, BANA presented evidence establishing that BANA became servicer of the second loan on July 1, 2011, when BACHLS merged into BANA. (*Id.* ¶¶ 23-24.)

Bondi admits in his Response that "loan servicers generally do not fall under the definition of debt collector if at the time they acquired the servicing rights, the loan was not in default" (ECF No. 71 at 6), and Bondi sets forth no evidence that contradicts the evidence BANA has presented regarding the servicing history of the loan. (*See* ECF No. 71 at 6.) BANA's predecessors, and therefore BANA, acquired servicing rights with respect to Bondi's second loan before that loan was in default. When a defendant acquires a debt through its merger with a previous creditor of the plaintiff and via specific assignment of the loan, the defendant is not a debt collector under the FDCPA. *Brown v. Morris,* 243 Fed. Appx. 31, 34 (5th Cir. 2007); *see also Esquivel v. Bank of Am., N.A.,* 2:12-CV-02502-GEB, 2013 WL 682925, at *2 (E.D. Cal. Feb. 21, 2013) ("since [BANA] 'obtained' the debt when its predecessor in interest, [BACHLS], obtained the debt, neither

Defendant is a 'debt collector' under the FDCPA."); *Forester v. Bank of America, N.A.,* No. 11–0160–CG–M, 2012 WL 3206471, at *7 (S.D. Ala. Aug. 7, 2012) (even though it obtained plaintiff's debt through assignment when plaintiff's loan was already in default, where Countrywide merged into BACHLS, BACHLS was not a debt collector under FDCPA). Accordingly, BANA has shown that Bondi's second loan was not in default when BANA took over servicing, and BANA is not a debt collector subject to liability under the FDCPA. BANA is entitled to summary judgment in its favor on Bondi's FDCPA claim.

## B. The Statute of Limitations Bars Bondi's FDCPA Claim.

Bondi next argues that the statute of limitations does not bar this claim because Bondi was unaware that an FDCPA violation had occurred until April 2014. Although Bondi admits that he bears the burden of establishing facts that justify application of the discovery rule (ECF No. 71 at 7), Bondi fails to cite to a single shred of evidence in support of his claim that he was unaware of his claims until April 2014. (ECF No. 71 at 8.) On the other hand, in its motion for summary judgment, BANA set forth evidence showing that, at the absolute latest, Bondi became aware that he still owed a balance on the second loan when BANA sent him a letter on June 24, 2013, notifying him that servicing of that loan would transfer to Nationstar on July 16, 2013, and stating that a balance of $69,371.26 was owed on the second loan at that time. (ECF No. 53 at 10; ECF No. 56-2 at 97.) Bondi admits in his complaint that he received this letter "on approximately June 24, 2013." (ECF No. 27 ¶ 16.) Similarly, Bondi admitted in his deposition that he believed Nationstar would try to collect on his second loan when he received this letter (ECF No. 56-3 at 23:2-12) and admitted in discovery that he contacted BANA about the letter via telephone on July 13, 2013 (ECF No. 56-4 at 6). This letter put Bondi on notice that BANA showed an outstanding balance was owed on the loan and did not agree with Bondi's contention that the loan had been forgiven. Bondi cannot plausibly claim otherwise.

In further attempt to circumvent the statute of limitations, Bondi inexplicably argues that BANA's declaration establishes that the servicer transfer did not occur until August 1, 2013, despite

{38600431;1} 6
1/4030760.1

the fact that both BANA's declaration and the service transfer letter provided as an exhibit to that declaration state that this service transfer occurred on July 16, 2013.  (ECF No. 56-2 ¶ 25; ECF No. 56-2 at 95.)  Bondi presents no evidence in support of his argument that the service transfer to Nationstar did not occur until August 1, 2013.  (*Id*.)  In sum, Bondi admits he knew that BANA's records showed an outstanding balance on his second loan "on approximately June 24, 2013," and that he believed Nationstar would attempt to collect that outstanding debt at that time.  Despite this knowledge, Bondi did not file the instant action until July 25, 2014, more than one year after the service transfer occurred, more than one year after he became aware that an outstanding balance remained due and owing on the second loan, and more than one year after he contacted BANA contesting that outstanding balance.  The FDCPA's one-year statute of limitations bars this claim.

### C. **The September 11, 2014, Letter Cannot Provide the Basis for an FDCPA Claim.**

Bondi also contends that this claim is not time barred to the extent it is based on a September 11, 2014, letter in which BANA identified itself as the servicer of the second loan.  Until filing his Response to BANA's motion for summary judgment, however, Bondi has never identified this letter as the basis for his FDCPA claim, and he may not use his response to a motion for summary judgment to amend his claims.  Further, even if Bondi had properly pled the factual basis for this claim, it would nevertheless fail because the September 11, 2014, letter is not a debt collection activity.  BANA is entitled to summary judgment in its favor on this claim as well.

#### *1. Bondi Cannot Amend His Complaint to Bring a New Claim in His Response to a Motion for Summary Judgment.*

Bondi's amended complaint does not allege that BANA misrepresented that it was the servicer of the second loan or mention the September 11, 2014, letter in any other context.  (*See gen.* ECF No. 27.)  Likewise, BANA asked Bondi in discovery to identify "each and every false representation of fact" that he contended BANA made to him.  (ECF No. 56-4 at 12-14.)  Although Bondi did not respond to this interrogatory until January 19, 2016, he did not identify the September 11, 2014, letter or any other alleged statement that BANA was the servicer of the second loan as the

{38600431;1}            7
1/4030760.1

basis for his claims.  (*See id.*)  Not until responding to BANA's motion for summary judgment did Bondi give BANA notice that he intended to pursue an FDCPA claim based on this letter or based on allegations that BANA misrepresented its status of servicer of Bondi's second loan.

The law is clear that a plaintiff "may not effectively amend its Complaint by raising a new theory . . . in its response to a motion for summary judgment."  *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010); *see also Wasco Products, Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings."); *Goodson v. Bank of Am., N.A.*, 600 Fed. Appx. 422, 429 (6th Cir. 2015) (affirming the district court's refusal to consider an additional factual basis raised for the first time in response to a motion for summary judgment and holding that the proper procedure for a plaintiff to allege an additional factual basis for an FDCPA claim is to amend the complaint).  Accordingly, Bondi may not rely on his new allegation that the September 11, 2014 letter violated the FDCPA to avoid the statute of limitations.  The Court should grant summary judgment in favor of BANA on Bondi's FDCPA claim.

### 2. *The September 11, 2014 Letter is Not a Debt Collection Activity.*

Even if the Court considers an FDCPA claim based on the September 11, 2014 letter, such a claim nevertheless fails because this letter was not in connection with a debt collection activity.  As further explained in BANA's motion for summary judgment, a plaintiff seeking to recover for an FDCPA violation must also prove that the communication to which the plaintiff objects was a "debt collection activity" made "in connection with the collection of any debt."  15 U.S.C. § 1692e; *Spartalian v. Citibank, N.A.*, 2:12-CV-00742-MMD, 2013 WL 593350, at *3 (D. Nev. Sept. 27, 2013).  "The statute does not apply to *every* communication between a debt collector and a debtor." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010) (emphasis in original)).  Instead, for a communication to fall under the FDCPA, "an animating purpose of the communication must be to induce payment by the debtor."  *Grden v. Leikin Ingber & Winters PC,* 643 F.3d 169, 173 (6th Cir. 2011); *see also McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914 (8th Cir. 2014);

1  *Walcker v. SN Commercial, LLC*, 286 Fed. Appx. 455, 457 (9th Cir. 2008). Accordingly, communications that merely inform the debtor of the debt's status or respond to debtor inquiries regarding the loan are not communications that fall within the purview of the FDCPA. *See Grden*, 643 F.3d at 173 ("[T]he decisive point is that [the defendant] made the balance statements only after [the plaintiff] called and asked for them.")

To determine whether a communication is a debt collection activity, courts weigh a variety of factors, including whether the communication included an explicit demand for payment. *Grden*, 643 F.3d at 173. Courts will also consider whether the loan is in default. *Gburek*, 614 F.3d at 385. Further, courts consider whether any payment dates listed in the communication are prospective, simply warning the debtor of the consequences of missing a future payment. *Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 389 (7th Cir. 1998). "The nature of the parties' relationship is also relevant." *Gburek*, 614 F.3d at 385. Lastly, communications that "merely inform" the debtor of the current status of a debt are not debt collection activities. *Bailey*, 154 F.3d at 38-89; *Grden*, 643 F.3d at 173.

The September 11, 2014 letter is merely a payment history stating the current status of the loan, created at the request of Bondi, and not a communication intended to induce payment by the debtor. (*See* ECF No. 71-4.) The cover letter enclosed with the payment history explains that the payment history was provided at the request of Bondi and that the payment history contains information on payments received and servicing expenses incurred on the account. (ECF No. 71-4 at 1.) The letter does not demand payment from Bondi or make any other effort to induce Bondi to make a payment on the loan. (See gen. ECF No. 71-4.) It cannot be said that an "animating purpose" of the payment history was to induce Bondi to make payment on the loan. Rather, the letter was a "ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely." *Grden*, 643 F.3d at 173. BANA is entitled to summary judgment in its favor on this claim.

### III. BANA IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR ON BONDI'S FCRA CLAIM.

Lastly, Bondi argues that his FCRA claim should survive summary judgment because a fact question remains as to whether BANA received a notice of dispute regarding its reporting on Bondi's second loan. (ECF No. 71 at 11.) Specifically, Bondi contends that Equifax gave BANA notice of a dispute regarding the credit reporting on or about September 9, 2014. (*Id*. at 15.) Once again, however, Bondi attempts to bring new factual allegations for the first time in response to summary judgment and fails to present any evidence that supports his argument.

#### A. Bondi Cannot Assert a New Factual Basis for His FCRA Claim at Summary Judgment.

First, Bondi cannot base his FCRA claim on allegations that he filed a notice of dispute regarding BANA's reporting on the second loan in September 2014 because BANA has never before made this allegation. As noted above, a plaintiff may not advance a new theory of recovery for the first time in response to a motion for summary judgment. Plaintiff's complaint does not allege that he filed a notice of dispute in September 2014. (*See gen*. ECF No. 27.) Further, when asked to identify each dispute filed with the credit reporting agencies at issue in this lawsuit, Bondi did not list any notice of dispute in September 2014. (*See* Bondi's Responses to BANA's Interrogatories, attached as **Exhibit A**.) As with Bondi's FDCPA claim, these new factual allegations are nothing but a last-ditch effort to avoid the statute of limitations. Bondi may not bring these new allegations for the first time in response to a motion for summary judgment, and BANA is entitled to summary judgment in its favor on Bondi's FCRA claim.

#### B. No Factual Dispute Exists Because Bondi Presents No Evidence that BANA Received a Notice of Dispute in September 2014.

Even if the Court considers these new allegations, BANA is nevertheless entitled to summary judgment on this claim because the undisputed evidence shows that BANA did not receive a notice of dispute regarding its credit reporting on Bondi's second loan in September 2014. As further explained in BANA's motion for summary judgment, the duties found in subsection (b) of 15 U.S.C. § 1681s-2 are only triggered upon receipt of a notice of dispute from a credit reporting agency to the

furnisher of credit information, in this case, BANA. *See* 15 U.S.C. § 1681s-2(b)(1); *see also Gorman,* 584 F.3d at 1154 ("These duties arise only after the furnisher receives notice of dispute from a CRA . . . ."). In other words, a furnisher of credit information can only face FCRA liability if it <u>received</u> a notice of dispute regarding the credit reporting at issue.

In its motion for summary judgment, BANA presented evidence establishing that it received only a single notice of dispute regarding its reporting on Bondi's second loan, on November 14, 2011. (ECF No. 56-2 ¶¶ 32-53; ECF No. 56-2 at 99-119.) Bondi relies on documents received from Equifax Information Services, LLC (**Equifax**), in an attempt to show that BANA received notice of a second dispute in September 2014. (ECF No. 71 at 15.) Equifax's documents, however, establish no such thing. Bondi concludes that, because pages 2-3 of the Equifax documents reference the loan number of Bondi's second loan and mention "authorized responder" Beverly Lassiter, that "clearly Equifax gave BANA notice of the dispute regarding the status of the 'BANA' Second Loan." (*Id.*)

The evidence that Bondi presents, however, does not support this conclusion and in fact supports BANA's evidence showing that BANA did not receive notice of a dispute in September 2014. Nothing in the Equifax documents indicates that Equifax sent BANA notice that Bondi was disputing BANA's reporting on the loan in September 2014 or that BANA actually received such notice. (*See* ECF No. 71-3.) Instead, the documents that Bondi points to as evidence that BANA received notice of dispute in September 2014 establish only that BANA sent Equifax an update regarding its reporting on Bondi's second loan in September 2014, not that BANA received notice of a dispute from Equifax at that time.

Exhibit C to Bondi's Response includes 61 pages of documents received from Equifax. (*See* ECF No. 71-3.) Pages 3-4 of Exhibit C are titled "AUD" and reference the BANA account number of Bondi's second loan. (*Id*. at 3-4.) The "date created" at the bottom of each AUD is September 9, 2014. (*Id.*) The Equifax documents also include a document titled "ACDV" that references the BANA account number of Bondi's second mortgage and show a "date created" of November 9, 2011. (*Id*. at 6.) This date corresponds with the November 14, 2011, date on which BANA received

{38600431;1}

11

1/4030760.1

the only notice of dispute it has received with respect to Bondi's second loan.  (ECF No. 56-2 ¶ 31; ECF No. 56-2 at 118.)  The Equifax documents do not contain an ACDV created in September 2014 that references BANA or the BANA account number of BANA's second loan.  (*See gen*. ECF No. 71-3.)

Bondi provides no explanation from Equifax as to the difference between an AUD and an ACDV, instead relying solely on his unsupported conclusion that the existence of an AUD dated in September 2014 "clearly" establishes that BANA received notice of a dispute at that time.  Equifax's own Guidebook for Prospective Data Furnishers (the **Equifax Guidebook**), however, directly contradicts Bondi's conclusion.  *See Guidebook for Prospective Data Furnishers* 6, Equifax (2016), available at http://www.equifax.com/assets/USCIS/data_furnisher_guidebook.pdf, relevant pages attached as **Exhibit B**.  The Equifax Guidebook explains the difference between an Automated Credit Dispute Verification (**ACDV**) and an Automated Universal Data (**AUD**):

> ACDVs initiated by a [consumer reporting agency (CRA)] on behalf of a consumer are routed to the appropriate Data Furnisher based on the CRA and subscriber code affiliations indicated by the [Data Furnisher (DF)]. The ACDV is returned to the initiating CRA with updated information (if any) relating to the consumer's credit history. If an account is modified or deleted, carbon copies are sent to each CRA with whom the DF has a reporting relationship.
>
> AUDs are initiated by the DF to process out-of-cycle credit history updates. The system is used to create the AUD and route it to the appropriate CRA(s) based on subscriber codes specified by the DF in the AUD record. The e-OSCAR AUD process is intended to provide the CRA with a correction to a consumer's file that must be handled outside of the regular activity reporting cycle process. E-OSCAR may not be used to add or create a record on a consumer's file or as substitute for "in-cycle" reporting to the CRAs.

(*Id*. at 6.)  In other words, the AUD on which Bondi relies is a document that a data furnisher such as BANA creates to report information to Equifax.  It is not a notice of dispute that Equifax sent to BANA and is not the form that BANA would have used to respond to a notice of dispute from Equifax.  In contrast, had Equifax sent BANA a notice of dispute in September 2014, it would have sent such notice on an ACDV form as it did in November 2011.  ECF No. 71-3 at 6; *see also Seungtae Kim v. BMW Fin. Servs. NA, LLC*, 142 F. Supp. 3d 935, 948 n.7 (C.D. Cal. 2015) ("When

{38600431;1}
1/4030760.1

12

a consumer disputes information reported to a CRA, the CRA refers the dispute to the furnisher of the information by means of an ACDV report or transmission."). No ACDV form other than the November 2011 form that BANA admits it received exists in the Equifax documents, however, and Bondi has presented no other evidence that shows BANA received notice of a dispute regarding his second loan in September 2014. (*See gen*. ECF No. 71-3.)

The undisputed evidence shows that BANA received only one notice of dispute regarding its reporting on the second loan, which it received on November 14, 2011. (ECF No. 56-2 ¶¶ 31, 35.) In response to the dispute, BANA modified its reporting on November 15, 2011. (*Id*. ¶ 33.) Bondi admits these updates were made and that he had no issues with his credit reporting from November 2010 until May 2014. (ECF No. 56-4 at 4; ECF No. 56-3 at 16:14-16.) Bondi has not presented evidence that BANA received notice of any other dispute regarding its credit reporting on Bondi's second loan. Accordingly, Bondi was aware of BANA's response to the only notice of dispute that BANA received, and the FCRA's two-year statute of limitations bars this claim because Bondi did not bring it within two years of his discovery of the alleged violation. BANA is entitled to summary judgment in its favor on this claim.

### C. Bondi Has No Evidence Showing that BANA Reported a Balance on his Second Loan after November 2011.

Lastly, Bondi presents no evidence that BANA reported his second loan as having an outstanding balance after November 2011. Bondi argues that "it is, and always has been Bondi's position that BANA waived the debt and a question of fact remains as to that issue. Therefore, any information furnished to the CRA which indicated otherwise, was inaccurate." (ECF No. 71 at 15.) What Bondi does not do, however, is present the Court with any evidence showing that BANA reported that a balance was owed on Bondi's second loan at any time after November 2011. (*See gen*. ECF Nos. 53-1, 53-2, 53-3, 53-4.) BANA, on the other hand, has presented evidence showing that it did not report on the second loan after November 2011, other than to report the transfer of the loan's servicing to a new lender in August 2013. (ECF No. 56-2 ¶ 30.) Even if a dispute exists as to

whether a balance was owed, that dispute is not material to Bondi's FCRA claim and cannot defeat summary judgment if Bondi has not proven that BANA actually reported purportedly inaccurate information to the CRA's. *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (holding that although the FCRA "does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim, many courts, including our own, have imposed such a requirement"); *Kruse v. Experian Information Solutions, Inc.*, 471 Fed. Appx. 714, 715 (9th Cir. 2012) (holding that inaccuracies in credit report were required to maintain FCRA claim). As Bondi has not provided any evidence establishing that BANA reported a balance owed on the loan after November 2011, BANA is entitled to summary judgment in its favor on Bondi's FCRA claim.

**IV.    CONCLUSION.**

The undisputed facts show that no genuine issue of material fact exists as to Bondi's claims. Based on these facts, BANA is entitled to judgment in its favor as a matter of law. Accordingly, the Court should grant BANA's motion for summary judgment.

DATED this 30th day of June, 2016.

**AKERMAN LLP**

/s/ *Allison R. Schmidt*
ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
ALLISON R. SCHMIDT, ESQ.
Nevada Bar No. 10743
1160 Town Center Drive, Suite 330
Las Vegas, Nevada 89144

*Attorneys for Defendants Nationstar Mortgage, LLC, and Bank of America, N.A.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 30th day of June, 2016 and pursuant to FRCP 5, I served via CM/ECF a true and correct copy of the foregoing **BANK OF AMERICA, N.A.'S REPLY IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT** to:

Rebecca Fuller, Esq.
500 N. Rainbow Blvd., Suite 300
Las Vegas, NV 89107
Email: rfuller@fullerlawpractice.com

Maury L Udell
Beighley, Myrick & Udell, PA
150 West Flagler Street
Suite 1800
Miami, FL 33130
305-349-3930
Email: mudell@bmulaw.com

*Attorneys for Plaintiff*

　　　　　　　　　　　　　　　　　　　　*/s/ Michael Hannon*
　　　　　　　　　　　　　　　　　　　　An employee of AKERMAN LLP

{38600431;1}
1/4030760.1

15