1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

10   MICHAEL BONDI,

11        Plaintiff,                              Case No. 2:14-cv-01215-LDG (GWF)

12   v.                                          **ORDER**

13   NATIONSTAR MORTAGE LLC., *et al*.,

14        Defendants.

15
16
17

In his Amended Complaint, Plaintiff Michael Bondi alleges claims against

18   Defendants Bank of America, N.A. (BANA) and Nationstar Mortgage LLC (Nationstar) for

19   violations of the Fair Debt Collections Practices Act (FDCPA), the Fair Credit Reporting Act

20   (FCRA) and state law claims for fraud, misrepresentation, and civil conspiracy.  BANA and

21   Nationstar each move for summary judgment as to each of Bondi's claims.  Bondi has

22   responded to the motions.  In so doing, he concedes that he cannot maintain any of his

23   state claims.  Accordingly, the Court will grant summary judgment as to those claims.

24   Bondi asserts, however, that summary judgment is not appropriate as to either his FDCPA

25   or FCRA claims.  Having considered the papers and pleadings, and the admissible

26

1 evidence submitted by the parties, the Court will grant the defendants' motions for

2 summary judgment.

3

4       Background

5       Bondi purchased real estate in 2006, obtaining a first and second mortgage on the

6 property.  In September 2006, Countrywide Home Loans Servicing, LP, became the

7 servicer of the second loan.  That entity changed its same to BAC Home Loans Servicing,

8 LP (BACHLS), on April 27, 2009.  On that same date, BACHLS became the servicer of the

9 second loan.  On July 1, 2011, BACHLS merged into BANA.  On that same date, BANA

10 became the servicer of the second loan.

11      Bondi defaulted on the first mortgage in early 2008, and the beneficiary under the

12 first deed of trust initiated foreclosure proceedings.  Bondi did not cure the default, and the

13 Trustee under the Deed of Trust recorded a Notice of Trustee's sale on March 2009.  At

14 the time of the foreclosure sale, Bondi owed $314,064.46 on the first mortgage.  The Bank

15 of New York Mellon, fka the Bank of New York, as Trustee for the Certificateholders

16 CWALT, Inc., Alternative Loan Trust 2006-OC8, Mortgage Pass-Through Certificates,

17 Series 2006-OC8 purchased the property for $160.565.00.  Following the trustee's sale,

18 BANA canceled the unpaid debt on the first mortgage, and issued a 1099-C to Bondi in

19 connection with that cancellation.

20      As the proceeds of the trustee's sale did not exceed the amount Bondi owed on the

21 first mortgage, none of the proceeds were applied to the second mortgage.

22      Bondi had also stopped making payments on the second loan in early 2008, and

23 has not made any payments on the loan since that time.

24      At his deposition, Bondi testified that he discussed the loan with BANA starting in

25 April 2010, and that he believed (and interpreted certain BANA e-mails) as indicating that

26 BANA agreed to forgive the second loan in November of 2010.

2

1    BANA has shown that they started reporting the second loan as 180 Days Past Due

2 in July 2008.  From April 2010, through July 2010, BANA did not report the loan.  In August

3 2010, BANA again started reporting the loan as 180 Days Past Due.  From November

4 2011, through July 2013, BANA did not report the loan.

5    By letter dated June 24, 2013, BANA notified Bondi that it was transferring the

6 servicing of the second loan to Nationstar on July 16, 2013.  BANA notified Bondi that it

7 was informing Nationstar that the principal balance on the loan was $69,371.26.  Bondi

8 contacted both BANA and Nationstar in July 2013, contending that the second loan did not

9 have a balance owing.  In August 2013, Nationstar reported the second loan as a charge-

10 off with a balance owed of $69,371.

11

12    Motion for Summary Judgment

13    In considering a motion for summary judgment, the court performs "the threshold

14 inquiry of determining whether there is the need for a trial—whether, in other words, there

15 are any genuine factual issues that properly can be resolved only by a finder of fact

16 because they may reasonably be resolved in favor of either party." *Anderson v. Liberty*

17 *Lobby, Inc.*, 477 U.S. 242, 250 (1986); *United States v. Arango*, 670 F.3d 988, 992 (9th Cir.

18 2012).  To succeed on a motion for summary judgment, the moving party must show (1)

19 the lack of a genuine issue of any material fact, and (2) that the court may grant judgment

20 as a matter of law.  Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

21 (1986); *Arango*, 670 F.3d at 992.

22    A material fact is one required to prove a basic element of a claim.  *Anderson,* 477

23 U.S. at 248.  The failure to show a fact essential to one element, however, "necessarily

24 renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  Additionally, "[t]he mere

25 existence of a scintilla of evidence in support of the plaintiff's position will be insufficient."

26

1    *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012) (quoting

2    *Anderson*, 477 U.S. at 252).

3         "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after

4    adequate time for discovery and upon motion, against a party who fails to make a showing

5    sufficient to establish the existence of an element essential to that party's case, and on

6    which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "Of

7    course, a party seeking summary judgment always bears the initial responsibility of

8    informing the district court of the basis for its motion, and identifying those portions of 'the

9    pleadings, depositions, answers to interrogatories, and admissions on file, together with the

10   affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material

11   fact." *Id.*, at 323.  As such, when the non-moving party bears the initial burden of proving,

12   at trial, the claim or defense that the motion for summary judgment places in issue, the

13   moving party can meet its initial burden on summary judgment "by 'showing'–that is,

14   pointing out to the district court–that there is an absence of evidence to support the

15   nonmoving party's case." *Id.,* at 325.  Conversely, when the burden of proof at trial rests

16   on the party moving for summary judgment, then in moving for summary judgment the

17   party must establish each element of its case.

18        Once the moving party meets its initial burden on summary judgment, the non-

19   moving party must submit facts showing a genuine issue of material fact.  Fed. R. Civ. Pro.

20   56(e); *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir.

21   2000).  As summary judgment allows a court "to isolate and dispose of factually

22   unsupported claims or defenses," *Celotex*, 477 U.S. at 323-24, the court construes the

23   evidence before it "in the light most favorable to the opposing party." *Adickes v. S. H.*

24   *Kress & Co.*, 398 U.S. 144, 157 (1970).  The allegations or denials of a pleading, however,

25   will not defeat a well-founded motion.  Fed. R. Civ. Pro. 56(e); *Matsushita Elec. Indus. Co.*

26   *v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  That is, the opposing party cannot

4

1   "'rest upon the mere allegations or denials of [its] pleading' but must instead produce

2   evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'"

3   *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed.

4   R. Civ. Pro. 56(e)).

5

6              Analysis - Fair Debt Collection Practices Act

7           BANA argues that Bondi cannot maintain the FDCPA claim because BANA is not a

8   "debt collector" subject to the FDCPA.

9           The term "debt collector" means any person who uses any instrumentality of
            interstate commerce or the mails in any business the principal purpose of
10          which is the collection of any debts, or who regularly collects or attempts to
            collect, directly or indirectly, debts owed or due or asserted to be owed or due
11          another. Notwithstanding the exclusion provided by clause (F) of the last
            sentence of this paragraph, the term includes any creditor who, in the process
12          of collecting his own debts, uses any name other than his own which would
            indicate that a third person is collecting or attempting to collect such debts.
13
14  15 U.S.C. 1692a(6).  BANA asserts that it is not a debt collector as it acquired the rights to

15  service the second loan (through its predecessors) before Bondi defaulted on the loan.

16  More specifically, BANA presented evidence that CHLS began servicing the loan in

17  September 2006.  Bondi defaulted on the loan in 2008.  In April 2009, CHLS changed its

18  name to BACHLS, and BACHLS became the servicer of the loan.  In July 2011, BACHLS

19  merged into BANA, and BANA became the servicer of the loan.

20          Bondi does not dispute that a loan servicer is not a debt collector with respect to a

21  loan if they acquired the rights to service the loan when the loan was not in default.  Bondi

22  has not offered any evidence or argument that he was in default on the second loan when

23  CHLS became the servicer of that loan.  He has not offered any competent evidence

24  suggesting that CHLS was not a predecessor of BANA, or that BANA became the servicer

25  of the second loan through its predecessors CHLS and BACHLS.  Accordingly, the Court

26  will grant BANA's motion for summary judgment as to Bondi's FDCPA claim against BANA.

5

1    Nationstar argues that Bondi cannot maintain his FDCPA claim against it because

2  the one-year statute of limitations expired before Bondi filed his original complaint in this

3  matter on July 25, 2014.  BANA notified Bondi, in a letter dated June 24, 2013, that it would

4  be transferring service of the second loan to Nationstar on July 16, 2013, and would be

5  notifying Nationstar that the second loan had an outstanding balance of $69,371.26.

6  Nationstar has also offered, into evidence, a letter written by Bondi to Nationstar, dated

7  July 8, 2103.  In that letter, Bondi acknowledged his awareness that BANA would be

8  transferring the second loan to Nationstar.  As such, Nationstar concludes that Bondi's

9  FDCPA claim accrued no later than July 8, 2013, and the one-year statute of limitations on

10  that claim expired on July 8, 2014, several weeks before Bondi filed his original claim.

11    Bondi acknowledges that the statute of limitations on his FDCPA claim is one year,

12  but argues that his claim accrued when BANA actually transferred the second loan to

13  Nationstar.  Bondi further asserts that this transfer was effective on August 1, 2013.  The

14  only evidence Bondi offers in support of this assertion is a general citation to the

15  declaration of Mathew Carrillo, a declaration submitted by BANA.  Bondi does not identify

16  any specific provision of the declaration that supports his assertion.  Further, a review of

17  the declaration establishes that Carrillo expressly states that the transfer occurred on July

18  16, 2013.  Declaration of Carrillo, ECF #56, Exhibit B, ¶25.  Bondi's assertion that the

19  transfer occurred on August 1, 2013, contrary to the plain language of Carrillo's declaration,

20  is without merit.  Accordingly, Nationstar is entitled to summary judgment as to Bondi's

21  FDCPA claim as that claim is barred by the statute of limitations.

22

23    Analysis - Fair Credit Reporting Act Claim

24    BANA argues that Bondi's FCRA claim is barred by FCRA's two-year statute of

25  limitations. The FCRA requires plaintiffs to file claims for relief "not later than the

26  earlier of—(1)  2 years after the date of discovery by the plaintiff of the violation that is the

6

1   basis for such liability; or (2) 5 years after the date on which the violation that is the basis

2   for such liability occurs." 15 U.S.C. §  1681p.   However, the duties found in subsection (b)

3   of 15 U.S.C. §1681s-2 are only triggered upon receipt of a notice of dispute from a CRA to

4   the furnisher of credit information.  *See* 15 U.S.C. §1681s-2(b)(1).  BANA asserts that it

5   only received a single notice of dispute from a CRA regarding its reporting of the second

6   loan, and it received that notice on November 14, 2011, and that it modified its reporting on

7   November 15, 2011.  Bondi has acknowledged his awareness of BANA's modified

8   reporting regarding the second loan.  Thus, he was aware of BANA's November 2011,

9   response to his dispute regarding the second loan.

10        In response, Bondi offers no argument disputing that the statute of limitations

11  expired regarding any FCRA claim resulting from BANA's response to the November 2011

12  notice of dispute.  Rather, he argues that his FCRA claim against BANA accrued in

13  September 2014, after he filed his complaint.  Specifically, he argues that BANA violated its

14  duties under FCRA after Equifax (a credit reporting agency) notified BANA, in September

15  2014, of Bondi's dispute regarding the balance owed on the second loan.  Bondi has not

16  provided any argument to suggest that his theory that his FCRA claim accrued in

17  September 2014, proffered for the first time in response to BANA's motion for summary

18  judgment, is anything other than an untimely effort to amend his pleadings.  BANA is

19  entitled to summary judgment as it has shown that the statute of limitations has expired on

20  the FCRA claim that Bondi alleged against it in his complaint.

21        Nationstar argues that it is entitled to summary judgment on Bondi's FCRA claim

22  against it.  The Court agrees with Nationstar that it is not clear from either Bondi's

23  pleadings or his arguments as to the specific basis for his FCRA claim against Nationstar.

24  In his Amended Complaint, Bondi identifies several of FCRA's statutory provisions he

25  asserts the defendants violated.  In his opposition to the motion for summary judgment, he

26  asserts that "any information furnished to the CRA which indicated [other than that BANA

1  waived the second loan] was inaccurate."  He further generally indicates that "Nationstar

2  violated FCRA and either negligently or willfully reported the Second Loan inaccurately. . .."

3        This general assertion, however, falls short as Bondi does not specifically identify

4  how Nationstar violated FCRA.  As Bondi notes, FCRA requires a furnisher to "conduct an

5  investigation with respect to . . . disputed information."  15 U.S.C. §1681s-2(b)(1)(A).  This

6  obligation arises, however, when the furnisher receives a notice of dispute from a CRA.

7  Bondi has not offered any evidence that he provided a notice of dispute to a CRA, and that

8  the CRA notified Nationstar of the dispute.  Rather, Bondi asserts that he notified

9  Nationstar that he disputed that a balance remained owing on the second loan.  Bondi has

10  neither offered evidence that he notified a CRA that he disputed the information reported

11  by Nationstar regarding the second loan, nor offered evidence that a CRA notified

12  Nationstar of Bondi's dispute.  Further, even if the Court were to assume that Nationstar

13  received a notice of dispute from a CRA, Bondi has not offered any evidence that

14  Nationstar did not conduct an investigation with respect to the disputed information.

15  Accordingly, Bondi's FCRA claim cannot rest upon this duty imposed on furnishers of

16  information.

17        Pursuant to §1681s-2(b)(1)(A)-(E), a furnisher must not only conduct an

18  investigation upon receiving a notice of a dispute, but it must then correct, modify, or delete

19  any information that is incomplete or inaccurate.  Nationstar argues that the information it

20  had furnished was accurate; that is, that Bondi owed a balance on the second loan that

21  had been charged-off.  The Court tends to agree.  While Bondi argues that an issue of fact

22  exists whether BANA forgave or waived the second loan, he has not offered any competent

23  evidence in support of that assertion.  This is, perhaps, best exemplified by the difference

24  in evidence actually submitted by Bondi in opposition to Nationstar's motion, and the

25  evidence Bondi has previously claimed to have possessed.  In his July 8, 2013, letter to

26  Nationstar, Bondi asserted that he reached an agreement with BANA pursuant to which

1   BANA reported a zero balance on his second loan.  He has asserted similar claims in this

2   litigation.   He further asserted, to Nationstar, that he had credit reports "proving that these

3   accounts were ZEROED OUT and that [he] DID NOT HAVE A CURRENT BALANCE

4   WITH [BANA]."  Bondi has not provided this court with any evidence that BANA reported a

5   zero balance on the second loan.  Rather, the only evidence presented to this court is that

6   provided by BANA and Nationstar.  That evidence indicates that, subsequent to November

7   2011, BANA did not report the second loan (as opposed to reporting a loan with a zero

8   balance).  This is consistent with BANA's letter notifying Bondi of the transfer of the loan to

9   Nationstar, in which BANA notified Nationstar of the balance owed on the second loan.

10      Bondi further asserts in his July 2013 letter to Nationstar that BANA "issued . . . a full

11   release letter stating that they would not pursue further action(s) against me."  Bondi has

12   not provided any documentary evidence in this matter, much less a full release letter from

13   BANA, supporting his assertions.  In his deposition, Bondi alluded to having provided

14   secure e-mails to somebody, but that he no longer had possession of the secure e-mails

15   documenting the BANA's asserted agreement to forgive the second loan.  Bondi did not

16   submit any e-mails as evidence of his assertions.

17      Finally, while Bondi relies almost solely upon his own deposition testimony as

18   evidence of the BANA's asserted agreement to forgive the loan, that testimony falls far

19   short of establishing the parties entered into an agreement that BANA would zero out the

20   balance of the loan.  Indeed, at most, Bondi only testified that it was his "belief" that such

21   an agreement had happened, and that this belief was based on his "interpretation" of e-

22   mails that he had exchanged with BANA.  In sum, the competent evidence presented to

23   this Court is that, as a result of Bondi's November 2011 notice of dispute to a CRA, BANA

24   resolved the issue by not reporting the second loan to the CRA.  The record lacks any

25   evidence that BANA forgave the loan.  Rather, the evidence is that BANA decided to not

26   report the loan, and thus did not report the balance Bondi owed on the loan to the CRA.

1   Thus, when the loan was transferred to Nationstar, and Nationstar reported that a balance

2   was owed on the loan, that information was accurate.

3          Nevertheless, even assuming the information was not accurate, Bondi's FCRA claim

4   cannot rest simply upon Nationstar's reporting of that information.  Rather, he must show

5   that, once properly notified of Bondi's dispute, Nationstar did not fulfill its obligation to

6   investigate and, if necessary, correct or delete the disputed information.  Nationstar notes

7   that as a result of Bondi's requests to Nationstar, Nationstar deleted the trade line in its

8   entirety.  As such, Nationstar argues that, having deleted the accurate information at

9   Bondi's request, it cannot be held liable as it deleted the information that Bondi disputed.

10  Bondi has not offered any argument or evidence to the contrary.  Accordingly, Nationstar

11  cannot be held liable under FCRA for its response to Bondi's requests regarding the

12  reporting of the second loan.

13         Therefore, for good cause shown,

14         THE COURT **ORDERS** that Defendants' Motions for Summary Judgment (ECF Nos.

15  56, 57) are GRANTED.

16

17

18  DATED this _____ day of March, 2017.

19

20                                                    Lloyd D. George
                                                      United States District Judge
21

22

23

24

25

26

10